1   ANN MILLER RAVEL, County Counsel (S.B. #62139)
    MARCY L. BERKMAN, Deputy County Counsel (S.B. #151915)
2   OFFICE OF THE COUNTY COUNSEL
    70 West Hedding Street, East Wing, Ninth Floor
3   San Jose, California  95110-1770
    Telephone:  (408) 299-5900
4   Facsimile:  (408) 292-7240

5   Attorneys for Defendant
    COUNTY OF SANTA CLARA
6   (ERRONEOUSLY SUED AS COUNTY OF
    SANTA CLARA BOARD OF SUPERVISORS)

7

8                   UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  JOHN GABOR and KAY GABOR,           )   No. C 07-04266 RMW (HRL)
                                        )
12          Plaintiffs,                 )   REQUEST FOR JUDICIAL NOTICE OF
                                        )   ADJUDICATIVE FACTS IN SUPPORT OF
13  v.                                  )   COUNTY'S PENDING MOTIONS
                                        )   [Federal Rule of Evidence 201]
14  COUNTY OF SANTA CLARA               )
    BOARD OF SUPERVISORS in their       )   Date:   October 26, 2007
15  official capacity; KEN YEAGER in his)   Time:   9:00 a.m.
    municipal and individual capacity;  )   Dept:  6
16  ANN RAVEL, county counsel, in her   )   Judge:  Honorable Ronald M. Whyte
    municipal and individual capacity;  )
17  DELORES CARR, district attorney,    )
    in her official and individual capacity;)
18  LAURIE SMITH, sheriff, in her       )
    municipal and individual capacity; CITY )
19  OF CAMPBELL, in its municipal       )
    capacity; CITY OF CAMPBELL CITY     )
20  MANAGER DANIEL RICH, in his         )
    municipal and individual capacity; CITY )
21  OF CAMPBELL COMMUNITY               )
    DEVELOPMENT DEPARTMENT in           )
22  its municipal capacity; SUSAN       )
    MORGADO-GRAY in her municipal       )
23  and individual capacity; EDMUND G.  )
    BROWN, JR. Attorney general in his  )
24  official capacity; UNITED STATES    )
    ATTORNEY FOR THE NORTHERN           )
25  DISTRICT OF CALIFORNIA SCOTT        )
    N. SCHOOLS in his official capacity )
26  and DOES 1-100,                     )
                                        )
27          Defendants.                 )
                                        )
28

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County's Request for Judicial Notice
in Support of its Motion for Dismissal          -1-          C07 04266 RMW (HRL)

**NOTICE**

Defendant County of Santa Clara hereby requests that the Court take judicial notice pursuant to Federal Rule of Evidence 201 of the existence of and content of the following documents filed in the United States District Court, Northern District, and in the Ninth Circuit Court of Appeals:

A.  *Gabor v. Michael S. Frazer, et al.*, U.S.D.C. (N.D.) Case No. C-94-20617 JW

1.  The Complaint filed on September 8, 1994.  A true and correct copy is attached hereto as Exhibit 1.

2.  The court's Order Dismissing Action with prejudice, dated November 18, 1994.  A true and correct copy is attached hereto as Exhibit 2.

3.  The Ninth Circuit's first opinion in its Case No. 94-17133, dated February 13, 1996, and affirming the trial court's dismissal.  A true and correct copy is attached hereto as Exhibit 3.

4.  The Ninth Circuit's second opinion in Case No. 94-17133, dated March 7, 1996, and affirming the trial court's denial of defendants' request for an award of attorneys' fees and costs without prejudice to their filing a separate motion requesting such an award.  A true and correct copy is attached hereto as Exhibit 4.

5.  The trial court's Order awarding sanctions against plaintiffs, dated March 24, 1997, and the trial court's Notice of Entry of Judgment awarding sanctions against plaintiffs.  True and correct copies of these two documents are attached hereto as Exhibit 5.

6.  Two opinions by the United States Supreme Court denying the Gabors' petitions for writ of certiorari, dated October 15, 1996 and December 9, 1996.  True and correct copies of these two documents are attached hereto as Exhibit 6.

B.  *Gabor v. Board of Equalization, et al.*, U.S.D.C. (N.D.) Case No. C-96-20234 JW

7.  The Complaint filed on April 25, 1996.  A true and correct copy is attached hereto as Exhibit 7.

8.  An entry on the docket sheet (No. 57, dated June 6, 1996) reflecting Judge Ware's Order finding himself disqualified in response to plaintiffs' motion to recuse him; a second entry on that docket sheet (No. 64, dated June 10, 1996) reflecting the reassignment of this case

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County's Request for Judicial Notice
in Support of its Motion for Dismissal          -1-          C07 04266 RMW (HRL)

1  to Judge Spencer Williams; and a third entry on the docket sheet (No. 73, dated June 24, 1996)

2  reflecting an Order by Judge Spencer Williams recusing himself from this case.  A true and

3  correct copy of this docket sheet is attached hereto as Exhibit 8.

4       9.  The trial court's Memorandum Opinion and Order, dated September 20, 1996,

5  dismissing the Complaint without prejudice as to all non-federal defendants and the trial court's

6  Order, dated October 10, 1996, Dismissing Complaint as to Federal Defendants.  True and

7  correct copies of these two documents are attached hereto as Exhibit 9.

8       10.  The Ninth Circuit's opinion in Case No. 96-17088, dated July 14, 1997 and

9  affirming the trial court's dismissal.  A true and correct copy is attached hereto as Exhibit 10.

10  C.  *Gabor v. Officer Ferriera, et al.*, U.S.D.C. (N.D.) Case No. C-96-20470 RMW

11       11.  The Complaint in this matter, initially filed in the Eastern District as U.S.D.C. Case

12  No. CIV-S 96-00428 DFL JFM, dated February 2, 1996.  A true and correct copy is attached

13  hereto as Exhibit 11.

14       12.  An entry on the docket sheet for U.S.D.C. (N.D.) C-96-20470 RMW (No. 1, dated

15  June 10, 1996) transferring this case from the Eastern District; a second entry on that docket

16  sheet (No. 8, dated July 11, 1996) reflecting an Order by Judge Spencer Williams recusing

17  himself from this case; and a third entry on that docket sheet  (No. 9, dated July 9, 1996)

18  reflecting the reassignment of this case to Judge Ronald Whyte.  A true and correct copy of this

19  docket sheet is attached hereto as Exhibit 12.

20       13.  The trial court's Memorandum Opinion and Order, dated September 20, 1996,

21  dismissing the Complaint as to all defendants and denying the motion by three defendants to

22  declare plaintiffs to be vexatious litigants.  A true and correct copy is attached hereto as Exhibit

23  13.

24       14.  An entry on the docket sheet for the 9th Circuit's Case No. 96-17306 (dated January

25  29, 1997) reflecting the dismissal of this appeal for lack of jurisdiction.  A true and correct copy

26  of this docket sheet is attached hereto as Exhibit 14.

27       15.  The Ninth Circuit's opinion in Case No. 96-17289, dated September 22, 1997,

28  affirming the trial court's dismissal.  A true and correct copy is attached hereto as Exhibit 15.

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County's Request for Judicial Notice
in Support of its Motion for Dismissal      -2-      C07 04266 RMW (HRL)

1       These documents are judicially noticeable under Federal Rule of Evidence 201(b)

2 because they contain adjudicative facts not reasonably disputable and they are capable of

3 accurate and ready determination from a source whose accuracy cannot be reasonably

4 questioned.

5 Dated:  October 9, 2007                 Respectfully submitted,

6                                   ANN MILLER RAVEL
                                  County Counsel

7

8                   By:

9                                   MARCY L. BERKMAN,
                                  Deputy County Counsel

10

11                                   Attorneys for Defendants
                                  COUNTY OF SANTA CLARA

12                                   (ERRONEOUSLY SUED AS
                                  COUNTY OF SANTA CLARA

13                                   BOARD OF SUPERVISORS)

14

15

16

17

18

19

20

21

22

23

24

25 98417.wpd

26

27

28

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

County's Request for Judicial Notice
in Support of its Motion for Dismissal        -3-         C07 04266 RMW (HRL)

1    JOHN GABOR, SUI JURIS
     590 SMOKEY COURT
2    CAMPBELL, CALIFORNIA 95008
     ************************
3    IN THEIR OWN STEADS

ORIGINAL
FILED
SEP 0 1994
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

8              UNITED STATES DISTRICT COURT
                    NORTHERN DIVISION

10   JOHN GABOR              C - 94    CASE NO:
     KAY GABOR
11
                                       TITLE 42 CIVIL COMPLAINT
12              PLAINTIFFS

                      v.

13   MICHAEL S. FRAZER, ET AL.;SANTA CLARA     JURISDICTION:  TITLE 42 U.S.C.
14   VALLEY HUMANE SOCIETY; BOARD OF           §§ 1983, 1985, 1986, 1988; TITLE
     EQUALIZATION; STEVE GIBBONS;  MIKE        28 U.S.C. §§ 1392, 1603, 1604, 1607,
15   REILLY; AMERICAN KENNEL CLUB [AKC];       2201, 2202; TITLE 7 U.S.C. § 2131;
     FRANCHISE TAX BOARD [FTB]; FRED           TITLE 19 U.S.C. §§ 1621, 1602-1604;
16   BERKEY;  JOHN CORNELIUS; RICHARD          VIOLATIONS OF THE FIRST,
     STOLTZ; CYNTHIA K. WRIGHT;  CYNTHIA K.    FOURTH, FIFTH, SIXTH, EIGHTH,
17   VANCE; PAUL R. FIRLING (AKC); MAXINE      FOURTEENTH AMENDMENTS TO
     PATTON; ANDREA SAN PHILLIPO; JEANIE       THE CONSTITUTION FOR THE
18   PACK; RITA PERKO; DIANE WARD; GEORGIA     UNITED STATES
     MARTIN; RICK LAMPS; DOES 1 - 500.
19                                             Time: _____
                                               Date: _____
                                               Place: _____
20              DEFENDANTS
                                               DEMAND TRIAL BY JURY
21

22              TITLE 42 CIVIL COMPLAINT

23              DEMAND TRIAL BY JURY

24
     **Rule 38: Jury Trial of Right**
25
        **(a) Right Preserved.**  The right of trial by jury as declared by the Seventh Amendment to
26
     the Constitution or as given by a statue of the United States shall be preserved to the parties.
27

28

**EXHIBIT 1**

1

# TABLE OF CONTENTS

2

3 | **Section Title** | **Page**

4 | Introduction | 3

5 | Jurisdiction | 3

6 | Venue | 4

7 | Plaintiffs | 4

8 | Defendants | 4

9 | Summary | 5

10 | Brief & Memorandum of Points and Authorities | 7

11 | Defendants' Key to Causes of Action | 10

12 | Causes of Action

13 | First Cause of Action | 11
Second Cause of Action | 14
14 | Third Cause of Action | 16
Fourth Cause of Action | 22
15 | Fifth Cause of Action | 26
Sixth Cause of Action | 29
16 | Seventh Cause of Action | 30
Eighth Cause of Action | 34
17 | Ninth Cause of Action | 35
Tenth Cause of Action | 38
18 | Eleventh Cause of Action | 40
Twelfth Cause of Action | 43
19 | Thirteenth Cause of Action | 46
Fourteenth Cause of Action | 50
20 | Fifteenth Cause of Action | 53
Sixteenth Cause of Action | 54
21 | Seventeenth Cause of Action: Accounting | 57

22 | Compensatory Damages | 58

23 | Prayer for Relief | 58

24 | Jury Demand | 59

25 | Codicil | 60

26 | Synopsis | 61

27

28

# INTRODUCTION

1.      This is a civil rights action for declaratory relief and money damages. The Plaintiffs have been denied their rights to freedom from assault, arrest, criminal trespass to their persons and property, assault, theft, false arrest, excessive bail, slander per se, .... all under color of law with no good cause showing because ALL the Defendants failed in their constitutional and statutory duties to protect the rights of PLAINTIFFS JOHN GABOR and KAY GABOR.

2.      Because of the acts and omissions of the Defendants averred to in the Affidavit supporting the Title 42 Civil Complaint PLAINTIFFS JOHN GABOR and KAY GABOR suffered loss of the protectable interests of their right to own property, to be secure in their papers, to be secure in their home, to be secure in their pursuit of life, liberty and happiness all based on inferences, false allegations, defamation of character without any good cause showing.

3.      ALL the DEFENDANTS knew or should have known, because of the expertise and training required for their respective jobs, that there was no evidence to support either an arrest, seizure of property, trespass to person, criminal trespass to property, or a prosecution in any form whatsoever, yet a criminal prosecution against innocent United States citizens was intentionally, maliciously and cleverly effected. <EXHIBIT # 2,4>

4.      PLAINTIFFS JOHN GABOR and KAY GABOR have been the victims of persons with dangerous propensities either conjoining or conspiring to deprive them of certain protectable rights for which they are seeking remedy under U.S.C. Title 42 §§1983 - 1988. <EXHIBIT # 1>

# JURISDICTION

5.      Jurisdiction over this action exists by reason of the First, Fourth, Fifth, Sixth, Seventh Eighth, Ninth, Thirteenth and Fourteenth Amendments to the Constitution for the United States and by virtue of 28 USC §§1331, 2201,2202. PLAINTIFF'S claims arise pursuant to the Constitution and Title 42 U.S.C. §§1983, 1985, 1986 and 1988.

VENUE

6.      To the best of PLAINTIFFS' information and belief all Parties to this action reside in the United States of America and Santa Clara County, California within the judicial district of this Court. PLAINTIFFS JOHN GABOR's  and KAY GABOR's claims arose initially in Santa Clara County which is within the judicial district of this Court.

PLAINTIFFS

7.      PLAINTIFF JOHN GABOR is a citizen and resident of the United States of America and of the State of California, and is over the age of eighteen (18) years.  PLAINTIFF JOHN GABOR is currently a resident of Santa Clara County, California, and, at all times relevant herein, PLAINTIFF JOHN GABOR was a resident of  Santa Clara County, California.

8.      PLAINTIFF KAY GABOR is a citizen and resident of the United States of America and of the State of California, and is over the age of  eighteen (18) years.  PLAINTIFF KAY GABOR is currently a resident of Santa Clara County, California, and, at all times relevant herein, PLAINTIFF KAY GABOR was a resident of  Santa Clara County, California.

DEFENDANTS

9.      DEFENDANTS in this case are, in fact, officers of State and Federal Agencies, officers of the State of California, officers of various charitable organizations operating under contract with the State of California, natural citizens who were "conscripted" to work under color for the above named officers, principal officers of certain private agencies and/or clubs who either conjoined with or conspired with the above named officers,  certain media personnel who, also, either conjoined with or conspired with the above named officers and, according to the best of PLAINTIFFS'  information and belief, all Defendants are residents of  the County of Santa Clara, California.

10.     ALL DEFENDANTS named in the above captioned matter were willfully involved as joint participants in the unlawful conduct herein alleged.  At all times pertinent hereto all Defendants were either holding Public Offices of Trust, Honor and Profit, or officers and

1    employees of certain charitable agencies and private clubs operating as "Humane Societies",

2    "Society for Prevention of Cruelty to Animals", "American Kennel Club" and etc.. The joint

3    action of these groups constitutes a corrupt conspiracy or joint conduct that was undertaken

4    under color of law for no good cause showing.

5    11.    Defendant Federal and State Agencies: the State Humane Society, the Franchise Tax

6    Board, the State Board of Equalization, the American Kennel Club, the Internal Revenue Service

7    and the Department of Agriculture are responsible for the actions of their Officers and Agents

8    and said agencies were at all times pertinent hereto, acting under color of federal or state laws

9    and usage.

10   12.    At all times pertinent hereto Defendant Federal and State Agencies were under oath to

11   protect certain rights of PLAINTIFFS JOHN GABOR and KAY GABOR. At all times pertinent

12   hereto Defendant Federal and State Agencies or employee/representatives thereof did violate

13   their respective oaths taken to protect certain rights of PLAINTIFFS JOHN GABOR and KAY

14   GABOR and all citizens of the state of California and of the United States. At all times pertinent

15   hereto ALL DEFENDANTS either conjoined or conspired in the prosecution and harassment of

16   PLAINTIFFS JOHN GABOR and KAY GABOR, natural citizens of the United States of

17   America and of the State of California. <EXHIBIT # 2,3,4>

18

19   **Summary of the Instant Case at the Bar:**

20   13.    For the past 20 years Plaintiffs Kay Gabor and John Gabor have sold puppies of different

21   breeds from their home as a way to increase their modest income. Plaintiff Kay Gabor loves

22   animals, loves caring for them, nurturing them to marketable maturity. Plaintiffs have used the

23   catalog supplies available to all animal owners for many of the common ailments most small pets

24   suffer one time or another. Defendant Michael S. Frazer has upon numerous occasions

25   prejudiced the courts and the public in general by referring to these "house hold medications" as

26   "contraband" for the benefit of the media--both T.V. and news paper.

27   14.    Plaintiffs Kay Gabor and John Gabor do not own, nor have they ever owned a "pet shop".

28   The produce (puppies) is sold out of their home. Classified advertisements are placed in the

1  news paper, people call for appointments, are given a selection of puppies and select one.  Most

2  of the puppies sold by Plaintiffs John and Kay Gabor are born of dogs they have placed in the

3  homes of other friends and acquaintances.  Plaintiffs take the puppies when they are old enough

4  to leave the mother to sell through news paper ads.  None of their acquaintance who sell dogs in

5  this manner--as agricultural produce--ever thought of being required to collect sales taxes for

6  the State of California!  Manufacturers do not collect sales tax!  This is a home based,

7  agricultural business which requires no reporting to the Board of Equalization.

8  15.    It was not until after Defendant Michael S. Frazer invaded their home, held them hostage,

9  and took all their private papers  that Plaintiffs John Gabor and Kay Gabor ever had any

10  problems with any of the above named agencies.  Defendant Michael S. Frazer subsequently

11  distributed these private papers between the Franchise Tax Board, The Board of Equalization,

12  and then the A.K.C..  The A.K.C. is a corporation that seems to be attempting to outlaw sale of

13  any animal by any individual or group that has not been "officially granted permission to do so"

14  by them.

15  16.    Certain agents from those respective agencies either conjoined or conspired to harass,

16  trespass upon the property of, slander per se, intimidate, falsely arrest, Plaintiffs for over four (4)

17  years.

18  17.    Attorneys for Plaintiffs John Gabor and Kay Gabor have worked diligently to stop the

19  harassment of the above listed agencies and to comply with their demands in an effort to resolve

20  the entire situation.  The progress of the attorneys' has been thwarted at every turn by Defendant

21  Michael S. Frazer's refusal to return Plaintiffs' private papers and records.

22  18.    Plaintiffs have sought remedy through cooperation with the above named agencies,

23  through complying, through doing community service, through hiring attorneys to settle

24  accounts...all to no avail.  The harassment continues.  Plaintiffs simply want to be left alone to

25  continue their  business because they believe no one has the right to tell them that they cannot do

26  what they want to do on their own property and in their own home!  <EXHIBIT # I>

27

28

BRIEF & POINTS AND AUTHORITIES SUPPORTING PLAINTIFFS' ALLEGATIONS

19.    Defendant Michael S. Frazer was the initiator of all searches, seizures, criminal complaints, harassments, surveillance of, regulatory "takings", deprivation of the protectable rights to the pursuit of life, liberty, and property in regard to Plaintiffs' John and Kay Gabor. Defendant Michael S. Frazer actively participated in the prosecution of Plaintiffs even in so far as making recommendations as to fines, arrests, jail time, and setting the bail requirement of Plaintiffs!   Plaintiffs had no prior criminal record!  The shame of all this sequence of events belongs to the many judges, district attorneys, police officers, charitable organization officers who either conjoined or conspired with Defendant Michael S. Frazer to commit these acts against Plaintiffs all under color of law and for no good cause showing!

20.    California Civil Code § 607g:  Issuance by Humane Officer of Notice to Appear in Court for Violation of Animal Control Laws.

> The governing body of a local agency, by ordinance, may authorize employees of public pounds, societies for the prevention of cruelty to animals, and humane societies who have qualified as humane officers pursuant to Section 607f, and which societies or pounds have contracted with such local agency to provide animal care or protection services, to issue notices to appear in court pursuant to Chapter 5c (commencing with Section 853.5) of Title 3 of Part 2 of the Penal Code for violations of state or local animal control laws.  Such employees shall not be authorized to take any person into custody even though the person to whom the notice is delivered does not give his written promise to appear in court. **The authority of such employees is to be limited to the jurisdiction of the local agency authorizing the employees.** <Emphasis Added>

21.    In *GREEN v SAENZ*, No. 89 C 8666.  U.S. District Court, N.D. Illinois, E.D., June 15, 1992. it was held that:

> (1)  police officers who did not merely testify at trial, but initiated criminal prosecution against defendant, did not enjoy absolute immunity on subsequent malicious prosecution claim, and (2) allegations in plaintiff's complaint were sufficient to state conspiracy claim against defendants for conspiring to initiate criminal prosecution against plaintiff.

22.    It is stated in Title 18 U.S.C. §43, ANIMAL ENTERPRISE PROTECTION ACT:

[Plaintiff knows the law and has studied some law and is therefore aware that Title 18 is not to be entered in a Civil Action; however, absent any action taken by the proper authorities Plaintiff believes he has no other recourse.]

1  Whoever:

2  (2)  intentionally causes physical disruptions to the functioning of an animal
   enterprise by intentionally stealing, damaging, or causing the loss of any
3  property (including animals or records) used by the animal enterprise, and
   thereby causes economic damage exceeding $10,000 to that enterprise, or
4  conspires to do so; shall be fined under this title or imprisoned not more
   than one year, or both.

5

6  23.  From the Headnotes in *PEOPLE v. GARCIA* 17 Cal App 4th 1169 Cal. Rptr. 2d [Aug.

7  1993]

8  (2)      District and Municipal Attorneys §2--Duties--Special Obligations--
   Prosecutors have a special obligation to promote justice and the ascertainment
9  of truth.  The duty of the district attorney is not merely that of an advocate.
   His or her duty is not to obtain convictions, but to fully and fairly present to
10 the court the evidence material to the charge upon which the defendant stands
   trial, and it is the solemn duty of the trial judge to see that the facts material to
11 the charge are fairly presented.  In the light of the great resources at the command
   of the district attorney and the state's commitment that justice be done to the
12 individual, restraints are placed on the prosecutor to assure that the power
   committed to his or her care is used to further the administration of Justice in
13 the courts and not to subvert the procedure in criminal trials designed to ascertain
   the truth.

14

15 24.  *CONFORTI v UNITED STATES*; 92 Daily Journal D.A.R. 14415. DNV

16      "Tax liability can only be litigated in tax court or suit for refund in United States
   district court.

17

18 25.  FEDERAL TAX COMMISSION v FIGGIE INTERNATIONAL, INC. 93 Daily Journal

19 D.A.R. 5799;  CD.CA.

20      "In consumer redress actions, defendant cannot be ordered to contribute
   excess damages to non-profit groups," (ie S.P.C.A.)

21

22 26.  *MARTIN SCHACHTER and DAVID S. KARP v. UNITED STATES OF AMERICA,*

23 *INTERNAL REVENUE SERVICE and SPECIAL AGENT THOMAS LAVIN,* 94 D.A.R. 4914:

24      I.R.S. Special Agents were held responsible for defaming a man's character even
   after death. [Defendant Michael S. Fraser sent out 440 letters slandering Plaintiffs]

25

26 27.  *BRANDON v. HOLT* 469 U.S. 464 6th Cir. Court of Appeals 1985.

27      In cases under "1983", a judgment against a public servant "in his
   official capacity" imposes liability on the entitiy that he represents.

28

28.    *BUCKLEY v. FITZSIMMONS* (No. 91-7849) 93 Daily Journal 7961) IN RE:  District

Attorney "fabricating Evidence" in Rape/murder case for press release.

> Prosecutors making press statements and allegedly fabricating
> evidence in Rape/murder case receive no absolute immunity.  The U.S.
> Supreme Court held that prosecutors were not entitled to absolute immunity
> from suit for making allegedly false statements about a suspect at a press
> conference and for allegedly fabricating evidence during the investigation
> of the crime.

29.    *UNITED STATES v. $31,990 IN U.S. CURRENCY*, 2d Cir. 1993.  982 F. 2d 851,854.

> "Evidence sufficient to support an inference that seized funds are
> related to some illegal activity does not establish even a prima facie case of
> probable cause absent the demonstration of some link between the cash and
> a narcotics transaction.  The government must establish some nexus between
> the seized funds and a narcotics transaction.  The court found that a prima facie
> case of probable cause had not been made on the following evidence:  (1) a large
> amount of cash was found in the trunk of an unregistered  car;  (2) the cash was
> bundled using rubber bands and a plastic bag; (3) etc..."

30.    Any reasonable man should have seen through every affidavit written by Defendant

Michael S. Frazer. For example, Defendant Stephen Gibbons wrote the "Answer in Opposition to

Defendant's Request for Return of Property"  backed by an affidavit written by Defendant

Michael S. Frazer wherein Defendant Michael S. Frazer states on page 4, paragraph 4:  "The

Gabors have admittedly operated an illegal dog sales business for more than twenty years...."

If Plaintiffs admitted to anything "illegal" is was under duress.  Plaintiffs have been in business

for 20 years...a lawful business! Page 5, paragraph 1, lists the items taken by Defendant Michael

S. Frazer which had nothing whatsoever to do with his initial "investigation" and seizure of

property validated by an unsigned warrant and without judicial direction!

31.    Paragraph 2, page 5, "...I discovered evidence of the existence of an ongoing criminal

enterprise." Would a reasonable man call selling puppies a "criminal enterprise?"   In other

documents Defendant Michael S. Frazer refers to the ordinary breeder supplies of any animal

breeder, which can be purchased  over the counter or through catalog sales, as "contraband".  A

reasonable man would have required identification, definition and proof of "contraband".

32.    Using Defendant Michael S. Frazer's definition of "criminal activities" and "contraband"

any man could conceivably be labeled a "felon".  Keep in mind the "three strikes and you're out"

1  law.   That means corrupt courts, corrupt district attorneys and corrupt judges can put any

2  innocent man behind bars any time they choose! Refer to *BUCKLEY v. FITZSIMMONS* supra.

3  33.    Even California's own Supreme Court declared it unconstitutional for a corporate officer

4  [all police officers, investigative agents are corporate officers] to be the only complainant to an

5  action! CCP §87.

6  34.    Yes, Plaintiffs entered a plea of "no contest". They were given no other choice. They

7  were not advised that by so doing they were waiving all rights.  They had been arrested, put in

8  jail under excessive bail.  $100,000 is more than that required for a suspected rapist! Plaintiffs

9  feared for their lives and were advised to get out at any cost so they chose to go into debt to gain

10  their physical freedom.  Under duress and threat of incarceration most men will cop a plea!  A

11  plea so entered can later be declared Void!

12  35.    In the Nuremberg Trials judges were put on trial for entering judgments to strengthen the

13  "State" and the income of the "State" rather than to uphold the unalienable rights of the people!

14  It seems that the United States is very close to imitating the conditions of Nazi Germany as they

15  were in 1936 - 1940!  Plaintiffs pray that God will intervene to save the Courts for the protection

16  of the people of the United States of America!

17

18  36. CAUSES OF ACTION:  KEY RELATING DEFENDANTS WITH SPECIFIC CAUSES

| Defendant | Causes of Action |
|---|---|
| Defendant Michael S. Fraser | Causes of Action: 1,2,3,5,8,10,11,13,14. |
| Defendant Santa Clara Valley Humane Society | Causes of Action: 1,2,3,5,8,10,11,13,14. |
| Defendant County of Santa Clara | Causes of Action: 1,2,3,5,8,10,11,13,14. |
| Defendant Board of Equalization | Causes of Action: 11,13, 16. |
| Defendant Steve Gibbons | Causes of Action: 12. |
| Defendant Board of Equalization | Causes of Action: 11,13, 16. |
| Defendant, Mike Reilly | Causes of Action: 4,7. |
| Defendant American Kennel Club (AKC) | Causes of Action: 3,4,5,8. |
| Defendant Fred Berkey | Causes of Action: 13. |
| Defendant John Cornelius | Causes of Action: 13. |
| Defendant Richard Stoltz | Causes of Action: 11,13, 16. |
| Defendant Cynthia K. Wright | Causes of Action: 16. |
| Defendant Cynthia K. Vance | Causes of Action: 16. |
| Defendant Paul R. Firling (AKC) | Causes of Action: 3,4,5,7,8,9. |
| Defendant Maxine Patton | Causes of Action: 9. |
| Defendant Andrea San Phillipo | Causes of Action: 9. |
| Defendant Jeanie Pack | Causes of Action: 15. |
| Defendant Rita Perko | Causes of Action: 3,7,9. |

Defendant William Burke                    Causes of Action: 1,2,3,5,8,10,11,13,14.
Defendant Diane Ward                       Causes of Action: 6.
Defendant Georgia Martin                   Causes of Action: 6.
Defendant Rick Lamps                       Causes of Action: 10,12.

**FIRST CAUSE OF ACTION: TRESPASS TO CHATTELS; ASSAULT; FALSE ARREST
VIOLATION OF THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS
TO THE CONSTITUTION FOR THE UNITED STATES**

37.     July 31, 1990, Michael S. Frazer, an employee of the Santa Clara Valley Humane Society
and alleged "State Humane Officer, forced his way into Plaintiff John Gabor's and Plaintiff Kay
Gabor's house with a CPC § 1524 search warrant, with the word "copy" stamped on the front. **It
was not signed or dated.** Michael S. Frazer ignored Plaintiff John Gabor's questions about that
fact and forced him into the family room in Plaintiffs' house where Plaintiff John Gabor was
held in the bar area by a Campbell Policeman. Plaintiff John Gabor was warned if he tried to
interfere with their search, the Campbell Policeman would take him to jail.

38. California Penal Code §1524 states: " (a) A search warrant may be issued upon any of the
following grounds: (1) When property was stolen or embezzled; (2) When the property or things
were used as a means of committing a felony; (3) When the property or things are in the
possession of any person with the intent to use it as a means of committing a public offense, or in
the possession of another to whom he or she may have delivered it for the purpose of concealing
it or preventing its being discovered......" and so forth. MATHEW v. ELDRIDGE

39.     Plaintiffs John Gabor and Kay Gabor have never before had a felony citation. Plaintiffs
John Gabor and Kay Gabor have never been convicted of abusing property of another. Plaintiffs
John Gabor and Kay Gabor have never "embezzled or stolen property". A jury would have to
stretch the truth a long way to prove that selling puppies from one's homes demonstrates the
"means to commit a felony" or that they were so doing with the "intent to commit a felony"!

40.     Defendant Michael S. Frazer, two tough looking females and an unidentified plain clothes
man, plus a Campbell cop, came into Plaintiff John Gabor's and Plaintiff Kay Gabor's house.

1  Defendant Michael S. Frazer did not challenge the ownership of any pups or adult dogs. When

2  Defendant Michael S. Frazer finished raiding their home, he gave Plaintiff John Gabor an

3  incomplete property report of the items which he had "taken" without judicial guidance or due

4  process.

5  41.    The CPC §1524 search warrant was not signed and filed until, August 10, 1990.

6  Defendant Michael S. Frazer came into Plaintiff John Gabor's and Plaintiff Kay Gabor's house on

7  July 31, 1990. The back of this search warrant was unsigned by any judge when used to raid us,

8  July 31, 1990, although it had been signed by Defendant Michael S. Frazer . August 10, 1990, a

9  copy of this search warrant signed and stamped by Judge Gilbert Brown was sent to Plaintiffs'

10  attorney, Clark Barrett. The affidavit refers to **Defendant Michael S. Frazer as a captain of**

11  **the State Humane Society, then continues to state the fact that he was a cop specializing in**

12  **burglary omitting his true authority and absent documentation proving otherwise he may**

13  **have been committing fraud on the court.** Defendant Michael S. Frazer's background

14  continues to state that since 1989, he had been investigating criminal animal cruelty and related

15  offenses. **CC § 607g provides a Humane Officer with no such authority!** The affidavit was

16  signed by Defendant Michael S. Frazer.

17  42.    Defendant Michael S. Frazer as affiant claimed to be  investigating the activities of Kay

18  Gabor regarding suspected theft by false pretense charges. The investigation for selling a product

19  "under false pretenses" comes under the jurisdiction of consumer affairs.  The investigation was

20  intended after receipt of information about 39 allegedly illegal, on going puppy sales operations

21  taking place at another suburban residence from a similarly involved dealer, Kenneth L. Hershey.

22  The charge against Kenneth L. Hershey, if it were true, should have been heard by a grand jury

23  under the authority of the attorney general!

24  43.    Plaintiffs John Gabor and Kay Gabor contend that Defendant Michael S. Frazer misused

25  the law in the first instance; that Defendant Michael S. Frazer committed criminal acts under

26  color of law by using a maliciously procured warrant to attack citizens; that Defendant Michael

27  S. Frazer has committed the felonious acts of trespass to private property, trespass to chattels;

28  false arrest;  that Defendant Michael S. Frazer has intentionally and maliciously inflicted severe

1  emotional distress and assault in the form of anxiety upon Plaintiffs John Gabor and Kay Gabor

2  for a period exceeding four (4) years.  Plaintiffs John Gabor and Kay Gabor contend that

3  Defendant Michael S. Frazer, et al. continues to abuse his office as an officer for the Humane

4  Society, continues to violate the first, fourth, fifth, sixth, seventh, eighth, thirteenth and

5  fourteenth amendments to the Constitution for the United States and therefore,  Plaintiffs John

6  Gabor and Kay Gabor seek remedy under U.S.C. Title 42 §§1983 - 1988.

7  44.    All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned

8  matter were caused by  agency,  the actions of which are the direct responsibility of Defendant

9  Michael S. Frazer, the agency who hired him with full knowledge of his dangerous propensities;

10  an agency which hired him knowing that because of his records with the San Jose Police

11  Department, that department had refused to rehire him.  *BRANDON v. HOLT* IN RE: DANGEROUS

12  PROPENSITIES.

13  45.    As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al., and Does 1

14  though 3, Plaintiff John Gabor and Plaintiff Kay Gabor have suffered four (4) years of money

15  damages in the form of legal fees to protect themselves, lost business due to lack of equal

16  protection under the commerce clause,  loss of the protectable interests in the form of freedom

17  from fear, anxiety, threats, extortion, assault, freedom to increase their own income in the only

18  business they are able to run at this time in their lives,  freedom to be secure in their papers, their

19  home, freedom to the pursuit of life, liberty, ownership of property.

20  46.    Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees  for

21  the past four (4) years in order to protect themselves from the false allegations of Defendant

22  Michael S. Frazer and the government agencies, Franchise Tax Board and the Board of

23  Equalization,  with whom he either conjoined or conspired to separate Plaintiffs John Gabor and

24  Kay Gabor from their right to own property and to do  business from their home.  All actions

25  taken against Plaintiffs were done so without good cause showing and in violation of the first,

26  fourth, fifth, sixth, eighth, fourteenth amendments to and the commerce clause within the

27  Constitution for the United States.

28

SECOND CAUSE OF ACTION:  SLANDER PER SE; FALSE ACCUSATIONS; ASSAULT

47.    PLAINTIFFS  incorporate paragraphs 37 - 46 of their first cause of action herein contained.

48.    Plaintiffs John Gabor and Kay Gabor have suffered severe emotional distress, assault in the form of constant anxiety as to when they will be next raided, slander per se from unidentified callers making calls from pay phones and even by Defendant Michael S. Frazer sending out questionnaires to their customers suggesting that their products were defective and that they may have been doing something unlawful! Plaintiffs John Gabor and Kay Gabor seek compensatory and punitive damages for the years of severe emotional stress and anxiety they have suffered at the hands of Defendant Michael S. Frazer. Refer to KARP v .I.R.S. supra.

49.    Defendant Michael S. Frazer quoted the above mentioned dealer informant,  Ken Hershey,  as stating that Kay Gabor in Campbell sells approximately 100 poodle puppies per month, and the sale price is usually between $300 and $600 dollars, the price depending on size, color, sex of dog. Hershey allegedly said, **according to  Michael S. Frazer**, that he had seen the operation, having visited Plaintiffs' two-story residence, to see what she was selling. Hershey allegedly described the conditions the dogs were kept in to be generally dirty and overcrowded. Hershey allegedly advised that he had known about Kay Gabor for many years, and that she specialized in small poodles which he noted were of poor quality.  Hershey allegedly stated that he had seen advertisements in the San Jose Mercury News for Gabor's dogs, which usually read teacup and toys, referring to the smaller sizes of poodle breeds.

50.    **All the above statements which Michael S. Frazer stated about Kenneth L. Hershey were false. Kenneth L. Hershey had never been in Plaintiffs' home.** Plaintiffs John Gabor and Kay Gabor discovered later on talking to Kenneth L. Hershey, that Michael S. Frazer was trying to put him out of business the same way he was trying to put Kay Gabor out of  business!

51.    Also, Plaintiff Kay Gabor doesn't begin to sell a hundred pups a month.  The range of the prices run from $125-$350.  Plaintiff Kay Gabor has never sold a pup for $600 dollars.  All pups are sold as pets. Plaintiffs John Gabor and Kay Gabor always tell their customers that all they have to do to get their money back if anything is wrong is to bring back a statement from a

1  veterinarian diagnosing the problem within a week.  Plaintiff Kay Gabor grooms, washes and

2  conditions all animals before she advertises them, to assure the owner that the animal is healthy

3  and will make a terrific pet in accordance with the Animal Welfare Act of 1970, U.S.C. Title 7

4  §§ 2131-2157.

5  52.    Defendant Michael S. Frazer's common mode of operation is to (1) find some "friend" or

6  "acquaintance" of the individual he plans to attack, (2) offer to leave them alone if they will

7  witness against the individual under attack, (3) secure a warrant based on either an anonymous

8  complaint or a complaint fabricated to create a scandalous scenario, (4) raid private property and

9  take all papers, records, etc.--whatever he chooses, (5) falsely arrest the occupants of the house

10  by holding them hostage in a certain area until he has completed his theft under color, (6)

11  threaten them with criminal prosecution if they try to oppose him or protect themselves in any

12  way whatsoever.

13

14  **53.    Interjection:  Why?  Animals are marketable products.  By misleading the public**
    **through manipulation of the media Defendant Michael S. Frazer has been able to create an**
15  **image of a "rescuer of abused animals" to hide his theft under color.  An investigation of**
    **Defendant Michael S. Frazer's association with other "animal control" charities or**
16  **agencies and investigation as to his relationship with A.K.C. which has sold some of the**
    **seized animals might further prove the nexus between the under color activities of some of**
17  **the Defendants who also are known by past records to have dangerous propensities.**

18  54.    All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned

19  matter were caused by  agency,  the actions of which are the direct responsibility of Defendant

20  Michael S. Frazer, the agency who hired him with full knowledge of his dangerous propensities;

21  an agency which hired him knowing that because of his records with the San Jose Police

22  Department, that department had refused to rehire him. *BRANDON v. HOLT* IN RE: DANGEROUS

23  PROPENSITIES.

24  55.    As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al.,  Plaintiff

25  John Gabor and Plaintiff Kay Gabor have suffered over four (4) years of money damages in the

26  form of legal fees to protect themselves, lost business due to lack of protection under the

27  commerce clause, loss of the protectable interests in the form of freedom from fear, anxiety,

28  threats, extortion, assault, freedom to increase their own income in the only business they are

1  able to run at this time in their live, freedom to be secure in their papers, their home, freedom to

2  the pursuit of life, liberty, ownership of property .

3  56.    Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees for

4  the past four (4) years in order to protect themselves from the false allegations of Defendant

5  Michael S. Frazer and the government agencies and the Franchise Tax Board, Board of

6  Equalization with whom he either conjoined or conspired to separate Plaintiffs John Gabor and

7  Kay Gabor from their right to own property and to do business from their home. All actions

8  taken against Plaintiffs were done so without good cause showing and in violation of the first,

9  fourth, fifth, sixth, eighth, and fourteenth amendments to the Constitution for the United States.

10

11  THIRD CAUSE OF ACTION:  TRESPASS TO CHATTELS;
   VIOLATION OF RIGHT TO PRIVACY; VIOLATION OF PROPERTY

12  57.    PLAINTIFFS incorporate paragraphs 37 - 56 of their first and second causes of action

13  herein contained.

14  58.    Defendant Michael S. Frazer seized, absent judicial authorization, many items not listed

15  on the search warrant such as personal notes Plaintiff Kay Gabor had written to herself-- slips of

16  paper tacked on the wall with people's names--people that had called her and wanted puppies.

17  Plaintiff Kay Gabor was holding their numbers so she could try to find the dog for them. No

18  crime or complaint was evident. Defendant Michael S. Fraser was fishing for information to

19  fabricate a crime!

20  59.    Defendant Michael S. Frazer took all of Plaintiffs' A.K.C. papers, titles of ownership,

21  which identified all of their own personal dogs in addition to the dogs Plaintiff Kay Gabor had

22  leased out to other people.  Leased dogs are accounts receivable and future income.  The loss of

23  these papers cost Plaintiff John Gabor and Plaintiff Kay Gabor a lot in lost business and lost

24  business contracts.  Some of those contracts had taken years to establish. Plaintiffs never have

25  received any of these papers back.  Defendant Michael S. Frazer seized an estimated total of

26  519 separate items. The items Defendant Michael S. Frazer took were breeder's supplies that

27  anyone can buy over the counter, or order from any animal supply catalog. All such items are

28  legal in California. Total value of such supplies and equipment taken was $3,085.92.

60.    Defendant Michael S. Frazer took eight sealed envelopes with A.K.C. papers (ownership titles). These were returned to Plaintiffs marked, "address unknown." These unopened envelopes were in a drawer, waiting for the buyers of pups to claim them. These papers are titles of commodity ownership.

61.    Defendant Michael S. Frazer took records from a small auto wholesale business which was not listed on the warrant. Defendant Michael S. Frazer signed his name proving he took four items that were not listed on the search warrant. Defendant Michael S. Frazer did not send the original items back, he just sent an incomplete set of copies. The S.P.C.A. and/or Humane Society is not the D.M.V. or Consumer Affairs.

62.    Attorney William Chestnut moved the court for return of property. The court denied the motion.  Plaintiffs' attorney filed a claim against the county and state, which was denied. The county and the state refused the return of business property and equipment which is not subject to forfeiture!

63.    Attorney Chestnut spoke with Defendant Michael S. Frazer about the issues presented in the conversation between Plaintiff John Gabor and himself. Attorney Clark Barrett mailed Plaintiffs copies of the affidavit, search warrant and return.  Defendant Michael S. Frazer said he would be happy to set up an appointment with Clark Barrett, tax attorney, and Plaintiff Kay Gabor, to review and mark the records that she and her husband wanted to have copied. If the copies are not voluminous in nature, Defendant Michael S. Frazer would make copies of the records they so marked." Evidence and privileged papers are not to be kept by an arresting officer--in this case the officer did not even have any legal authority to make an arrest!  Plaintiffs John Gabor and Kay Gabor did not understand then, nor do they understand now, what authority Defendant Michael S. Frazer, a dog catcher, could assert that allowed him to interfere in regard to their income taxes and to totally disregard the fourth amendment to the Constitution for the United States!

64.    Attorney Clark Barrett, Plaintiff John Gabor and Plaintiff Kay Gabor went to Defendant Michael S, Frazer's office where Attorney Barrett requested specific copies of documents. Plaintiffs were billed by a professional copy service for over $700 for said copies. Plaintiffs did

1   not receive all the copies they wanted. Those copies Plaintiffs did receive were not complete.

2   Defendant Michael S. Frazer took stud service contracts that Plaintiffs have never received

3   copies back on and to this day, they don't have any information on the people that they did

4   business with in the stud service. Evidence is to be stored in the evidence room which is not

5   open to the public and it is not to become the property of the seizing officers!

6   65.     To continue quoting from the letter sent to Attorney Barrett from Defendant Michael S.

7   Frazer, "Mr. Frazer advised me that he did not seize any non-relevant evidence during the search

8   warrant. He advised me that the large number of syringes and medicines are "evidence that your

9   clients were operating a large scale puppy sales operation from their home."

10  66.     Is there a State limit on the size of a business? Plaintiffs thought the government was

11  trying to encourage free enterprise! Defendant Michael S. Frazer turned over to the Board of

12  Equalization all records pertaining to another business Plaintiffs were trying to start. Those

13  records had not been listed on the warrant. Those documents and records were privileged

14  information. Plaintiffs had to close that business due to overall stress and anxiety caused by the

15  aggressive assault of Defendant Michael S. Fraser.

16  67.     November 27, 1990, the Board of Equalization started investigating Plaintiffs John Gabor

17  and Kay Gabor. There had been no problems with the Board of Equalization until Defendant

18  Michael S. Frazer turned over the private and privileged papers and records of Plaintiffs' to

19  them. He and the Board of Equalization convinced Plaintiffs John Gabor and Kay Gabor that

20  they needed a city business license and a license with the Board of Equalization in order to sell

21  dogs! No one needs a resale license when selling agricultural produce in the city, although the

22  Board of Equalization may have been able through force to "require" some people to do so.

23  Plaintiffs also, under threat of extreme harm, complied in an attempt to appease the

24  "authorities".

25  68.     "According to Mr. Gabor's report," Attorney William Chestnut stated, "You (Michael S.

26  Frazer) seized a dealer report to the State of California from '87 to '88 which contained at least

27  eight transfers for eight cars. Apparently, the copies of this information were handed over to the

28  State Board of Equalization by you since the Board called Clark Barrett and advised him that

1    they (the Board of Equalization) had that material.  This material was not relevant to either your

2    investigation of the sale of dogs, the State Board of Equalization's investigation of the sales tax

3    nor to the transfer of dogs, and we demand its return."  Plaintiffs' attorney signed this letter

4    William Chestnut, Jr. To date those records have not been returned.  The Board of Equalization

5    received stolen private and privileged papers and records and failed to report that act of theft.

6    69.    William Chestnut, the criminal attorney Plaintiffs hired, wrote a letter thanking

7    Defendant Michael S. Frazer for the receipt of materials dealing with Mr. and Mrs. Gabor's

8    vehicles!  The returned records were not complete because Defendant Michael S. Frazer had

9    taken other items related to Plaintiffs' car sales.

10   70.    Defendant Michael S. Frazer took a quit claim deed from Plaintiff John Gabor to Plaintiff

11   Kay Gabor for their house.  Plaintiffs' attorney moved the court  for return of that property,

12   February 28, 1991. This deed was a quick claim deed that Plaintiff John Gabor had made out to

13   his wife (again, this was a private and privileged record). When Plaintiff John Gabor  was out

14   trucking, if anything happened to him, his wife, Plaintiff Kay Gabor,  could just file it and send it

15   on through. It had never been never filed.  Defendant Michael S. Frazer tried to make that appear

16   illegal.  A reasonable and caring man strives to care for his family...how can that be construed to

17   be "evidence of a crime"?

18   71.    At the time that Plaintiffs' records were picked up, Plaintiff Kay Gabor  owed

19   approximately 70 A.K.C. papers to buyers.  Plaintiffs  were late sending out the papers because

20   the breeder from whom they  purchased the dogs was late ordering them from A.K.C. due to her

21   husband's illness.  The A.K.C. rules stipulate that there is no time limit on ordering or sending

22   out said papers. A.K.C. sometimes takes three to four months to get the registered A.K.C. papers

23   back to new dog owners after the applications have been sent in so Plaintiffs were not worried

24   about the time involved in sending out the papers to their customers.  The papers are simply a

25   certificate stating the dog's sire and dam.  However, after Defendant Michael S. Frazer took all

26   papers and records Plaintiffs were not able to follow through sending the A.K.C. papers to their

27   customers as they had in the past.  A.K.C. has no regulatory authority under law or in commerce.

28

72.     As soon as Plaintiffs received the late papers from the A.K.C., they started sending them out to the customers. Defendant Michael S. Frazer found out, went to the A.K.C., and had a stop put on them. A.K.C. did not notify Plaintiffs of this. As a result of this interference in our animal enterprise by Defendant Michael S. Frazer, Customers started calling in and threatening us. This had been going on since early, 1990, and continued for about 6 to 8 months thereafter. A.K.C. received compensation and reneged on their contracts to provide clerical service for owners of dogs.

73.     It should be further noted here that the A.K.C. does not have a monopoly on dictating specifications for breeds of dogs. They have in the past agreed to certify certain dogs. Presently they seem, under the direction of Defendant Rita Perko, to be attempting to destroy all breeders and marketers of animals except those certified by them. Defendant Rita Perko claims to be an expert in judging poodle authenticity. Poodles are a hybrid and each litter is unpredictable. Breeders of labrador retrievers have several court cases pending against the A.K.C. for their attempt to change the look of the breed so that their dogs can become the only certifiable dogs of any particular breed. This case has been classified as an anti-trust civil suite in New York: JESSOP v. A.K.C., 1994.

74.     The AKC sent out a form letter to Plaintiffs' customers stating, "On September 24, 1990, we received from you an application to individually register a male poodle, from litter such and such, number... This application is being held in abeyance pending completion of inquiry. We advise that you do not breed, sell, transfer your dog, with the expectation that the papers will be provided at the conclusion of the enquiry. As soon as we have further information, you will be notified. A refund check representing the fee you submitted will be sent under separate cover." This is not a legitimate function of a clerical service.

75.     Many people never did get their money back. Some people had to go to the postal inspector and file a complaint against the A.K.C. to get their money back. No one ever received any papers registering the dogs. Those papers are meant only to identify the sire and dam of a "dog".

76.     September 28, 1990, Plaintiffs' attorney Chestnut wrote Defendant Michael S. Frazer a letter at their request. Plaintiffs John Gabor and Kay Gabor felt they had to hire Attorney Chestnut to give them some protection from the wild threats of Defendant Michael S. Frazer. Plaintiffs had been receiving a lot of crank calls and anonymous calls from people saying they hoped Defendant Michael S. Frazer would put us away. Defendant Michael S. Fraser is not prosecutor, jury and judge! Defendant Michael S. Frazer used every imaginable means available to slander us: articles in the Mercury News, T.V. coverage, mail out questionnaires; anonymous phone calls and it was all done with no initial complaints from natural citizens, no arrest and no convictions!

77.     All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned matter were caused by an agency the actions of which are the direct responsibility of Defendant Michael S. Frazer, an agency who hired him with full knowledge of his dangerous propensities; and agency who hired him knowing that his records had been shredded by the San Jose Police Department which, knowing the content of those records, had refused to rehire him.

78.     All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned matter were caused by an agency, the actions of which are the direct responsibility of Defendant Michael S. Frazer, the agency who hired him with full knowledge of his dangerous propensities; and agency who hired him knowing that his records with the San Jose Police Department were such that they refused to rehire him.

79.     As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al.,  Plaintiff John Gabor and Plaintiff Kay Gabor have suffered over four (4) years of money damages in the form of legal fees to protect themselves, lost business, loss of the protectable interests in the form of freedom from fear, anxiety, threats, extortion, assault, freedom to increase their own living in the only business they are able to run at this time in their live,  freedom to be secure in their papers, their home, freedom to the pursuit of life, liberty, ownership of property.

80.     Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees for the past four (4) years in order to protect themselves from the false allegations of Defendant Michael S. Frazer and the government agencies, Franchise Tax Board and Board of Equalization

1   with whom he either conjoined or conspired to separate Plaintiffs John Gabor and Kay Gabor

2   from their right to own property and to do wholesale business from their home.  All actions taken

3   against Plaintiffs were done so without good cause showing and in violation of the first, fourth,

4   fifth, sixth, eighth, fourteenth amendments to and the commerce clause of the Constitution for

5   the United States.

6
           FOURTH CAUSE OF ACTION:  CONJOINING, CONSPIRING, HARASSMENT,
7                    INTERFERENCE WITH AN ANIMAL ENTERPRISE

8

9   81.    PLAINTIFFS  incorporate paragraphs 37 - 80 of their first through third causes of action

10  herein contained.

11  82.    Plaintiffs John Gabor and Kay Gabor received a letter dated, September 28, 1990, from

12  one of their customers that was sent out to people by the A.K.C. stating, "we received from you

13  an application to individually register a male poodle, litter number... this application is being

14  held in abeyance pending completion of an enquiry.  We advise that you do not breed, sell,

15  transfer your dog, with the expectation that A.K.C. papers will be provided, until the conclusion

16  of this enquiry.  As soon as we have further information, you will be notified.  A refund check,

17  representing the fee you submitted, will be sent under separate cover."  A lot of people had to go

18  to the postmaster and file a complaint against the A.K.C. to get back their money.  A.K.C. is a

19  clerical agency, not a governmental agency.

20  83.    Chestnut wrote Reilly a letter seeking reinstatement in A.K.C.; then wrote to Firling,

21  October 28, 1991.  Attorney Chestnut was just trying to see whether he could help us out, but he

22  didn't do any good.  The A.K.C. doesn't listen to courts or attorneys.

23  84.    The American Kennel Club wrote Chestnut a letter on November 8, '91.  "... This will

24  acknowledge your letter on October 28, 1991, on behalf of your client, Kay Gabor.  As you were

25  advised in our letter on November 20, 1990, we would not process application concerning Mrs.

26  Gabor until we reviewed her records.  To date, we have not been afforded the opportunity."

27  Plaintiff Kay Gabor's records were still  being unlawfully held by Defendant Michael S. Frazer of

28  the Santa Clara Valley Humane Society!

940825 AB   GABOR TITLE 42 CIVIL COMPLAINT                                    Page  22 of 61

85.    "... It was suggested at the time that you contact Mike Frazer to schedule a meeting so that an executive field audit could review Mrs. Gabor's records. Please advise if you have attempted to schedule a meeting to review your records." Plaintiffs had had enough experience with Defendant Michael S. Frazer to know that such a meeting was useless. All of the applicants being held up by A.K.C., Mrs. Sperry, Mrs. Speegle, Mrs. French, were suspended for failure to comply with the rules and regulations of record-keeping and identification, but not for impure breeding of the animals! These breeders were all senior citizens supplementing their small incomes and should have been treated with kindness and patience by the A.K.C., not yelled at and thrown out! Defendant Michael S. Frazer got the records and names of those three women from Plaintiffs, went up into that area [Butte County] and had the A.K.C. stop their papers!

86.    September 13, 1991. Firling, director of the investigations, sent Plaintiff Kay Gabor a letter saying, "Enclosed is a copy of November 20, 1992, letter to your attorney, William Chestnut. We feel that ten months have elapsed since the letter was written and you have been afforded opportunity to recover your records. ... Therefore, we ask you to provide a list of times and dates in the next month when you will be available to spend the time necessary to review your records, in keeping with the identification practices of the AKC representative.... failure to do so will result in the matter being presented to the privileges committee." After which the committee would take disciplinary action against Plaintiffs. Defendant Paul R. Firling signed this letter. A.K.C. is not a division of the U.S.D.A.

87.    Plaintiff Kay Gabor wrote a letter, September 26, 1991, explaining, "On July 31, 1990, my records were seized by Frazer. Not having control of my records '85 to '89, how can I be held to account for something taken out of my hands over one year ago? I have records for 1990, that will cover all papers held in abeyance. In all fairness to myself and buyers of dogs you are holding papers on, I should be allowed to show your representatives the records and discuss how to keep them and identify the pups. Any time in October would be alright to talk." Plaintiff Kay Gabor signed the letter and sent a copy to attorney, William Chestnut.

88.    September 15, 1992. American Kennel Club wrote Plaintiff Kay Gabor again. This time, "... At the recent meeting of the privileges committee of the board of directors, concerning your

1  failure to comply with the rules and regulations for bookkeeping identification, be advised that

2  October 12, 1992, meeting of the board of directors and privilege committee will file its report

3  with the board, and recommend that you be suspended from all privileges of the American

4  Kennel Club for a period of seven years, and that a $500 dollar fine be imposed.  Further

5  reinstatement will be contingent upon your beginning with a new colony." Defendant Paul R.

6  Firling signed it on the next page.

7  89.      September 4, 1992, Plaintiff Kay Gabor wrote again explaining,    "... Dear Mr.

8  Defendant Paul R. Firling,... I feel seven year's suspension and a $500 dollar fine is unfair.  You

9  stopped my papers, August 1990, before notifying me, calling it a 'computer error.' Add seven

10 years for a total of nine years.  I am being railroaded.  I had records going back five years that

11 were taken by an employee of the local Humane Society.  How can you hold me responsible for

12 records and paperwork taken out of my hands, and refused to be given back to me? I request a

13 formal hearing in California, close to my home in San Jose area, the board members be impartial,

14 not connected with any local A.K.C. dog or poodle club, or members of the board of directors of

15 the local Humane Society."

16 90.      Plaintiff Kay Gabor  sent a signed copy of that letter to Clark Barrett.  Defendant Paul R.

17 Firling telephone her. Plaintiff Kay Gabor  faxed him a letter, October 8, 1992. "After taking

18 into account our phone conversation October 7, 1992, I am requesting a formal hearing close to

19 my home in the San Jose area.  This is my reason.  My records were seized.  There is a search

20 warrant to prove this.  I have no control over what this self-appointed captain from the local

21 Humane Society does with my records.  I believe he has altered and destroyed some of my

22 records to discredit me.  The A.K.C. cashed checks totalling $340 dollars for late papers we sent

23 to buyers of puppies.  The A.K.C., working with or for Frazer promptly put a stop to them.  This

24 was done to hurt and anger the buyers.  Frazer tried to convince them to file a class-action

25 lawsuit against me.  To date, no one has sued me over these papers.  I have put up with slander

26 and harassment for over two years from this loose cannon.  He claims all A.K.C. papers you

27 issued can not be proven as correct.  He told my attorney William Chestnut he's going to put the

28 A.K.C. out of business.  I could write a book telling all the things he's said and done to me.  I

1  have good credit. I have lived in this area for almost 30 years. All puppies are sold with

2  money-back guarantee. I have dealt honestly and fairly in all sales of puppies. I feel the two

3  years that I've already been put out of the A.K.C. is more than enough. Please consider this."

4  91.    The week after Plaintiff Kay Gabor's last letter to Defendant Paul R. Firling, he called to

5  tell her he was coming out to visit, October 18, 1992. Defendant Paul R. Firling asking Plaintiff

6  Kay Gabor not to tell Frazer he'd be here!

7  92.    Defendant Paul R. Firling showed up, looked at Plaintiff Kay Gabor's 1990 records.

8  Also, he wanted to know what Plaintiffs had against Defendant Michael S. Frazer. Plaintiff John

9  Gabor and Plaintiff Kay Gabor showed him some papers that Frazer had written that he already

10 knew about and had s copies. He made copies of a few other items. Defendant Paul R. Firling

11 said he'd get right back to us. He never has. Defendant Michael S. Frazer must have been

12 convincing. A.K.C. once again has assumed the role of a governmental, regulatory agency.

13 93.    In blatant interference with an animal enterprise...with other people's business, Defendant

14 Michael S. Frazer attempted to have an ad of Plaintiffs removed from the news paper. Joel

15 Klingsberry of the San Jose Mercury News called Plaintiffs to say that they were going to stop

16 the ads of Plaintiffs' son, because they [the San Jose Mercury News] didn't like the Westmont

17 address that he had. Plaintiffs had a home there which was later sold. Plaintiffs' son was selling

18 pups at that address. Joel Klingsberry claimed that it was not a legitimate address, and that he

19 had 440 complaints against Plaintiffs John Gabor and Kay Gabor. When asked if he had seen the

20 complaints, he said, "No, but if you want to see them, I'm sure Captain Frazer of the Humane

21 Society would be glad to show them to you." Plaintiff John Gabor explained that they had

22 already gone through that with Defendant Michael S. Frazer and that their attorney had also

23 checked it out--there were not 440 complaints. Plaintiff John Gabor suggested to Joel

24 Klingsberry that he had better go check them himself, make sure that they are true, before

25 pulling ads out of the paper! Again, Defendant Michael S. Frazer was interfered with Plaintiffs'

26 relationship with A.K.C. and now with their right to freely advertise in the local news paper!

27 The equal protection of commerce clause makes this newspaper guilty of discrimination and

28 unfair business practices.

94.    All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned matter were caused by an agency the actions of which are the direct responsibility of Defendant Michael S. Frazer, the agency who hired him with full knowledge of his dangerous propensities; an agency who hired him knowing that his records with the San Jose Police Department were such that they had refused to rehire him.

95.    As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al., Plaintiff John Gabor and Plaintiff Kay Gabor have suffered over four (4) years of money damages in the form of legal fees to protect themselves, lost business, lack of equal protection under the commerce clause, loss of the protectable interests in the form of freedom from fear, anxiety, threats, extortion, assault, freedom to increase their own income in the only business they are able to run at this time in their live, freedom to be secure in their papers, their home, freedom to the pursuit of life, liberty, ownership of property.

96.    Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees for the past four (4) years in order to protect themselves from the false allegations of Defendant Michael S. Frazer and the government agencies, Franchise Tax Board and the Board of Equalization, with whom he either conjoined or conspired to separate Plaintiffs John Gabor and Kay Gabor from their right to own property and to do business from their home. All actions taken against Plaintiffs were done so without good cause showing and in violation of the first, fourth, fifth, sixth, eighth, fourteenth amendments to, and the commerce clause of, the Constitution for the United States.


FIFTH CAUSE OF ACTION:  MALICIOUS AND INTENTIONAL PROSECUTION

97.    PLAINTIFFS  incorporate paragraphs 37 - 96 of their first through fourth causes of action herein contained.

98.    In his letter to the Humane Society  and Defendant Michael S. Frazer, Mr Chestnut referred to a telephone conversation with Defendant Michael S. Frazer where he asked, "Shouldn't you be filing a complaint in municipal court?" Attorney Chestnut explained that he would be responsible for any criminal defense in the municipal court level of this matter.

1   Attorney Chestnut continued, "As such, I will need to obtain copies of documents from either

2   your attorney, from you, or from the District Attorney in the matter, whom, I understand, will be

3   Mr. Gibbons."

4   99.     "The purpose of this call is to initially represent myself as the Gabor's attorney so that

5   you, throughout this process, will communicate your concerns to me and so that I may know with

6   whom I should be communicating the concerns of the Gabors:   (1) since neither of my clients

7   pose any threats to society or danger to any persons, I am going to assume, based on our

8   conversation, you will have no objection to notifying me in advance of serving an arrest warrant

9   on either one or both of them  because neither of these people has an extensive criminal

10  background and so there appears no need to get them off the streets. (2) It would be in everyone's

11  best interest to surrender them peaceably to you or to the Sheriff, once we have established that

12  you are going to seek their arrest.  Therefore, I am authorized to bring them in to you."

13  100.    Attorney Chestnut continued his conversation with Michael S. Frazer ,"Secondly, we

14  understand that one of your concerns was that Mrs. Gabor was unlicensed, therefore she could

15  not sell puppies, especially out of her home.  She has subsequently obtained a seller's permit

16  from the State Board of Equalization, and is interested in conducting, continuing the business in

17  a retail store by obeying all the alleged rules." CCP § 597 L provides for the lawful sales of pets

18  from the home without the need of a permit or license.

19  101.    On the recommendation of Attorney Chestnut and in an effort to stop all the harassment

20  against them Plaintiffs John Gabor and Kay Gabor rented a space in a retail store at $800 a

21  month.  Plaintiffs John Gabor and Kay Gabor had to stay in business to survive, and they thought

22  that was the only way to do it.  Plaintiffs John Gabor and Kay Gabor made every effort to comply

23  with state regulations.

24  102.    Attorney Chestnut  continued his conversation with  Defendant Michael S. Frazer, "If you

25  find anything objectionable to what I am proposing, or if you have any conditions that you feel

26  should be followed, I insist, as Gabors' attorney, that you immediately notify me as to what these

27  conditions are, so that I can communicate them to my client. As Kay Gabor's life's work has

28  involved the sale of dogs, it is unrealistic for her to seek another employment."

103.    Defendant Michael S. Frazer disregarded the communication from Attorney Chestnut. Defendant Michael S. Frazer told customers to send him their registered A.K.C. papers, and he would determine if the registered A.K.C. registered papers were real.   Poodles are hybrid stock. All A.K.C. dogs are of hybrid stock and for them to infer that any one man could discern the parentage of a dog simply by looking at it is ludicrous; however, people seem to believe anything when it comes from a government agent or alleged government agent.  What is Defendant Michael S. Frazer's interest in the A.K.C.?  He is supposed to be only a California State Humane Officer, not a  self-proclaimed judge of all marketable dogs!  The Animal Welfare Act of 1970, U.S.C. Title 7 §28 defines his duties.

104.    All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned matter were caused by the agency, the actions of which are the direct responsibility of Defendant Michael S. Frazer, an agency who hired him with full knowledge of his dangerous propensities; an agency who hired him knowing that his records documented his dangerous propensities to such an extent that the San Jose Police Department had refused to rehire him.  *BRANDON v. HOLT* 469 U.S. 464 6th Cir. Court of Appeals 1985.

> In cases under "1983", a judgment against a public servant "in his official capacity" imposes liability on the entitiy that he represents.

105.    As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al.,  Plaintiff John Gabor and Plaintiff Kay Gabor have suffered over four (4) years of money damages in the form of legal fees to protect themselves, lost business, loss of equal protection under the commerce clause, loss of the protectable interests in the form of freedom from fear, anxiety, threats, extortion, assault, freedom to increase their own income in the only business they are able to run at this time in their lives,  freedom to be secure in their papers, their home, freedom to the pursuit of life, liberty, ownership of property.

106.    Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees  for the past four (4) years in order to protect themselves from the false allegations of Defendant Michael S. Frazer and the government agencies:  Franchise Tax Board  and Board of Equalization with whom he either conjoined or conspired to separate Plaintiffs John Gabor and

1  Kay Gabor from their right to own property and to do wholesale business from their home.  All

2  actions taken against Plaintiffs were done so without good cause showing and in violation of the

3  first, fourth, fifth, sixth, eighth, and fourteenth amendments to and the commerce clause of the

4  Constitution for the United States.

5

6  SIXTH CAUSE OF ACTION:  MISREPRESENTATION OF INTENT TO
   GAIN ENTRY TO PRIVATE PROPERTY

7  107.    PLAINTIFFS  incorporate paragraphs 37 - 106 of their first through fifth causes of action

8  herein contained.

9  108.    U.S.D.A. employees came to Plaintiffs' home in, August, 1993, identifying themselves as

10  Diane Ward and Georgia Martin, investigators for A.P.H.I.S. of the U.S.D.A.  This was after

11  their involvement...they either conjoined or conspired in the theft of Charlotte Speegle's business

12  in Butte County, July, 1993.  They assured Plaintiff Kay Gabor that they were not investigating

13  her business, but were investigating a breeder in Butte County.  These federal employees were

14  assigned to inspect dealers and sellers of stolen pets.  It appeared to Plaintiffs that they may have

15  been asking for unlawful information to fabricate prosecution of a competitor of Rita Perko, an

16  A.K.C. poodle breeder.  Other poodle breeders who had been acquaintances of Plaintiffs had

17  been similarly attacked.

18  109.    Agents of the U.S.D.A., the same agents, also conjoined with or conspired with other

19  government officers acting under color of law to seize 57 dogs and a Winnebago from still

20  another breeder in Bangor, California.  Theft of animals is a crime.

21  110.    Documents related to the cases described supra were stored at the home of Sharon Martin

22  in Rio Linda, California pending the completion of the related Title 41 Civil Complaints.

23  Plaintiffs John Gabor and Kay Gabor made no statement to these agents fearing that they could

24  easily be the next ones so harassed.

25  111.    All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned

26  matter were caused by the agency, the actions of which are the direct responsibility of Defendant

27  Michael S. Frazer, an agency who hired him with full knowledge of his dangerous propensities;

28

1    an agency who hired him knowing that his records documented his dangerous propensities to

2    such an extent that the San Jose Police Department had refused to rehire him.  *BRANDON v.*

3    *HOLT* 469 U.S. 464 6th Cir. Court of Appeals 1985.

4                    In cases under "1983", a judgment against a public servant "in his
                    official capacity" imposes liability on the entitiy that he represents.

5

6    112.    As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al.,  Plaintiff

7    John Gabor and Plaintiff Kay Gabor have suffered over four (4) years of money damages in the

8    form of legal fees to protect themselves, lost business, loss of equal protection under the

9    commerce clause, loss of the protectable interests in the form of freedom from fear, anxiety,

10   threats, extortion, assault, freedom to increase their own income in the only business they are

11   able to run at this time in their lives,  freedom to be secure in their papers, their home, freedom to

12   the pursuit of life, liberty, ownership of property.

13   113. ·   Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees  for

14   the past four (4) years in order to protect themselves from the false allegations of Defendant

15   Michael S. Frazer and the government agencies:  Franchise Tax Board  and Board of

16   Equalization with whom he either conjoined or conspired to separate Plaintiffs John Gabor and

17   Kay Gabor from their right to own property and to do wholesale business from their home.  All

18   actions taken against Plaintiffs were done so without good cause showing and in violation of the

19   first, fourth, fifth, sixth, eighth, and fourteenth amendments to and the commerce clause of the

20   Constitution for the United States.

21

22   SEVENTH CAUSE OF ACTION:  ASSAULT; THREATS; INTENTIONAL INFLICTION OF
         SEVERE EMOTIONAL DISTRESS; FALSE INCARCERATION; THREATENS
23                                 ELDERLY BREEDERS

24   114.    PLAINTIFFS  incorporate paragraphs 37 - 113 of their first through sixth causes of action

25   herein contained.

26   115.    Defendant Michael S. Frazer threatened that he would destroy Plaintiffs John Gabor and

27   Kay Gabor, that he would see to it that Plaintiffs John Gabor and Kay Gabor would lose all their

28   money; that  he would put them in prison [which he did without a trial and which cost Plaintiffs

1  John Gabor and Kay Gabor $100,000 bail]; that he would put Plaintiffs John Gabor and Kay

2  Gabor out of business; that all their A.K.C. papers were no good or phony; that all their pups

3  came from puppy mills, etc. All of those statements were false. Plaintiffs John Gabor and Kay

4  Gabor purchased only from experienced, breeders who had been breeding and selling dogs for

5  many years. Defendant Michael S. Frazer even told some people that Plaintiffs John Gabor and

6  Kay Gabor were already out of business while they were still selling pups. That's why Plaintiffs

7  John Gabor and Kay Gabor hired a criminal attorney.

8  116.    The reason Plaintiff John Gabor had to bring a criminal attorney into this was because

9  Defendant Michael S. Frazer brought Defendant Mike Reilly against Plaintiffs. Defendant Mike

10  Reilly, an investigator for the A.K.C., visited Plaintiffs' home, October 23, 1990. Plaintiffs'

11  attorney, William Chestnut was present.  Defendant Mike Reilly refused to look at the recent

12  records on Plaintiffs' pups, claiming that the papers were estopped and that he wanted to see all

13  records for five years back.  A.K.C. is not the only clerical service registering dogs for breeders

14  and it is NOT a government agency!

15  117.    There was no way Plaintiffs John Gabor and Kay Gabor could comply as Defendant

16  Michael S. Frazer had picked up and refused to return them. Defendant Mike Reilly admitted to

17  Plaintiffs' attorney, William Chestnut, that it was an error that the papers were estopped. He

18  claimed that a computer glitch had caused this mix up with the papers before Plaintiffs even had

19  a legitimate court hearing.  A.K.C. is incorporated in the State of New York and does business in

20  all 50 States.

21  118.    Plaintiffs John Gabor and Kay Gabor  do not run a public business open to the general

22  public.  They sell direct from their home.  It is not like a pet shop in a shopping center.

23  119.    Defendant Mike Reilly visited three of Plaintiffs' suppliers in Oroville, California:

24  Hester Sperry, an old woman in her 70's;  Mary French, another one in her 70's and Charlotte

25  Speegle.  Defendant Mike Reilly  stopped all A.K.C. papers from these suppliers thereby

26  controlling the hybrid dog in this market.

27  120.    The two 70 year old women depended heavily on sale of these  puppies to supplement

28  their income, but their A.K.C. records were not up to date.  They didn't know how to keep them.

1  Instead of showing her how to fill out the papers Defendant Mike Reilly told Mary French that if

2  she were to try to bring her papers up to date, he would punch holes in them. He also told her

3  that she was too old to sell dogs. Talk about age discrimination, trickery and deceit!

4  121.    Mary French died, July 6, 1994. She had to give up her poodles because of threats from

5  A.K.C. ,Defendant Michael S. Frazer and Defendant Mike Reilly. Mary French was denied the

6  comfort of her poodles during the few remaining years of her life. She also lost the little

7  supplemental income that she needed to pay her basic living expenses.

8  122.    Hester Sperry told Defendant Mike Reilly that she paid for those papers, and they were

9  hers and that he had better, "get the hell off my property!" Defendant Mike Reilly shouted back,

10  "You're out of the A.K.C.!"  Hester Sperry said she didn't give a damn and that was fine with

11  her! Charlotte Speegle was the third supplier investigated by A.K.C. The first group of dogs

12  [approximately 150] were picked up by S.P.C.A. Some were sold, others killed by S.P.C.A.

13  against the wishes of the owner and in violation of the Animal Welfare Act # "3".

14  123.    Defendant Michael S. Frazer has caused Plaintiffs, because of his threats, a lot of personal

15  problems. Plaintiffs John Gabor and Kay Gabor did not know what he was going to do from one

16  day to the next, whether he was going to come back and throw them in jail or not. It took

17  Defendant Michael S. Frazer over a year and a month to finally arrest Plaintiffs, but he never let

18  up on the threats. Defendant Michael S. Frazer worked with the Poodle Club of Santa Clara

19  County, and the Mission Trails Kennel Club. Isn't this a conflict of interest...having the alleged

20  "authority" to "take" people's animals and belonging to other clubs that sell them? The Humane

21  Society also sells them! This is a violation of the commerce clause in the Constitution for the

22  United States and of the Animal Welfare Act of 1970!

23  124.    Defendant Michael S. Frazer did not stop there. He contacted the San Jose Mercury

24  News. Mrs. Strutt, of the San Jose Mercury News noted that two telephone numbers had been

25  used by Plaintiffs John Gabor and Kay Gabor to place ads for the sale of dogs in the classified

26  section of the newspaper, and she gave the numbers as 379-4852 and 389-4376.  378-4326

27  125.    "I have reviewed," Defendant Michael S. Frazer stated, "the San Jose Mercury News

28  section and found that the ads regarding poodle sales, teacup/toy, shots, 378-4326 appeared in

1  editions for May, June and July 1990.  The ads were also located in the, July 20, 1990, classified

2  mini- market section, which read, 'Maltese toy poodle teacup, 8 weeks, $200, shots, 378-4326."

3  Is it now against the law to advertise property for sale?  Plaintiffs John Gabor and Kay Gabor

4  were under the impression that newspapers liked to bring in money through selling classified

5  advertising!

6  126.    All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned

7  matter were caused by the agency, the actions of which are the direct responsibility of Defendant

8  Michael S. Frazer, an agency who hired him with full knowledge of his dangerous propensities;

9  an agency who hired him knowing that his records documented his dangerous propensities to

10 such an extent that the San Jose Police Department had refused to rehire him.  *BRANDON  v.*

11 *HOLT*  469 U.S. 464 6th Cir. Court of Appeals 1985.

12                In cases under "1983", a judgment against a public servant "in his
               official capacity" imposes liability on the entitiy that he represents.
13

14 127.    As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al.,  Plaintiff

15 John Gabor and Plaintiff Kay Gabor have suffered over four (4) years of money damages in the

16 form of legal fees to protect themselves, lost business, loss of equal protection under the

17 commerce clause, loss of the protectable interests in the form of freedom from fear, anxiety,

18 threats, extortion, assault, freedom to increase their own income in the only business they are

19 able to run at this time in their lives,  freedom to be secure in their papers, their home, freedom to

20 the pursuit of life, liberty, ownership of property.

21 128.    Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees  for

22 the past four (4) years in order to protect themselves from the false allegations of Defendant

23 Michael S. Frazer and the government agencies:  Franchise Tax Board  and Board of

24 Equalization with whom he either conjoined or conspired to separate Plaintiffs John Gabor and

25 Kay Gabor from their right to own property and to do wholesale business from their home.  All

26 actions taken against Plaintiffs were done so without good cause showing and in violation of the

27 first, fourth, fifth, sixth, eighth, and fourteenth amendments to and the commerce clause of the

28 Constitution for the United States.

EIGHTH CAUSE OF ACTION:  SLANDER PER SE

129.    PLAINTIFFS  incorporate paragraphs 37 - 128 of their first through seventh causes of action herein contained.

130.    Defendant Michael S. Frazer  stated in one of his reports, "I have contacted the New York office of the A.K.C., and have been told by the staff and employees that a significant number of registration applications are filed referring to the name, Flagara Kay Gabor.  All A.K.C. records indicate the ownership of dogs by Flagara Kay Gabor at the listed address, 590 Smoky Court, California.  The A.K.C. records also reflect that the Gabors were issued a warning letter concerning registration violations, including impure breeding, which has existed since 1979." Plaintiff Kay Gabor  never has made a secret about doing business as Flagara Kay Gabor.

131.    Another lie!  Plaintiff Kay Gabor was given a letter of warning to keep her records up to date and send more money.  She said she'd try to do the best she could.  Nothing was said about impure breeding.  Defendant Michael S. Frazer distorts the facts, rearranges or substitutes words in an effort to prejudice the court, prejudice the reader if it is a media report and, in general, slander and defame those he seeks to destroy!

132.    Defendant Michael S. Frazer seems to have a whole net work of cops or ex cops all of whom exhibit "dangerous propensities" like himself.  Defendant Michael S. Frazer recontacts or uses these "contacts" when he wants to destroy some private individual in the same manner as would a master criminal!.

133.    All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned matter were caused by the agency, the actions of which are the direct responsibility of Defendant Michael S. Frazer, an agency who hired him with full knowledge of his dangerous propensities; an agency who hired him knowing that his records documented his dangerous propensities to such an extent that the San Jose Police Department had refused to rehire him.  *BRANDON v. HOLT*  469 U.S. 464 6th Cir. Court of Appeals 1985.

> In cases under "1983", a judgment against a public servant "in his official capacity" imposes liability on the entitiy that he represents.

1    134.    As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al.,  Plaintiff

2    John Gabor and Plaintiff Kay Gabor have suffered over four (4) years of money damages in the

3    form of legal fees to protect themselves, lost business, loss of equal protection under the

4    commerce clause, loss of the protectable interests in the form of freedom from fear, anxiety,

5    threats, extortion, assault, freedom to increase their own income in the only business they are

6    able to run at this time in their lives,  freedom to be secure in their papers, their home, freedom to

7    the pursuit of life, liberty, ownership of property.

8    135.    Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees  for

9    the past four (4) years in order to protect themselves from the false allegations of Defendant

10   Michael S. Frazer and the government agencies:  Franchise Tax Board  and Board of

11   Equalization with whom he either conjoined or conspired to separate Plaintiffs John Gabor and

12   Kay Gabor from their right to own property and to do wholesale business from their home.  All

13   actions taken against Plaintiffs were done so without good cause showing and in violation of the

14   first, fourth, fifth, sixth, eighth, and fourteenth amendments to and the commerce clause of the

15   Constitution for the United States.

16

17       NINTH CAUSE OF ACTION: SOLICITING ACCOMPLICES IN SLANDER PER SE

18   136.    PLAINTIFFS  incorporate paragraphs 37 - 135 of their first through eighth causes of

19   action herein contained.

20   137.    Defendant Andrea San Phillipo has been working with Defendant Michael S. Frazer in

21   the local dog clubs of the so-called elite dog show people who have been trying to put Plaintiff

22   Kay Gabor out of  business  And to control the poodle market.   Anyone who tells Defendant

23   Andrea San Phillipo, dog groomer, that the dog was purchased from Plaintiff Kay Gabor gets

24   told the dog is no good and then the dog owner is told to report the incident to Defendant

25   Michael S. Frazer or Defendant  Rita Perko of the A.K.C.  Defendant Rita Perko is president of a

26   poodle breeders' club and works hard to eliminate all competition.  Defendant Andrea San

27   Phillipo and Beth Hedges entered Plaintiffs' home telling Kay she was looking for a pup for her

28   mother when

1   in actual fact she was trying to "scope out" the manner in which Plaintiff Kay Gabor sold dogs so

2   that she could report to Defendant Michael S. Frazer.

3   138.    Plaintiff Kay Gabor loves animals.  She has her special way of identifying the pups and

4   can name each one she sells.  She does not use either a tattoo or collar that could choke the pup.

5   Plaintiff Kay Gabor sells only very healthy pups and gives a full, 100 percent guarantee on all

6   pups she sells.  If a veterinarian discovers a defective, she will refund money in full, or give the

7   buyer another pup.

8   139.    Defendant Maxine Patton took her dog to be groomed at Defendant Andrea San Phillipo's

9   shop.  Defendant Maxine Patton told Defendant Andrea San Phillipo that the pup came from

10  Plaintiff Kay Gabor.  Defendant Andrea San Phillipo proceeded to slander Kay and also called

11  Defendant Michael S. Frazer.  When Defendant Maxine Patton came back to pick up her pup at

12  the grooming shop  Defendant Michael S. Frazer was waiting for her.  Defendant  Maxine Patton

13  told Plaintiffs about that incident later.

14  140.    According to Defendant Maxine Patton, Defendant Michael S. Frazer showed  his badge,

15  telling her he was a state investigator.  He said he wanted to go to her home and pick up all the

16  information from the sale.  Everything was there except the A.K.C. registration form, which

17  Plaintiff Kay Gabor had promised to send her, as soon as it was mailed from the breeder.

18  141.    Defendant Maxine Patton called Kay telling her that she had taken the pup to the vet and

19  that it checked out fine.  She liked it, and wanted Plaintiff Kay Gabor to hurry up and send the

20  A.K.C. papers.  She never mentioned anything about the above related incident.

21  142.    Defendant Michael S. Frazer got this information without a search warrant or any other

22  form legally authorizing investigation into the business and affairs of Plaintiff Kay Gabor.  The

23  papers came in and Kay promptly mailed them to her.

24  143.    Defendant Maxine Patton's name showed up on the affidavit of the search warrant.

25  Plaintiff Kay Gabor then called her home and talked to her husband, who said they were very

26  happy with the pup.  It was the smartest pup they ever had and was everything they had ever

27  wanted.  Defendant Maxine Patton decided to have the dog trimmed not to look like a poodle, as

28  Defendants Andrea San Phillipo  and  Michael S. Frazer had convinced her that the dog was a

1   mixed breed.  Defendant Michael S. Frazer kept the A.K.C. papers which were eventually

2   cancelled.

3   144.    Plaintiff Kay Gabor offered Defendant Maxine Patton a full refund on the pup if they

4   were in any way not satisfied with it.  The Pattons refused.  Plaintiff Kay Gabor asked Defendant

5   Maxine Patton why she hadn't called her to tell her what Defendant Michael S. Frazer was

6   doing.  Defendant Maxine Patton said Defendant Michael S. Frazer had told her not to tell

7   Plaintiff Kay Gabor what was going on.

8   145.    It is extremely frustrating for the people when they are victims of law officers abusing

9   the authority of their offices rather than using that authority for the protection of the people as is

10   stipulated in the Constitution for the United States.  Defendant Maxine Patton reported to

11   Defendant Michael S. Frazer about Plaintiff Kay Gabor's phone call.  Defendant Michael S.

12   Frazer called Plaintiffs' attorney, Chestnut, warning him to tell Plaintiff Kay Gabor not to talk or

13   bother his witness.

14   146.    All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned

15   matter were caused by the agency, the actions of which are the direct responsibility of Defendant

16   Michael S. Frazer, an agency who hired him with full knowledge of his dangerous propensities;

17   an agency who hired him knowing that his records documented his dangerous propensities to

18   such an extent that the San Jose Police Department had refused to rehire him.  *BRANDON v.*

19   *HOLT*  469 U.S. 464 6th Cir. Court of Appeals 1985.

20                In cases under "1983", a judgment against a public servant "in his

21                official capacity" imposes liability on the entitiy that he represents.

22   147.    As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al.,  Plaintiff

23   John Gabor and Plaintiff Kay Gabor have suffered over four (4) years of money damages in the

24   form of legal fees to protect themselves, lost business, loss of equal protection under the

25   commerce clause, loss of the protectable interests in the form of freedom from fear, anxiety,

26   threats, extortion, assault, freedom to increase their own income in the only business they are

27   able to run at this time in their lives,  freedom to be secure in their papers, their home, freedom to

28   the pursuit of life, liberty, ownership of property.

1    148.    Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees  for

2    the past four (4) years in order to protect themselves from the false allegations of Defendant

3    Michael S. Frazer and the government agencies:  Franchise Tax Board  and Board of

4    Equalization with whom he either conjoined or conspired to separate Plaintiffs John Gabor and

5    Kay Gabor from their right to own property and to do wholesale business from their home.  All

6    actions taken against Plaintiffs were done so without good cause showing and in violation of the

7    first, fourth, fifth, sixth, eighth, and fourteenth amendments to and the commerce clause of the

8    Constitution for the United States.

9

10       TENTH CAUSE OF ACTION: STALKING; UNLAWFUL SURVEILLANCE OF
11       PRIVATE CITIZENS AND PRIVATE PROPERTY; CONTINUED SLANDER PER SE

12    149.    PLAINTIFFS  incorporate paragraphs 37 - 148 of their first through ninth causes of

13    action herein contained.

14    150.    Defendant  Michael S. Frazer's own affidavit verifies that he has been surveilling the

15    private property of Plaintiffs at least weekly, over the last six months, and observed the Honda

16    wagon at the premises each time.  This is stalking, unlawful surveillance and trespass, all of

17    which are criminal charges.

18    151.    Deborah Perlman, a long time friend and customer of Plaintiff Kay Gabor's, told us she

19    talked to Defendant Michael S. Frazer about the twisted lies he put on the search warrant.

20    Plaintiffs have a six page deposition from Deborah Perlman.  She goes all over the entire part

21    that Defendant Michael S. Frazer wrote about her conversation.  Defendant Michael S. Frazer

22    violated her right of privacy by getting information about her from the license of the car.  Also,

23    Defendant Michael S. Frazer said he taped her phone conversation. Defendant Michael S. Frazer

24    claimed that the judge gave him the right  to tape the conversation. Plaintiffs discovered  later

25    that  an assistant district attorney assumed the authority to grant Defendant Michael S. Frazer

26    permission to tap telephone conversations!  U.S. v. U.S. District Court

27    152.    Plaintiff John Gabor first discovered Defendant Michael S. Frazer's incident report in the

28    probation officer's office, after he was going for a hearing to determine what the court was going

940825 AB   GABOR TITLE 42 CIVIL COMPLAINT                                     Page 38 of 61

1  to do to them.   Defendant Rick Lamps (probation officer) acts like an avowed animal activist.

2  As an Officer of the court Defendant Rick Lamps failed to protect Plaintiffs' civil rights by

3  holding a "star chamber" second trial just for himself!

4  153.    All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned

5  matter were caused by the agency, the actions of which are the direct responsibility of Defendant

6  Michael S. Frazer, an agency who hired him with full knowledge of his dangerous propensities;

7  an agency who hired him knowing that his records documented his dangerous propensities to

8  such an extent that the San Jose Police Department had refused to rehire him.   *BRANDON v.*

9  *HOLT* 469 U.S. 464 6th Cir. Court of Appeals 1985.

10               In cases under "1983", a judgment against a public servant "in his
               official capacity" imposes liability on the entitiy that he represents.

11

12  154.    As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al.,  Plaintiff

13  John Gabor and Plaintiff Kay Gabor have suffered over four (4) years of money damages in the

14  form of legal fees to protect themselves, lost business, loss of equal protection under the

15  commerce clause, loss of the protectable interests in the form of freedom from fear, anxiety,

16  threats, extortion, assault, freedom to increase their own income in the only business they are

17  able to run at this time in their lives,  freedom to be secure in their papers, their home, freedom to

18  the pursuit of life, liberty, ownership of property.

19  155.    Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees  for

20  the past four (4) years in order to protect themselves from the false allegations of Defendant

21  Michael S. Frazer and the government agencies:  Franchise Tax Board  and Board of

22  Equalization with whom he either conjoined or conspired to separate Plaintiffs John Gabor and

23  Kay Gabor from their right to own property and to do wholesale business from their home.  All

24  actions taken against Plaintiffs were done so without good cause showing and in violation of the

25  first, fourth, fifth, sixth, eighth, and fourteenth amendments to and the commerce clause of the

26  Constitution for the United States.

27

28

940825 AB   GABOR TITLE 42 CIVIL COMPLAINT                                                    Page 39 of 61

ELEVENTH CAUSE OF ACTION: FALSE ACCUSATIONS; FALSE ARREST;
MANIPULATION OF MEDIA TO COMMIT DEFAMATION OF CHARACTER

156.    PLAINTIFFS incorporate paragraphs 37 - 155 of their first through tenth causes of action herein contained.

157.    One year later after many acts of criminal trespass to chattels, to property, surveillance of private citizens, stalking...all under color, Defendant Michael S. Frazer finally was able to effect a felony complaint and arrest warrant against Plaintiffs John Gabor and Kay Gabor. It listed three counts of felonies and six misdemeanors each for Plaintiffs John Gabor and Kay Gabor. The warrant was signed by "Frazer (Stoltz)." Defendant Richard Stoltz was the guy from the Franchise Tax Board, but in parentheses right under Defendant Michael S. Frazer's name.   Bail was set at $50,000 dollars for each Plaintiff. Judge Gilbert Brown signed it. The correctional officers took Plaintiff John Gabor's orthopedic brace away from him and refused him medication. This is a violation of the 8th amendment.

158.    Defendant Michael S. Frazer used this to make a big splash. with the TV and the news media.   Channel Seven T.V., August 28, 1991, the TV News Report headlined, "Poodle Bust." "Humane Society officials said an investigation prompted the arrest of 60-year old John Gabor, 52-year old Flagara Kay Gabor, and the seizure of their tax records.  Authorities say they did not operate a licensed kennel; however, Gabors' records revealed sales of over 1,700 animals over five years, grossing nearly half a million dollars." This is all fabricated.  It is evidence of theft or privileged papers under color.

159.    Cynthia Smith, Humane Society employee, stated on the T.V., "The concern here is consumer fraud conditions going on and the tax evasion conditions going on in the puppy mill business in California is a big underground economy in cash business." The Humane Society is not a part of consumer affairs or employed by the attorney general's office!

160.    The TV announcer quotes Cynthia Smith of the Humane Society as saying that, "one of the breeders who sold poodles to the Gabors is facing felony animal cruelty charges in Tehama County... " (that's Charlotte Speegle, supposedly...) "after nearly 150 poodles were removed from

1  filthy conditions." In actual fact, 150 dogs were stolen and sold pre trial and Speegle has yet to

2  be convicted.

3  161.    Channel 36 on their ten o'clock news reported through TV announcer, Jan Hutchins,

4  "How much is that doggie in the window? It might surprise you. A Campbell couple is facing

5  tax evasion charges in connection with an illegal poodle-brokering operation. John and Kay

6  Gabor were arrested yesterday afternoon, and authorities say they have receipts from puppy sales

7  over the last four years in evidence that the Gabors received half a million dollars from those

8  sales." No reasonable person would call the selling of dogs a crime. And if it is a crime, it is a

9  crime protected by Congress in U.S.C. Title 7 §§ 2131-2157.

10  162.    Michael S. Frazer states on the same program, "Extra paper, one extra paper, don't know

11  if it's a boy or a girl, puppy had a bad heart, extra, extra, extra!" A girl's voice in the background

12  says, "What does that mean?"

13  163.    Cynthia Smith's voice, Humane Society employee, states "We want these people to

14  know, if they're doing business and not reporting, that we are watching." The TV announcer

15  continues, "The Humane Society says the couple has operated their business for more than

16  twenty years, specializing in toy and teacup poodles." "What's a teacup poodle?" Another

17  announcer says, "It's so small, so you can put it in a teacup. Ha ha!" and they're laughing. The

18  Congress of the United States did not laugh when enacting the Animal Welfare Act of 1970 and

19  the Animal Enterprise Protection Act of 1992, providing prosecution under the Organized Crime

20  Act of 1970 for Interference with Breeders.

21  164.    The San Jose Mercury News, August 28, 1991, carried the story, "A Campbell dog

22  broker and her husband were arrested and were charged with nine counts each of felony tax

23  evasion Tuesday, for allegedly not reporting nearly half a million dollars in sales of dogs from

24  their home during the past five years. Campbell police arrested the broker, Flagara Kay Gabor,

25  52, and her husband, John Gabor, at their Smoky Court home." The dog catcher is not tax court

26  and has no jurisdiction over taxes under law.

27  165.    This information was again made public before Plaintiffs John Gabor and Kay Gabor had

28  any kind of hearing or were even indicted! "Tuesday afternoon they were being held in Santa

940825 AB    GABOR TITLE 42 CIVIL COMPLAINT                                        Page 41 of 61

1  Clara County Jail pending the posting of $50,000 dollars bail each. 'The Gabors were each

2  charged with three criminal counts of violating the state tax code, by filing false returns in an

3  attempt to evade taxes, and six counts each of violating the tax code by failing to report nearly

4  $100,000 income in each of the five years from the sales of puppies,' said Assistant District

5  Attorney Steve Gibbons, who is prosecuting the case. 'If convicted, they face up to three years in

6  jail and fines of up to $20,000 on each of the first three counts, and up to a year in jail and fines

7  up to $5,000 for each of the six counts for failing to report income on the dog sales,' Gibbons

8  said." A court recently acknowledged a district attorney fabricated evidence for the media.

9  *BUCKLEY v. FITZSIMMONS*

10  166.    According to the news article, "The Gabors could not be reached for comment, but their

11  attorney, William Chestnut was outraged by the arrest. 'I think it's ridiculous,' he said Tuesday

12  evening. 'So far as I know, I think this is blown way out of proportion, and they've done nothing

13  wrong.' Chestnut also said the couple had already agreed to surrender to authorities, and that he

14  didn't understand why officials went ahead and arrested them at home, handcuffed them, and

15  took them into custody." Attorney William Chestnut is well versed in the law and knew this was

16  an unlawful act!

17  167.    The Humane Society's supervising investigator, Defendant Michael S. Frazer said that

18  he believed the couple were continuing to run an illegal business, and that he did not want to

19  warn them of arrest and allow the possible destruction of any evidence. Defendant Michael S.

20  Fraser acted as arresting officer, prosecutor, judge and jury!

21  168.    Plaintiffs' son was home when Defendant Michael S. Frazer arrested Plaintiffs John

22  Gabor and Kay Gabor. Defendant Michael S. Frazer was madder than hell because Plaintiffs' son

23  was there! It stands to reason that he didn't want any witness to his unlawful activities!

24  169.    All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned

25  matter were caused by the agency, the actions of which are the direct responsibility of Defendant

26  Michael S. Frazer, an agency who hired him with full knowledge of his dangerous propensities;

27  an agency who hired him knowing that his records documented his dangerous propensities to

28  such an extent that the San Jose Police Department had refused to rehire him. *BRANDON v.*

1   *HOLT* 469 U.S. 464 6th Cir. Court of Appeals 1985.

2           In cases under "1983", a judgment against a public servant "in his
            official capacity" imposes liability on the entitiy that he represents.
3

4   170.    As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al., Plaintiff

5   John Gabor and Plaintiff Kay Gabor have suffered over four (4) years of money damages in the

6   form of legal fees to protect themselves, lost business, loss of equal protection under the

7   commerce clause, loss of the protectable interests in the form of freedom from fear, anxiety,

8   threats, extortion, assault, freedom to increase their own income in the only business they are

9   able to run at this time in their lives,  freedom to be secure in their papers, their home, freedom to

10  the pursuit of life, liberty, ownership of property.

11  171.    Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees  for

12  the past four (4) years in order to protect themselves from the false allegations of Defendant

13  Michael S. Frazer and the government agencies:  Franchise Tax Board  and Board of

14  Equalization with whom he either conjoined or conspired to separate Plaintiffs John Gabor and

15  Kay Gabor from their right to own property and to do wholesale business from their home.  All

16  actions taken against Plaintiffs were done so without good cause showing and in violation of the

17  first, fourth, fifth, sixth, eighth, and fourteenth amendments to and the commerce clause of the

18  Constitution for the United States.

19
                    TWELFTH CAUSE OF ACTION:  FALSE CHARGES
20                      BROUGHT UNDER COLOR OF LAW

21  172.    PLAINTIFFS  incorporate paragraphs 37 - 171 of their first through eleventh causes of

22  action herein contained.

23  173.    October 8, 1991, Plaintiffs attorney Chestnut filed in the Municipal Court of Santa Clara

24  County a demurrer, Case No. C9162511.  The Penal Code reference on this demurrer is 1004 ET

25  SEQ. "Defendants Flagara Kay Gabor and John Gabor hereby demur  to counts four and five of

26  the complaint filed against them in the above entitled action on the following grounds:

27  174.    The court has no jurisdiction of the offenses charged in these counts, because (1) the

28  statute of limitations has expired.  Penal Code 1004; (2) the facts stated with these counts do not

1  constitute a public offense; (3) The allegations of these counts contain matters which, if true,

2  constitute an illegal bar to the prosecution since they show the statute of limitations has expired."

3  Same Penal Code, 1004.  Plaintiffs suffered continuing violations of due process protected by the

4  14th amendment to the United States Constitution

5  175.    Plaintiffs attorneys continued trying without success to get Plaintiffs records and

6  information returned by Defendant Michael S. Frazer.

7  176.    March 13, 1992.  From Steve Gibbons, the District Attorney, case #C9162511, filed an

8  answer in opposition to Plaintiffs' request for return of property.  It stated, "... defendant

9  (Plaintiffs in the instant case at the bar) is not entitled to the return of property seized which may

10  be used in evidence, or is reasonably believed to be contraband in nature."  Contraband must be

11  identified as an illegal substance or substances under law.  Non of the seized property was

12  "contraband" by its lawful definition.

13  177.    **Note:  What is referred to as "contraband" are the medications all agriculturalists**

14  **and animal breeders buy regularly either over the counter or from catalogs!**  "It is the

15  People's position, if certain of the property and items seized in the search warrant falls under the

16  above exceptions and is being used in a continuing investigation of possible criminal violence of

17  other persons or entities, specifically, investigations of mail fraud violations or of false

18  information being provided to the federal government.  Attached is a declaration of  Michael S.

19  Frazer, Humane Society, which details this investigation."  Defendant Michael S. Frazer assumes

20  the authority of any state or federal officer--just how far does the authority of one County

21  Humane Officer go?  Under CC 607g Defendant Michael S. Fraser is a dog catcher, not a Federal

22  Agent!

23  178.    Defendant Rick Lamps writes what  he learned from the incident report written by

24  Defendant Michael S. Frazer.  Defendant Lamp told Plaintiffs they were being tried, right there

25  in his office.  Plaintiffs told him they had already entered a plea, and he said, "You're going to be

26  re-tried right here in my office, again!"  ...and that is exactly what he did!  Plaintiffs' attorney

27  was not allowed to be present at that "trial".

28

179.    All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned

matter were caused by the agency, the actions of which are the direct responsibility of Defendant

Michael S. Frazer, an agency who hired him with full knowledge of his dangerous propensities;

an agency who hired him knowing that his records documented his dangerous propensities to

such an extent that the San Jose Police Department had refused to rehire him.   *BRANDON v.*

*HOLT* 469 U.S. 464 6th Cir. Court of Appeals 1985.

> In cases under "1983", a judgment against a public servant "in his
> official capacity" imposes liability on the entitiy that he represents.

180.    As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al.,  Plaintiff

John Gabor and Plaintiff Kay Gabor have suffered over four (4) years of money damages in the

form of legal fees to protect themselves, lost business, loss of equal protection under the

commerce clause, loss of the protectable interests in the form of freedom from fear, anxiety,

threats, extortion, assault, freedom to increase their own income in the only business they are

able to run at this time in their lives,  freedom to be secure in their papers, their home, freedom to

the pursuit of life, liberty, ownership of property.

190.    Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees  for

the past four (4) years in order to protect themselves from the false allegations of Defendant

Michael S. Frazer and the government agencies:  Franchise Tax Board  and Board of

Equalization with whom he either conjoined or conspired to separate Plaintiffs John Gabor and

Kay Gabor from their right to own property and to do wholesale business from their home.  All

actions taken against Plaintiffs were done so without good cause showing and in violation of the

first, fourth, fifth, sixth, eighth, and fourteenth amendments to and the commerce clause of the

Constitution for the United States.

THIRTEENTH CAUSE OF ACTION:  AGENCIES CONJOIN OR CONSPIRE
TO DEPRIVE CITIZENS OF PROPERTY AND INCOME; AGENCIES CONJOIN
OR CONSPIRE TO USE PERSONAL RECORDS GAINED THROUGH A
MALICIOUSLY PROCURED WARRANT

191.    PLAINTIFFS  incorporate paragraphs 37 - 190 of their first through twelfth causes of action herein contained.

192.    Defendant Board of Equalization scheduled an audit based on information given them by Defendant Michael S. Frazer. Defendant Board of Equalization claimed Plaintiffs earned $492,000 in four years. Defendant Board of Equalization said the State was a victim in this matter.

193.    Defendant Michael S. Fraser and Defendant Rick Lamps wanted Plaintiffs to pay $54,000 dollars to the State as restitution.  Defendant Michael S. Fraser and Defendant Rick Lamps also wanted Plaintiff Kay Gabor to do 1,000 hours of volunteer work.  The next recommendation, signed by Defendant Lamps, required that Plaintiffs John Gabor and Kay Gabor each write a statement telling  how bad they were, that they were really sorry for what they did! ...whatever that was supposed to have been!

194.    Plaintiffs want to know by what authority Defendant Michael S. Frazer, whose sole duty according to CC § 607(f) & (g) is to return lost animals to their owners, surveilled their private property, acquired a warrant to search their private property, took many items not listed on the warrant in addition to all private notes, records, check books, etc. , all of which he never returned even at the request of several attorneys who have been assisting Plaintiffs in straightening out their affairs thereby violating their 4th and 5th amendments to the Constitution for the United States.

195.    Defendant Michael S. Frazer degraded Plaintiffs before the court and before other officers by using negative and scandalous terminology such as "puppy mills", "contraband items", "tax evaders"...all of which were not true, but which were very effective in slandering and defaming the characters of Plaintiffs.  Defendant Michael S. Frazer performed in the same manner as a star chamber extortionist in demanding Plaintiffs make false statements about themselves exonerating Defendant Michael S. Frazer and degrading themselves  so that they

1  could be released from jail.

2  196.    Plaintiffs had been operating their business in good faith.  It was not open to the public.

3  Plaintiffs had paid all lawful taxes for which they were liable.  Plaintiffs are not, nor have they

4  ever been "tax protesters."  All charges by the Board of Equalization and the Franchise Tax

5  Board were based on speculative, undocumented amounts without giving Plaintiffs access to

6  their own records so that they could build a factual, logical defense which Plaintiffs believe

7  would have substantiated their tax liabilities as ascertained prior to the attack by Defendant

8  Michael S. Frazer, et al. This was a violation of the Hobbs Act--collection of unlawful debt.

9  197.    The sentencing hearing was just between the attorneys and the judge. Plaintiffs were

10  sentenced to alternate programs. Plaintiff John Gabor did 50 hours volunteer work and Plaintiff

11  Kay Gabor did 100 hours plus fines.  This was not a choice, the alternative was imprisonment for

12  an indefinite period of time.

13  198.    June 19, 1992, was a short restitution hearing.  Defendant Board of Equalization assessed

14  us $14,560 dollars, telling Plaintiffs that if they didn't pay it, it would be considered a violation

15  of probation.  Plaintiffs had never been through tax court or provided any due process!

16  199.    January 26, 1993, William Chestnut, Plaintiffs' attorney, wrote and filed, "Case

17  #C9162511, notice of motion for termination of probation and a declaration in support of motion

18  for modification of termination of probation."

19  200.    March 15, 1993, Steven Gibbons, District Attorney stated in writing that Plaintiffs John

20  Gabor and Kay Gabor had fulfilled their requirements by paying the $14,560.

21  201.    A case cite from the California Reporter:  State Board of Equalization v Associated Tax

22  Consultants states, "... tax planners are entitled to disclosure of requested documents."  Plaintiffs

23  still have never received the requested documents which, by law, they [anyone who seized them]

24  have to provide.

25  202.    Revenue and Taxation Code sec. 7056, provides that" information obtained by the Board

26  about a retailer's business affairs and operation is protected from public scrutiny."  It encourages

27  one to make full and truthful declarations on one's return, without fear that any statements will be

28  revealed, or used against one for other purposes.  Plaintiffs' records were taken and were used

1  for everything in the book--to go after their customers, people who bred dogs, that Plaintiffs did

2  business with, to build a case for the Board of Equalization and to build a case for the Franchise

3  Tax Board...all with stolen private papers and records!

4  203.    November 27, 1990. Attorney Clark Barrett wrote to the Board of Equalization, telling

5  them that he was Plaintiffs' attorney, and asked that they contact him about any business

6  pertaining to Plaintiffs. May 14th, 1991, Fred Berkey from the Board of Equalization wrote

7  Clark Barrett a letter containing a bunch of meaningless figures.

8  204.    Another letter from Fred Berkey of the State Board of Equalization to Mr. Barrett of,

9  June 12, 1991, stated, "... Dear Mr. Barrett, in reference to our June 11, 1991, telephone

10  conversation, we are not in possession of the Gabors' sales invoices, and we do not have the

11  authority to make copies of the sales invoices. The invoices are in the possession of Mr. Mike

12  Frazer of the State Humane Society of Santa Clara County.  ... We suggest you contact Mr.

13  Frazer and request copies of sales invoices."  Plaintiffs John Gabor and Kay Gabor want to know

14  why the attorney general has not investigated why their personal and private papers are in the

15  hands of a non-profit charity under contract to the county for the care and return of lost or stolen

16  animals!

17  205.    The State Board of Equalization further stated, "... We are not aware of other persons in

18  this area engaged in the business of selling dogs, who do not hold seller's permits for such

19  activities. However, if any such activity is discovered or brought to our attention, that

20  information will be investigated."   At that time the news paper was full of people selling dogs!

21  Some of the ads ran all the time. These ads are all from people who do not run a business open

22  to the public and who sell from their own homes. In that situation a business license is not

23  required nor are they required to collect sales tax! Any lawful investigation is subject to

24  constitutional restraints.

25  206.    November 5, 1991. "... Board of Equalization, California. In regard to John and Kay

26  Gabor:" A settlement agreement showing taxpayer's liability. "... Tax $24,675, interest $12,877,

27  penalty $2,460, total $40,000. On December 1, 1992, payment in the amount of $14,560 was

28  paid under protest. This was collection of an unlawful debt otherwise known as extortion.

207.    December 5, 1991, a communication was sent from Mr. William F. Ryle, principal compliant supervisor, the Board of Equalization to Plaintiffs' attorney, Mr. Barrett . In return correspondence Attorney Barrett challenged the violations of Plaintiffs' rights protected by the Constitution for the United States. His protest went unheard even though he is an officer of the court!

208.    November 18, 1992 , the Board of Equalization wrote Plaintiffs, "... the Board is in the process of implementing this new supplement program as part of a process, all cases will be reviewed to identify those which appear conducive for settlement. Our records indicate that you filed a petition for re-determination, or submitted a claim for refund, or disputed amounts prior to July 1, 1992. Any questions or comments regarding the settlement program should be directed to State Board of Equalization, John Cornelius, Supervisor." Plaintiffs thought tax matters were supposed to be settled in tax court.

209.    After Plaintiffs went to a court hearing, the judge ordered restitution of $14,560 dollars as a settlement that the judge had hoped would settle this whole thing. It didn't work, because the Board of Equalization is still after Plaintiffs for more money. Barrett wrote Cornelius a letter to go with the money that Plaintiff John Gabor was to take to him, cashier's checks, money orders. "...Plaintiff John Gabor drove to Sacramento and personally handed that amount to Cornelius rather than go to Santa Clara Fred Berkey. Cornelius, on the second page of this letter wrote a receipt, and signed it.

210.    It must be remembered that all assessments by the Board of Equalization were based on information given them unlawfully from the private records of Plaintiffs unlawfully seized and retained by Defendant Michael S. Frazer and that Defendant Michael S. Frazer has, to date, refused to return said records either to Plaintiffs or to Plaintiffs attorneys.

211.    All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned matter were caused by the agency, the actions of which are the direct responsibility of Defendant Michael S. Frazer, an agency who hired him with full knowledge of his dangerous propensities; an agency who hired him knowing that his records documented his dangerous propensities to such an extent that the San Jose Police Department had refused to rehire him. *BRANDON v.*

1  *HOLT* 469 U.S. 464 6th Cir. Court of Appeals 1985.

2      In cases under "1983", a judgment against a public servant "in his
       official capacity" imposes liability on the entitiy that he represents.

3

4  212.    As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al.,  Plaintiff

5  John Gabor and Plaintiff Kay Gabor have suffered over four (4) years of money damages in the

6  form of legal fees to protect themselves, lost business, loss of equal protection under the

7  commerce clause, loss of the protectable interests in the form of freedom from fear, anxiety,

8  threats, extortion, assault, freedom to increase their own income in the only business they are

9  able to run at this time in their lives,  freedom to be secure in their papers, their home, freedom to

10  the pursuit of life, liberty, ownership of property.

11  213.    Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees  for

12  the past four (4) years in order to protect themselves from the false allegations of Defendant

13  Michael S. Frazer and the government agencies:  Franchise Tax Board  and Board of

14  Equalization with whom he either conjoined or conspired to separate Plaintiffs John Gabor and

15  Kay Gabor from their right to own property and to do wholesale business from their home.  All

16  actions taken against Plaintiffs were done so without good cause showing and in violation of the

17  first, fourth, fifth, sixth, eighth, and fourteenth amendments to and the commerce clause of the

18  Constitution for the United States.

19

20  FOURTEENTH CAUSE OF ACTION:  FALSIFICATION OF RECORDS; HARASSMENT;
         ASSAULT; INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS

21

22  214.    PLAINTIFFS  incorporate paragraphs 37 - 213 of their first through twelfth causes of

23  action herein contained.

24  215.    "Mr. and Mrs. Gabor knew for  a fact that certain alterations to the records were made by

25  someone.  They believe it to be Cap't. Frazer.  After the documents came into Mr. Frazer's

26  possession, because of certain instances, the Gabors have absolute proof that alterations were

27  made after the documents left their possession.  It seemed to be part of the "... continuing the

28  vendetta by Cap't. Frazer ... to drive them out of business... contacting newspapers... "

216.    Attorney Barrett made a settlement proposal which stated all facts in regard to Plaintiffs, . "Mike Frazer stated to the Gabors he would ruin them and drive them out of business. Although Mr. and Mrs. Gabor were conducting a perfectly lawful business of modest extent. Mr. Frazer called radio station and TV stations and made dramatically unfounded accusations that the Gabors were running a "puppy mill" in the worst sense of that word. None of these charges were ever substantiated. No other charge of animal abuse or neglect of any kind whatsoever was ever lodged against Mr. and Mrs. Gabor-- only the ravings of Mr. Frazer.

217.    Tuesday afternoon, August 27, 1991, Captain Frazer burst into the private residence of Mr. and Mrs. Gabor, with two police officers, based on a complaint, with only alleged violations of sales tax laws. The Gabors questioned whether such force is utilized in the apprehension of known drug dealers, arsonists, rapists and murderers. In spite of the fact that Mr. and Mrs. Gabor, as middle-aged citizens with physical ailments, obviously offered to go peacefully, they were roughly handled.  Still, no customer had signed a complaint against Plaintiffs and they had not been to tax court.

218.    In spite of the fact that Mr. Gabor indicated he had physical problems, including a frozen right shoulder, and an orthopedic brace on his left wrist handcuffs were placed on him with such force that the following injuries resulted:  injury to the left medial nerve, the left wrist, causing loss of feeling and use of thumb and first finger, muscle on the left thumb."

219.    Plaintiff John Gabor stated that the jailers also took his arm brace and his leg brace away from him at the county jail. Please refer to Penal Code§§ 673, 2652, 2656, referring to cruel corporal and unusual punishment, lack of treatment.  Orthopedic and prosthetic appliances used by prisoners, petition for return, 2656, "... shall not be deprived of the possession or use of orthopedic or prosthetic appliances."

220.    Attorney Barrett's statement continued, "Mr. Gabor is still suffering from the effects of those injuries, and has reduced use of left hand and wrist. Physician's medical reports can be submitted to substantiate these statements. Since that time, Mr. Gabor has been unemployed. In addition, bail was set, at the request of Captain Frazer, for the sum of $100,000 dollars." That's is a flagrant violation of the eighth amendment regarding excessive bail!

221.    "... Because the arrest was conducted on a Tuesday afternoon, however, the Gabors faced no alternative but to remain in their jail cells for a number of days, unless they obtained bail money immediately.  Reason for bail:  John Gabor suffers from high blood pressure, irregular heartbeat, takes three different prescribed medications a day, six tablets total, to control this.  He told the jail guards and the jailer that booked him in, about this problem.  They refused to give him his medications.  He was locked in a small holding room with six other men.  No air to breathe, hot and stuffy.  He was fed a stale,  baloney sandwich for a meal.  Being released on bail later that evening, he had to check into Kaiser emergency room  with chest pains, for check-up and EKG.  After witnessing the beatings and cruel treatment  guards inflicted on prisoners Plaintiff John Gabor believed he had to bail out for fear of his life.  Plaintiffs John Gabor and Kay Gabor assumed the great financial burden to produced the $10,000 cash to a bail bondsman in order to avoid spending a number of days, perhaps a week, in jail cells, before there could be a motion to reduce the bail.

222.    All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned matter were caused by the agency, the actions of which are the direct responsibility of Defendant Michael S. Frazer, an agency who hired him with full knowledge of his dangerous propensities; an agency who hired him knowing that his records documented his dangerous propensities to such an extent that the San Jose Police Department had refused to rehire him.  *BRANDON v. HOLT*  469 U.S. 464 6th Cir. Court of Appeals 1985.

> In cases under "1983", a judgment against a public servant "in his
> official capacity" imposes liability on the entitiy that he represents.

221.    As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al.,  Plaintiff John Gabor and Plaintiff Kay Gabor have suffered over four (4) years of money damages in the form of legal fees to protect themselves, lost business, loss of equal protection under the commerce clause, loss of the protectable interests in the form of freedom from fear, anxiety, threats, extortion, assault, freedom to increase their own income in the only business they are able to run at this time in their lives,  freedom to be secure in their papers, their home, freedom to the pursuit of life, liberty, ownership of property.

222.    Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees for the past four (4) years in order to protect themselves from the false allegations of Defendant Michael S. Frazer and the government agencies:  Franchise Tax Board and Board of Equalization with whom he either conjoined or conspired to separate Plaintiffs John Gabor and Kay Gabor from their right to own property and to do wholesale business from their home.  All actions taken against Plaintiffs were done so without good cause showing and in violation of the first, fourth, fifth, sixth, eighth, and fourteenth amendments to and the commerce clause of the Constitution for the United States.

### FIFTEENTH CAUSE OF ACTION:  MISREPRESENTATION IN ORDER TO GAIN ENTRY, TRESPASS, INTENT TO CAUSE HARM [ASSAULT]

223.    PLAINTIFFS  incorporate paragraphs 37 - 222 of their first through fourteenth causes of action herein contained.

224.    On page 15 of Defendant Michael S. Fraser's search warrant he verifies that Defendant Jeanie Pack either conjoined or conspired to fabricate criminal activity under pretense of wanting to purchase a puppy from a breeder in 1990.  Defendant Jeanie Pack allegedly responded to one of the hundreds of classified advertisement in the San Jose Mercury News.  Plaintiffs believe Defendant Jeanie Pack deliberately entered their home with the intent of harming their business.

225.    Ironically, in the same classified section Defendant Michael S. Fraser was selling dogs for money!  The Humane Society is required by law to have a dealer's license...U.S.D.A. regulation.

226.    All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned matter were caused by the agency, the actions of which are the direct responsibility of Defendant Michael S. Frazer, an agency who hired him with full knowledge of his dangerous propensities; an agency who hired him knowing that his records documented his dangerous propensities to such an extent that the San Jose Police Department had refused to rehire him.  *BRANDON v. HOLT* 469 U.S. 464 6th Cir. Court of Appeals 1985.

> In cases under "1983", a judgment against a public servant "in his official capacity" imposes liability on the entitiy that he represents.

227.    As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al.,  Plaintiff

John Gabor and Plaintiff Kay Gabor have suffered over four (4) years of money damages in the

form of legal fees to protect themselves, lost business, loss of equal protection under the

commerce clause, loss of the protectable interests in the form of freedom from fear, anxiety,

threats, extortion, assault, freedom to increase their own income in the only business they are

able to run at this time in their lives,  freedom to be secure in their papers, their home, freedom to

the pursuit of life, liberty, ownership of property.

228.    Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees  for

the past four (4) years in order to protect themselves from the false allegations of Defendant

Michael S. Frazer and the government agencies:  Franchise Tax Board  and Board of

Equalization with whom he either conjoined or conspired to separate Plaintiffs John Gabor and

Kay Gabor from their right to own property and to do wholesale business from their home.  All

actions taken against Plaintiffs were done so without good cause showing and in violation of the

first, fourth, fifth, sixth, eighth, and fourteenth amendments to and the commerce clause of the

Constitution for the United States.

SIXTEENTH CAUSE OF ACTION:  CONJOINING OR CONSPIRACY OF STATE
AGENCIES AND OFFICERS TO DEPRIVE CITIZENS OF PROPERTY; INTENTIONALLY
INFLICT SEVERE EMOTIONAL DISTRESS; ASSAULT BY REFUSING TO RETURN
PERSONAL RECORDS

229.    PLAINTIFFS  incorporate paragraphs 37 - 228 of their first through fifteenth causes of

action herein contained.

230.    January 15, 1991,  Wells Fargo Bank writes Plaintiffs a letter.  "Wells Fargo had received

a legal order, requesting us to furnish information regarding your account. By law, Wells Fargo

must comply with this request. If, for any reason, you wish to object to the order, you should

immediately consult an attorney of  your choice." It was  signed by the representative at the

bank.  On the back was a copy of  a municipal court search warrant dated, January 15, 1991.

231.    "... agent Richard Stoltz, of the Franchise Tax Board...[the one whose name Frazer

signed along with his on our first arrest warrant]  wants to go through our account as  "... There

940825 AB   GABOR TITLE 42 CIVIL COMPLAINT                                          Page 54 of 61

1   is probable cause for believing that a commission of felonies, to wit: violation of sec. 19406,

2   Revenue and Taxation Code, "... willfully filing a false return, particularly describing  the

3   property used in the commission of these felonies will be located at the premises described

4   below.  You are therefore commanded to make search of the premises known as Wells Fargo

5   Bank, Westgate Branch, for the following business records:  signature cards, account statements,

6   cancelled checks,  records showing... cashier's checks, deposit slips, items of deposit,  records

7   relating to deposits, fictitious name statements, trust records,  savings passbook, savings account

8   statements, front and back, all cashier's checks purchased from account, international wire

9   transfers, wire transfer documents, tax returns provided by account holder, loan application on

10  file, financial statements, loan  ledger sheets, check items showing disbursements and loans

11  processed, credit memorandum, constituting withdraws from the account. ... from the period of

12  1-87 through present, the following names of persons: John Gabor, Kay Gabor, Fred Goering and

13  Flagara Gabor."  Fred Goering is the name Plaintiff John Gabor uses for his business.  Plaintiff

14  John Gabor used to wrestle under the name, Fritz Von Goering.  That warrant was signed by

15  Edward Nielsen, Judge.  Any such warrant is supposedly issued as a result of a grand jury

16  indictment describing the criminal charge!

17  232.    July 26, 1993,  Cynthia K. Wright  wrote Plaintiffs a notice that she had their records.

18  Plaintiffs waived their  rights allowing the investigation to extend through 1986 under threat of

19  continued harassment and assessment!

20  233.    February 11, 1993,  Mr. Barrett wrote a letter to Mrs. Cynthia K. Wright.

21  234.    January 11,  1994., Cynthia K. Vance wrote a letter to Clark Barrett. saying Plaintiffs

22  were subject to an audit review.

23  235.    The Franchise Tax Board, December  3, 1993, wrote Plaintiffs through attorney Barrett,

24  "... I disagree with your statement in the fifth paragraph.  It is Franchise Tax Board policy to

25  withhold any action, or proceed with protest, until the final outcome of the appeal of the audit

26  with the State Board of Equalization.  A hearing may be requested, but the hearing officer

27  generally wishes to wait until the decision of the initial audit  with the State Board of

28  Equalization."  Take note that Plaintiffs John Gabor and Kay Gabor had in good faith hired

1    attorneys to settle and straighten out all accounts, that Defendant Michael S. Frazer passed

2    private papers around to many different agencies without the judicial direction or authority to do

3    so and that Defendant Michael S. Frazer continues to date to refuse to return the private records

4    to either Plaintiffs or Plaintiffs' attorneys thus preventing any solution of the alleged issues.

5    236.    January 21, 1994, Attorney Barrett wrote the Franchise Tax Board, telling them Plaintiffs

6    John Gabor and Kay Gabor still have not been able to review their original documents.  He

7    encloses, on the back of it, a copy of the old letter he had written to the Board of Equalization,

8    June 19, 1991, about trying to get Plaintiffs' original receipts held by Defendant Michael S.

9    Frazer.

10   237.   Plaintiffs  believe the Franchise Tax Board without judicial direction or grand jury

11   approval went through the Bank of America account, because they sent Plaintiffs many copies of

12   receipts dated during that time, showing  each monthly tax statement.  Plaintiffs John Gabor and

13   Kay Gabor were never notified that their bank account was scrutinized, nor do they know where

14   all the statements came from.

15   238.   All damages suffered by Plaintiffs John Gabor and Kay Gabor in the above captioned

16   matter were caused by the agency, the actions of which are the direct responsibility of Defendant

17   Michael S. Frazer, an agency who hired him with full knowledge of his dangerous propensities;

18   an agency who hired him knowing that his records documented his dangerous propensities to

19   such an extent that the San Jose Police Department had refused to rehire him.  *BRANDON v.*

20   *HOLT*  469 U.S. 464 6th Cir. Court of Appeals 1985.

21
                 In cases under "1983", a judgment against a public servant "in his
                 official capacity" imposes liability on the entitiy that he represents.
22

23   239.   As a proximate cause of the overt acts of Defendants Michael S. Frazer, et al.,  Plaintiff

24   John Gabor and Plaintiff Kay Gabor have suffered over four (4) years of money damages in the

25   form of legal fees to protect themselves, lost business, loss of equal protection under the

26   commerce clause, loss of the protectable interests in the form of freedom from fear, anxiety,

27   threats, extortion, assault, freedom to increase their own income in the only business they are

28   able to run at this time in their lives,  freedom to be secure in their papers, their home, freedom to

1  the pursuit of life, liberty, ownership of property.

2  240.    Plaintiffs John Gabor and Kay Gabor have been forced to go into debt for legal fees for

3  the past four (4) years in order to protect themselves from the false allegations of Defendant

4  Michael S. Frazer and the government agencies:  Franchise Tax Board  and Board of

5  Equalization with whom he either conjoined or conspired to separate Plaintiffs John Gabor and

6  Kay Gabor from their right to own property and to do wholesale business from their home.  All

7  actions taken against Plaintiffs were done so without good cause showing and in violation of the

8  first, fourth, fifth, sixth, eighth, and fourteenth amendments to and the commerce clause of the

9  Constitution for the United States.

10

11              **SEVENTEENTH CAUSE OF ACTION:  ACCOUNTING:**

12  241.    PLAINTIFFS  incorporate paragraphs 37 - 240 of their first through fifteenth causes of

13  action herein contained.

14  242.    The following is a list of actual, out of pocket expenses:

15        (1)    Attorney Clark Barrett , 1990 - 1994              $ 13,893.00

16        (2)    Attorney William Chestnut. 1990 - 1994           $ 11,473.00

17        (3)    Board of Equalization settlement                 $ 14,560.00

18        (4)    Rental of Business Location (pet shop)
              1992 - 1994                                     $   6,500.00
19

20        (5)    Loss due to three (3) customers extorting
              funds from Plaintiffs.                          $     750.00

21        (6)    Loss of business due to Defendant's refusal
              to return business papers and records. (4 years)  $ 31,250.00
22

23        (7)    Cost of new phones so that ads could be placed
              in the news paper after attack by Defendant
              Michael S. Fraser.                              $      89.00
24

25        (8)    Cost of preparing documents:  education
              and assistance in writing.                      $   5,060.00

26        (9)    Copying costs for service of process.          $     240.00

27        (10)   Mail Costs for service of process.             $     150.00

28        (11)   Court fines for Plaintiffs John Gabor &

|  |  |  |  |
|--|--|--|--|
| | Kay Gabor | $ | 1,800.00 |
| (12) | Bail Bond fee to guarantee $50,000 each for Plaintiffs John Gabor & Kay Gabor | $ | 10,000.00 |
| (13) | Items stolen from Plaintiffs by Defendant Michael S. Fraser and not listed on the search warrant. | $ | 3,083.00 |
| (14) | Filing fees | $ | 250.00 |
| | **Sub Total [out of pocket expenses]** | **$** | **99,098.00** |
| (15) | Defendant Michael S. Fraser sent out 440 letters slandering Plaintiffs:  at $25,000 fine per letter times 440 | $ | 11,000,000.00 |
| (16) | Damage to left wrist causing loss of feeling and loss of use of thumb & first finger. | $ | 1,500,000.00 |
| (17) | Civil Rights violations:  5 violations per defendant times $250,000 per violation. [19 defendants if Cynthia K. Wright & Cynthia K. Vance are one and the same] | $ | 23,750,000.00 |
| | **Grand Total Money Damages** | **$** | **36,349,098.00** |

243.    **Compensatory Damages if the Jury Deems it Proper:**

(A)    Severance from duty of any State or  Federal officer who has taken an oath to uphold the Constitution for the United States and has failed to do so.

(B)    Termination of any pensions and/or any benefits whatsoever granted by the government to those who hold public offices of trust honor and profit and who have so maliciously violated said offices.

(C)    Probation and community service required as a part of the sentence.

244.    **Prayer for Relief**

(1)    Focus on Justice and on due process [fairness].

(2)    Judicial and jury determination of whether citizens can expect to be safe in their homes, their private property and their private papers.

(3)    Clarification of the rights protected by the Constitution for the United States.

(4)    Declaratory judgement supporting Constitution in regard to warrantless search and seizures of private property with the intent of "creating" a crime.

(5)    Does the State of California have to abide by the laws created by the Congress of the United States of America? If so, can citizens expect to be protected by the Animal Enterprise Protection Act? Is California still a part of the United States?

(6)    Establish "pro per" counseling as to proper court and process to facilitate litigation for "pro per" litigants. Require California Courts to treat "pro per" litigants with respect and encouragement to expedite the whole process. Advise "pro pers" sua sponte so as to eliminate unnecessary court appearances and cut court costs as well as to cut the over-all cost of litigation. Provide "pro pers" copies of all judgements and orders as attorneys' receive from the court. Provide "pro per" litigant with a "Guideline of Court processes and procedures."

(7)    Require strict adherence to the written law by all officers of the court. Focus on Justice rather than personal monetary gain. Be of service to society and citizens before self.

(8)    Reimbursement from Defendants for all legal costs: punitive & compensatory damages as the jury deems proper.

(9)    Compel Attorney General Janet Reno and Department of Agriculture, Mike Espy to do their respective duties in enforcing U.S.C. Title 7 §§ 2131 - 2157 and Title 18 U.S.C. § 43.

**Jury Demand**:

245.    PLAINTIFF demands a trial by jury.

246.    WHEREFOR:

PLAINTIFF prays that this Court will:

(1)    Assume jurisdiction of this cause; (2) Issue a declaratory judgment pursuant to 28 U.S.C. §2201 that the acts and omissions of DEFENDANTS deprived PLAINTIFFS of the rights protected by the Constitution for the United States and the Constitution for the State of California: the right to feel secure in one's home and one's personal papers; freedom from defamation of character; freedom from malicious prosecution.

(3) Grant to PLAINTIFFS a trial by jury of his their peers herein [agriculturalists and animal breeders so that they understand the particular needs and problems of that type of enterprise];

(4)    Award to PLAINTIFFS judgment against DEFENDANTS for the damages set

1  forth hereinabove, including reasonable legal fees; court costs; costs of prosecution and other

2  exemplary damages.

3

4  **Codicil**

5  247.   Defendant Michael S. Frazer, operating under the same M O has hurt a lot of people. He

6  has cost, with his lies, the lives of many hundreds of dogs and other animals in direct violation

7  of the Organized Crime Act of 1970 and the Animal Welfare Act of 1992, U.S.C. Title 7 §§ 2131

8  - 2157.

9  248.   Many of Defendant Michael S. Frazer's victims do not have the courage, the knowledge

10  or the money to bring their cases to court.  Other examples of victims of Defendant Michael S.

11  Frazer which the readers of this document may recognize are: (1) the bad lady who was put in

12  jail for having dirty guinea pig cages--you see, she had a popular and successful petting zoo

13  program she took around to schools until Defendant Michael S. Frazer framed her, defamed her

14  character and put her out of business. Her name is Anne Bushnell. Guess what! The Santa Clara

15  Valley Humane Society is now taking a "show" to local schools; (2) A Vietnamese chicken

16  farmer was put out of business in Gilroy though Plaintiffs don't recall the name reported in the

17  paper; (3) Kenneth L. Hershey's forty (40) dogs were stolen, April , 1994, with no warrant, no

18  complaint, no good cause showing by Defendant Michael S. Frazer;  (4) A teacher, David

19  Bandy, was so infamously degraded that he can no longer act as a judge in the Cat Fancier's

20  Association where he had held a position of respect a period of over 20 years.

21  249.   The media reports, all based on false accusations, were  difficult for him to overcome;

22  however, he did overcome those difficult time and even more difficult he maintained  his dignity

23  as a public school teacher in a very difficult local high school.  It took a period of four (4) years

24  for David Bandy to partially recover from the attack and he never will recover from the loss of

25  income this malicious and intentional attack cost him.  The list goes on.  The false accusations go

26  on.  They will continue as long as Defendant Michael S. Frazer is able to collect "like kind"

27  officers  around him with the full and conscious intent, the malicious intent of destroying others

28  for his own aggrandizement and committing violations of the Organized Crime Act of 1970, the

1    Sherman Act, the Hobbs Act, the Animal Welfare Act and U.S.C.A, Title 42 §§ 1983 - 1988.

2    **Synopsis of this Instant Case at the Bar:**

3    250.    Defendant Michael S. Frazer has been successful in stalking and surveilling natural

4    citizens with the intent of fabricating a crime where none existed.

5    251.    Defendant Michael S. Frazer claims Plaintiffs are guilty of RICO actions because they

6    had a business with normal business contacts.  Any reasonable man would understand that this is

7    called net working.

8    252.    If Defendant Michael S. Fraser and those who conjoin and conspire with him are allowed

9    to construe normal business net working contacts as "RICO" actions then every citizen of the

10   State of California and of the entire United States is in danger of being accused of a crime, a

11   felony, and with the convictions of three (3) such could be incarcerated for life with no parole!

12   253.    Natural citizens fear the police because many police officers such as Defendant Michael

13   S. Frazer, fearful of confronting actual and real criminals, contrive and fabricate crimes attributed

14   to innocent citizens where their owns lives will not be threatened and yet where they can make

15   their "records" of arrest and investigation "look good" to those who hire them.

16   254.    Until the brave and honorable police officers purge their own departments of this kind of

17   rabble they will not...they cannot expect to earn the respect of the citizens they are hired to

18   protect!

19

20   Respectfully presented by

21

22

23   _____    _____
     JOHN GABOR, aka FRED GOERING              DATE

24

25

26   _____    _____
27   KAY GABOR, aka FLAGARA KAY GABOR          DATE

28

Source: Legal > States Legal - U.S. > California > Find Cases > CA Federal & State Cases, Combined 🗊
Terms: **"John Gabor" or "Kay Gabor"** (Edit Search | Suggest Terms for My Search)

✔Select for FOCUS™ or Delivery
☐

*1994 U.S. Dist. LEXIS 19468, \**

**JOHN GABOR** and **KAY GABOR,** Plaintiffs, vs. MICHAEL S. FRAZER, SANTA CLARA VALLEY
HUMANE SOCIETY, BOARD OF EQUALIZATION, STEVE GIBBONS, MIKE REILLY, AMERICAN
KENNEL CLUB [AKC], FRANCHISE TAX BOARD [FTB], FRED BERKEY, JOHN CORNELIUS,
RICHARD STOLTZ, CYNTHIA K. WRIGHT, CYNTHIA K. VANCE, PAUL R. FIRLING (AKC),
MAXINE PATTON, ANDREA SAN PHILLIPO, JEANIE PACK, RITA PERKO, DIANE WARD,
GEORGIA MARTIN, RICK LAMPS, DOES 1-500, Defendants.

Case No. C-94-20617-JW(EAI)

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

1994 U.S. Dist. LEXIS 19468

November 18, 1994, Decided
November 21, 1994, FILED, Entered

**CORE TERMS:** statute of limitations, failure to state a claim, sua sponte, contacted,
arrest, puppy, matter of law, state tort, state claims, causes of action, cognizable,
advertisements, dog, ran

**JUDGES:** **[\*1]** JAMES WARE, United States District Judge

**OPINION BY:** JAMES WARE

**OPINION**

*ORDER DISMISSING ACTION*

Defendants Santa Clara Valley Humane Society ("Humane Society"), Michael S. Frazer
("Frazer"), Andrea San Phillipo, State Board of Equalization, Franchise Tax Board, Fred
Berkey, John Cornelius, Cynthia Wright ¹, Maxine Patton, Rick Lamps, and Steve Gibbons
move to dismiss Plaintiffs **John Gabor** and **Kay Gabor's** ("the Gabors") complaint under
Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be
granted. For the reasons set forth below, the Court 1) GRANTS Frazer and the Humane
Society's motion, 2) ORDERS sua sponte Plaintiffs' Title 42 claims against the remaining
defendants sua sponte dismissed with prejudice and 3) ORDERS Plaintiffs' state claims
dismissed without prejudice.

**FOOTNOTES**

¹ Defendants Cynthia Wright and Cynthia Vance are the same person.

*BACKGROUND*

**EXHIBIT 2**

The facts presented in Plaintiffs' complaint can be summarized as follows. On July 31, 1990, Frazer, Director of the Humane Society entered **[*2]** Plaintiffs' home with an unsigned search warrant. Frazer seized 519 items relating to Plaintiffs' puppy selling business.

During the course of his subsequent investigation, Frazer contacted Defendant American Kennel Club ("AKC"). On October 23, 1990, Defendant Mike Reilly ("Reilly"), an investigator for the AKC, visited Plaintiffs' home to inspect records from past puppy sales. As a result of the AKC's own investigation, the AKC suspended Plaintiffs' membership privileges for seven years, and fined them $ 500.

During the Humane Society investigation Frazer contacted Andrea San Phillipo ("San Phillipo"), a dog groomer familiar with Plaintiffs' business. San Phillipo specifically told a number of individuals not to buy dogs from Plaintiffs because they were "poor quality" pups. Frazer also contacted the San Jose Mercury News, where Plaintiffs ran advertisements in the classified section. After talking to Frazer, the Mercury News staff stopped running Plaintiffs' puppy advertisements.

The Board of Equalization and the Franchise Tax Board also investigated Plaintiffs' business. On August 27, 1991, Plaintiffs were arrested at their home and charged with three felony counts and six misdemeanors, **[*3]** including tax evasion. Plaintiffs' arrest was covered heavily in the local media.

Mr. Gabor indicated at the time of his arrest that he had a problem with his shoulder and was wearing an orthopedic brace on his arm. He claims he suffered physical injuries from being handcuffed during the arrest. He also claims defendants refused to give him his heart medication while he was detained at the Santa Clara County Jail.

*LEGAL STANDARD*

Motions to dismiss are viewed with disfavor and are rarely granted. *Hall v. City of Santa Barbara,* 833 F.2d 1270, 1274 (9th Cir. 1986); *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981). A claim may be dismissed as a matter of law for one of two reasons: "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory." *Robertson v. Dean Witter Reynolds, Co.,* 749 F.2d 530, 534 (9th Cir. 1984).

"A complaint cannot be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); **[*4]** *Moore v. City of Costa Mesa,* 886 F.2d 260, 262 (9th Cir. 1989). "All material allegations in the complaint are to be taken as true and construed in the light most favorable to the non-moving party." *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986); *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986). However, the Court will not accept wholly conclusory allegations. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981) *cert. denied,* 454 U.S. 1031, 70 L. Ed. 2d 474, 102 S. Ct. 567 (1981); *Kennedy v. H & M Landing, Inc.,* 529.

*DISCUSSION*

Plaintiffs have sued a large number of defendants, alleging seventeen causes of action, with multiple subparts. Plaintiffs' claims are addressed individually below.

A. *Title 42 Claims*

1. *Defendants Frazer and the Humane Society*

Plaintiffs allege that their civil rights were violated under Title 42 of the United States Code §§ 1983, 1985, 1986, and 1988. Defendants Frazer and the Humane Society contend that the statute of limitations **[*5]** on Plaintiffs' Title 42 claims has run.

The statute of limitations on plaintiffs' Title 42 claims is one year. *See: Wilson v. Garcia* 471 U.S. 261, 85 L. Ed. 2d 254, 105 S. Ct. 1938 (1985), (Section 1983); *Taylor v. Regents of University of California* 993 F.2d 710-12 (9th Cir. 1993), *McDougal v. County of Imperial* 942 F.2d 668, 673-74, (9th Cir. 1991), (Section 1985); *McCalden v. California Library Association* 955 F.2d 1214, 1223 (9th Cir. 1990), (a Section 1986 claim is only valid if a Section 1985 claim is valid). ²

### FOOTNOTES

2 Section 1988 of Title 42 governs attorney fees awarded in proceedings to enforce provisions of enumerated federal civil rights laws, including the Title 42 sections asserted by Plaintiffs. Plaintiffs' Attorneys fees claim will not be addressed here since Plaintiffs' Title 42 claims are barred by the one year statute of limitations.

The events pertaining **[*6]** to Plaintiffs Title 42 claims occurred on or between July 31, 1990 and August 27, 1991. Therefore, the last day Plaintiffs could have filed their Title 42 action was August 27, 1992. Since Plaintiffs filed their action on September 8, 1994, more than two years after the statute of limitations ran, Plaintiffs' Title 42 claims are barred as a matter of law against all defendants. Accordingly, Defendants Frazer's and the Humane Society's Motion to Dismiss is hereby GRANTED.

### 2. *Remaining Defendants*

The Court has the power to dismiss sua sponte Plaintiffs' entire complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil procedure. *See: Shawnee International N.V. v. Hondo Drilling Co.* 742 F2d 234 (5th Cir. 1984). In light of the Court's finding that the statute of limitations has run on plaintiffs' Title 42 claims. The Court hereby DISMISSES Plaintiffs' Title 42 claims as to all defendants.

### B. *18 U.S.C. § 43 Claims*

Plaintiffs allege a claim under 18 U.S.C. § 43, The Animal Enterprise Protection Act. Since Title 43 is a criminal statute and Plaintiffs **[*7]** acknowledge that there is no private right of action available under this statute, Plaintiffs' claim under Section 43 is DISMISSED with prejudice.

### C. *State Tort Claims*

It appears that plaintiffs' remaining causes of actions are state tort claims. This Court declines to exercise supplemental jurisdiction over these claims. Rule 1367(a) of the Federal Rules of Civil Procedure. Accordingly, this Court DISMISSES Plaintiff's state claims without prejudice for lack of subject matter jurisdiction.

IT IS SO ORDERED.

DATE: November 18, 1994

JAMES WARE

United States District Judge

Source:  Legal > States Legal - U.S. > California > Find Cases > **CA Federal & State Cases, Combined** 
Terms:  **"John Gabor" or "Kay Gabor"**  (Edit Search | Suggest Terms for My Search)
View:  Full
Date/Time:  Friday, September 14, 2007 - 4:40 PM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
[Q] -  Questioned: Validity questioned by citing refs
△ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
ⓘ -  Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

● LexisNexis®     About LexisNexis  |  Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

Case 5:07-cv-04266-RMW    Document 56    Filed 10/10/2007    Page 70 of 86

✔Select for FOCUS™ or Delivery
☐

1996 U.S. App. LEXIS 5280, *

**JOHN GABOR** and **KAY GABOR,** Plaintiffs-Appellants, v. MICHAEL S. FRAZER; SANTA CLARA VALLEY HUMANE SOCIETY; STATE BOARD OF EQUALIZATION; STEVE GIBBONS; AMERICAN KENNEL CLUB, INC., aka AKC; FRANCHISE TAX BOARD; FRED BERKEY; JOHN CORNELIUS; CYNTHIA K. WRIGHT; PAUL R. FIRLING, AKC; MAXINE PATTON; ANDREA SAN PHILLIPO; RITA PERKO; RICK LAMPS, Defendants-Appellees.

No. 94-17133

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

1996 U.S. App. LEXIS 5280

February 13, 1996, ** Submitted, San Francisco, California

** The panel unanimously finds this case suitable for disposition without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4.
March 7, 1996, FILED

**NOTICE: [*1]** RULES OF THE NINTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 78 F.3d 593, 1996 U.S. App. LEXIS 13620.

**PRIOR HISTORY:** Appeal from the United States District Court for the Northern District of California. D.C. No. CV-94-20617-JW. James Ware, District Judge, Presiding.

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff breeders sought review of the decision of the United States District Court for the Northern District of California, which dismissed with prejudice on the basis of the statute of limitations their complaint against defendants, humane society, franchise tax board, board of equalization, American Kennel Club, and numerous individuals. The breeders had alleged claims under 42 U.S.C.S. §§ 1983, 1985, 1986, 1988.

**OVERVIEW:** The breeders sold puppies from their home. On July 31, 1990, the society executed a search warrant on the breeders' home. On August 26, 1991, the police arrested the breeders. On October 8, 1991, the breeders pled no contest to failing to file a sales tax return. On September 15, 1992, defendant American Kennel Club suspended the breeders' membership privileges and fined them. The district court dismissed the breeders' complaint, which was filed on filed in September of 1994, with prejudice because the claims were barred by the statute of limitations. The court affirmed the dismissal. The district court did not err in denying the breeders' recusal motion because his alleged interest in the collection of taxes would not lead a reasonable person to believe the judge

**EXHIBIT 3**

Case 5:07-cv-04266-RMW    Document 56    Filed 10/10/2007    Page 71 of 86

had an interest in the litigation or would favor the defendants. The applicable statute of limitations period for the breeders' claims was one year, that period had expired, and the breeders waived any claim that the four-year limitations period under Racketeer Influenced and Corrupt Organizations Act was applicable.

**OUTCOME:** The court affirmed the dismissal with prejudice of the breeders' complaint.

**CORE TERMS:** recusal, puppies, statute of limitations, limitations period, seized, waived, reasonable person, membership, entitle, misdemeanor

## LEXISNEXIS® HEADNOTES                                    ⊟**Hide**

Civil Procedure > Judicial Officers > Judges > Disqualifications & Recusals > General Overview
Civil Procedure > Appeals > Standards of Review > Abuse of Discretion
Governments > Courts > Judges
*HN1* The United States Court of Appeals for the Ninth Circuit reviews the district court's denial of a recusal motion for an abuse of discretion. Recusal is not required unless a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.  More Like This Headnote

Civil Procedure > Dismissals > General Overview
Civil Procedure > Appeals > Standards of Review > De Novo Review
Governments > Legislation > Statutes of Limitations > General Overview
*HN2* The United States Court of Appeals for the Ninth Circuit reviews de novo the district court's dismissal of a complaint on statute of limitations grounds. The plaintiffs' allegations are taken as true and viewed in the light most favorable to them. More Like This Headnote

Civil Procedure > Dismissals > General Overview
*HN3* A dismissal with prejudice is inappropriate unless it appears beyond doubt that the plaintiffs could not allege facts which would entitle them to relief. More Like This Headnote

Civil Rights Law > Conspiracy > Knowing Nonprevention
Criminal Law & Procedure > Search & Seizure > General Overview
Governments > Legislation > Statutes of Limitations > Time Limitations
*HN4* The applicable limitations period for claims under 42 U.S.C.S. §§ 1983, 1985, 1986, 1988, is one year. 42 U.S.C.S. § 1986.  More Like This Headnote

**COUNSEL:** For **JOHN GABOR**, Plaintiff - Appellant: **John Gabor,** Pro Se, Campbell, CA. For **KAY GABOR**, Plaintiff - Appellant: **Kay Gabor,** Pro Se, Campbell, CA.

For MICHAEL FRAZER, SANTA CLARA VALLEY HUMANE SOCIETY, Defendants - Appellees: Jacquelyn K. Wilson, Esq., Daniel A. Ojeda, GASSETT, PERRY & FRANK, San Jose, CA. For STATE BOARD OF EQUALIZATION, FRANCHISE TAX BOARD, FRED BERKEY, JOHN CORNELIUS, CYNTHIA K. WRIGHT, Defendants - Appellees: Paul D. Gifford, DAG, ATTORNEY GENERAL'S OFFICE, San Francisco, CA. For AMERICAN KENNEL CLUB, INC., aka AKC, Defendant - Appellee: Jeffrey R. Kurtock, Esq., LEWIS, D'AMATO, BRISBOIS & BISGAARD, San Francisco, CA. Robert Garnett, LAW OFFICES, San Francisco, CA. For MAXINE PATTON, Defendant - Appellee: Stephen Pahl, PAHL & GOSSELIN, San Jose, CA. Joseph D. Ryan,

MARTIN, RYAN, ANDRADA & LIFTER, Oakland, CA. For ANDREA SAN PHILLIPO, **[*2]** Defendant - Appellee: Dennis B Kavanagh, Esq, Attorney at Law, San Francisco, CA. For RITA PERKO, Defendant - Appellee: Philip A. Torre, San Francisco, CA. For STEVE GIBBONS, RICK LAMPS, Defendants - Appellees: Carrie A. Zepeda, SANTA CLARA COUNTY COUNSEL'S OFFICE, San Jose, CA. For PAUL R. FIRLING, AKC, Defendant - Appellee: Jeffrey R. Kurtock, Esq., (See above). Paul D. Gifford, DAG, (See above).

**JUDGES:** Before: REINHARDT, THOMPSON and O'SCANNLAIN, Circuit Judges.

### OPINION

MEMORANDUM *

### FOOTNOTES

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

John and **Kay Gabor** (Gabors) appeal the district court's dismissal of their complaint with prejudice. We have jurisdiction under 28 U.S.C. § 1291, and we affirm. [1]

### FOOTNOTES

1 In this memorandum, we address the district court's dismissal of the Gabors' complaint. In a separate published order, we address the appellees' requests for attorney's fees and costs.

**[*3]** FACTS

The present dispute arises out of the Gabors' sale of puppies from their home. On July 31, 1990, Michael S. Frazer, an employee of the Santa Clara Valley Humane Society (Humane Society), executed a search warrant at the Gabors' home. In his affidavit in support of the warrant, Frazer averred the Gabors were selling puppies by falsely representing the breed, health, and color of the puppies; were operating a pet shop without the appropriate permits and licenses; were providing forged American Kennel Club (AKC) documents to buyers to increase the price of the puppies; and had failed to pay sales taxes to the State Board of Equalization. During the execution of the search warrant, Frazer seized supplies, equipment, personal notes, and AKC documents.

The Gabors contend that, as a result of Frazer's execution of the warrant, Mike Reilly, an investigator for the AKC, visited the Gabors' home to inspect their records. The Gabors contend they could not comply with the AKC's request for documents because Frazer had seized all relevant documentation. On September 15, 1992, the AKC suspended the Gabors' membership privileges in AKC for seven years and fined them $ 500.

On August **[*4]** 26, 1991, police officers arrested the Gabors at their home. The Gabors were charged with three felonies and six misdemeanors, alleging violations of the state tax code and the filing of false returns relating to the sale of the puppies. On October 8, 1991, the Gabors pleaded *nolo contendere* to a single misdemeanor count of failing to file a sales tax return for tax year 1986.

On September 14, 1994, the Gabors filed their complaint in this action against Frazer, the Humane Society, the Franchise Tax Board, the Board of Equalization, the AKC, and numerous individuals. The Gabors allege claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988. The district court dismissed the complaint with prejudice after determining the statute of limitations barred the Gabors' claims. This appeal followed.

DISCUSSION

A. Recusal Motion

The Gabors first contend the district court erred by denying their recusal motion. *HN1*We review the court's denial of the recusal motion for an abuse of discretion. _Moideen v. Gillespie_, 55 F.3d 1478, 1482 (9th Cir. 1995). Recusal is not required unless "a reasonable person with knowledge of all the facts would conclude that [the] judge's impartiality **[*5]** might reasonably be questioned." _Id._

The Gabors contend the district court judge previously was a state court judge and, thus, they speculate, some of the defendants employed by governmental agencies may have appeared before the judge. This allegation would not lead a reasonable person to believe the judge had an interest in the litigation or would favor the defendants. The district court did not err by denying the recusal motion. ²

**FOOTNOTES**

2 On appeal, the Gabors also imply all district court judges have a conflict of interest. Because the Gabors did not raise this argument before the district court, we decline to address it. _Gonzalez v. Sullivan, 914 F.2d 1197, 1202 (9th Cir. 1990)._

B. Statute of Limitations

*HN2*We review de novo the district court's dismissal of the Gabors' complaint on statute of limitations grounds. _Washington v. Garrett, 10 F.3d 1421, 1428 (9th Cir. 1993)._ The Gabors' allegations are taken as true and viewed in the light most favorable to them. _Parks School of Business_ **[*6]** _v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995)._ *HN3*A dismissal with prejudice is inappropriate unless it appears beyond doubt that the Gabors could not allege facts which would entitle them to relief. _Id._

*HN4*The applicable limitations period for the Gabors' claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988 is one year. _McDougal v. County of Imperial, 942 F.2d 668, 673-74 (9th Cir. 1991)_; 42 U.S.C. § 1986; _Donoghue v. County of Orange, 848 F.2d 926, 929-30 (9th Cir. 1987)._ The Gabors' allegations focus on the search of their home, the seizure of documents and equipment, alleged misrepresentations made in the media and by certain defendants following the search of their home, the AKC's suspension of their membership privileges and imposition of a fine, and their subsequent arrest and convictions for tax violations. All these events took place in 1990, 1991, and 1992. The Gabors, however, did not file their complaint until September 1994. Therefore, the Gabors did not file their complaint within one year from the accrual of the action.

The only dates cited in the Gabors' complaint that are within the limitations period relate to an apparent pending audit of the Gabors **[*7]** by the Franchise Tax Board. The Gabors contend they are continuing to suffer harm from the search of their home because Frazer has not returned the seized documents and, consequently, they are unable to settle all the disputes pending against them. This allegation does not save the Gabors' complaint. The Gabors' claim accrued on the date Frazer seized the documents. _See Cline v. Brusett, 661_

F.2d 108, 110 (9th Cir. 1981) (defining when action accrues). The Gabors cannot avoid the limitations bar by alleging they continue to suffer injury from wrongful acts which occurred outside the limitations period. _McDougal_, 942 F.2d at 674-75.

The Gabors also have waived any claim that the four-year limitations period, under RICO's civil enforcement provision, applies to their action. Before the district court, the Gabors consistently asserted their claims arose under the Constitution and 42 U.S.C. §§ 1983-1988. The first time the Gabors imply the RICO statute of limitations governs their claims is in their appellate reply brief. The Gabors, therefore, have waived the issue on appeal. _Whittaker Corp. v. Execuair Corp._, 953 F.2d 510, 515 (9th Cir. 1992); _Sanchez v. City of Santa_ **[*8]** _Ana_, 915 F.2d 424, 430 (9th Cir. 1990), cert. denied, 502 U.S. 815, 116 L. Ed. 2d 41, 112 S. Ct. 66 (1991).

C. Remaining Issue

The district court held the Gabors could not pursue a private right of action under the Animal Enterprise Protection Act, 18 U.S.C. § 43, and declined to exercise supplemental jurisdiction over their remaining state law claims. The Gabors do not contest these determinations on appeal. Consequently, they have waived any challenge to them. _Officers for Justice v. Civil Serv. Comm'n_, 979 F.2d 721, 726 (9th Cir. 1992), cert. denied, 507 U.S. 1004 (1993).

CONCLUSION

We conclude the district court did not err by dismissing the Gabors' complaint with prejudice. In view of the bar of the applicable statute of limitations, and taking the allegations of the Gabors' complaint as true, it is clear beyond any doubt that the Gabors cannot allege facts which would entitle them to relief. See _Parks School of Business, 51 F.3d at 1484._

AFFIRMED.

---

Source:  Legal > States Legal - U.S. > California > Find Cases > **CA Federal & State Cases, Combined** ⓘ
Terms:  "John Gabor" or "Kay Gabor"  (Edit Search | Suggest Terms for My Search)
View:  Full
Date/Time:  Friday, September 14, 2007 - 4:44 PM EDT

* Signal Legend:
⬤ -  Warning: Negative treatment is indicated
🅠 -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
ⓘ -  Citation information available
* Click on any _Shepard's_ signal to _Shepardize®_ that case.

 LexisNexis®    About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Source: Legal > States Legal - U.S. > California > Find Cases > CA Federal & State Cases, Combined [i]
Terms: "John Gabor" or "Kay Gabor"  (Edit Search | Suggest Terms for My Search)

✔Select for FOCUS™ or Delivery
☐

*78 F.3d 459, \*; 1996 U.S. App. LEXIS 3913, \*\*;*
*34 Fed. R. Serv. 3d (Callaghan) 832; 96 Cal. Daily Op. Service 1583*

**JOHN GABOR** and **KAY GABOR,** Plaintiffs-Appellants, v. MICHAEL S. FRAZER; SANTA
CLARA VALLEY HUMANE SOCIETY; STATE BOARD OF EQUALIZATION; STEVE GIBBONS;
AMERICAN KENNEL CLUB, INC., aka AKC; FRANCHISE TAX BOARD; FRED BERKEY; JOHN
CORNELIUS; CYNTHIA K. WRIGHT; PAUL R. FIRLING, AKC; MAXINE PATTON; ANDREA SAN
PHILLIPO; RITA PERKO; RICK LAMPS, Defendants-Appellees.

No. 94-17133

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

78 F.3d 459; 1996 U.S. App. LEXIS 3913; 34 Fed. R. Serv. 3d (Callaghan) 832; 96 Cal. Daily
Op. Service 1583; 96 Daily Journal DAR 2629

March 7, 1996, Filed

**PRIOR HISTORY:  [\*\*1]**  D.C. No. CV-94-20617-JW.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Appellees requested an award of attorney fees and costs
contending appellants' challenge to the United States District Court's dismissal of their
complaint was frivolous.

**OVERVIEW:** Previously, the court affirmed the district court's dismissal of appellants'
complaint with prejudice. Thereafter, appellees requested an award of attorney fees and
costs because appellant's challenge to the district court's dismissal was frivolous.
Appellees requested the fees and costs in an appellate brief and did not file a separate
motion. The court denied appellees' request for attorney fees and costs in accordance with
Fed. R. App. P. 38. The court held appellees' failure to file a separate motion seeking the
award of fees and costs precluded the court from awarding said expenses. The court
reasoned that appellees' request of fees and costs in its brief was not sufficient to require
such an award where appellants were not provided sufficient notice. In addition, the court
noted it denied the request without prejudice to appellees requesting an award for fees
and costs in a separately filed motion.

**OUTCOME:** The court denied appellees' request for an award of attorney fees and costs
due to appellants' frivolous challenge to the district court's dismissal of their case. The
court held because appellees failed to file a separate motion seeking fees and costs as
required by the appellate rules of procedure their request was denied. The court reasoned
the applicable rule precluded an award of fees and costs absent the filing of a motion.

**CORE TERMS:** separately, notice, award of attorney fees, opportunity to respond,
frivolous, advisory

**EXHIBIT 4**

**LEXISNEXIS® HEADNOTES**                                                    ⊟ **Hide**

Civil Procedure > Remedies > Costs & Attorney Fees > Costs
Civil Procedure > Appeals > Frivolous Appeals 🔎

**HN1** ⬦ If a court of appeals determines that an appeal is frivolous, it may, after a
separately filed motion or notice from the court and reasonable opportunity to
respond, award just damages and single or double costs to the appellee. Fed. R.
App. P. 38. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** John and **Kay Gabor,** Campbell, California, in pro se for the plaintiffs-appellants.

Dennis B. Kavanagh, Law Offices of Alton M. Chambliss, San Francisco, California, for
defendant-appellee, Andrea San Phillipo.

Jeffrey R. Kurtock, Lewis, D'Amato, Brisbois & Bisgaard, San Francisco, California, for
defendants-appellees, American Kennel Club and Paul Firling.

Philip A. Torre, San Francisco, California, for defendant-appellee, Rita Perko.

Stephen D. Pahl, Pahl & Gosselin, San Jose, California, for defendant-appellee, Maxine
Patton.

Paul D. Gifford, Deputy Attorney General, Oakland, California, for defendants-appellees,
California State Board of Equalization, California Franchise Tax Board, Fred Berkey, John
Cornelius and Cynthia Wright (Vance).

Jacquelyn K. Wilson, Gassett, Perry & Frank, San Jose, California, for defendants-appellees,
Humane Society of Santa Clara Valley and Michael Frazer.

**JUDGES:** Before: Stephen Reinhardt, David R. Thompson and Diarmuid F. O'Scannlain,
Circuit Judges.

**OPINION**

**[*459]** ORDER

In a separately filed memorandum, we addressed the merits of appellants John and **Kay
Gabors'** (Gabors) appeal. Specifically, we affirmed **[**2]** the district court's dismissal of
their complaint with prejudice. In this order, we address the appellees' requests for attorney
fees and costs, pursuant to Federal Rule of Appellate Procedure 38 (1994).

Appellees Andrea San Phillipo, Rita Perko, Maxine Patton, and the Santa Clara Valley Humane
Society request an award of attorney fees and costs, contending the Gabors' appeal is
frivolous. The appellees request these fees only in their appellate briefs and not in a
separately filed motion.

The 1994 amendment to Federal Rule of Appellate Procedure 38 permits an award under this
rule only "after a separately filed motion or notice from the court and reasonable opportunity
to respond." [1] The advisory committee notes to this amendment state that a request for
sanctions in a party's appellate brief does not provide sufficient notice to the opposing party.
*Id.*, Advisory Committee Notes. Accordingly, the appellees' request for an award of attorney
fees **[*460]** under Rule 38 is DENIED without prejudice to the appellees requesting such an
award of fees and costs in a separately filed motion.

## FOOTNOTES

**1** After the 1994 amendment, <u>Rule 38</u> provides:

*HN1* If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

<u>Fed. R. App. P. 38</u>.

**[**3]**

Source: <u>Legal</u> > <u>States Legal - U.S.</u> > <u>California</u> > <u>Find Cases</u> > **CA Federal & State Cases, Combined** ⓘ
Terms: **"John Gabor" or "Kay Gabor"** (<u>Edit Search</u> | <u>Suggest Terms for My Search</u>)
View: Full
Date/Time: Friday, September 14, 2007 - 4:46 PM EDT

\* Signal Legend:
● - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
\* Click on any *Shepard's* signal to *Shepardize*® that case.

● LexisNexis®   About LexisNexis  | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

FILED

MAR 2 4 1997

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GABOR and KAY GABOR, | NO.  C-94-20617 RMW |
| Plaintiff, | ORDER AWARDING SANCTIONS |
| v. | |
| MICHAEL S. FRAZER, et al., | |
| Defendants. | |

Defendant Maxine Patton's motion for award of sanctions was submitted on March 19, 1997. The court has read the moving and responding papers and considered all other matters before the court.  Based on the time spent on this case, the issues involved, and the experience of counsel, the court finds that an award of $4,361.00 in attorney's fees and $637.74 in costs is appropriate.  The hourly rate charged by plaintiff's counsel is well within community standards, and the work product is of good quality.  Although plaintiffs John and Kay Gabor filed an opposition to defendant's motion, they do not challenge the amount of sanctions requested.

DATED:___3/22/97___

_Ronald m. Whyte_
RONALD M. WHYTE
United States District Judge

1

ORDER AWARDING SANCTIONS
NO. C-94-20617   RMW
MY

**EXHIBIT 5**

1 | Copy of order mailed on ⎯⎯⎯ MAR 24 1997 ⎯⎯⎯ to:

2 | John and Kay Gabor
3 | 590 Smokey Court
  | Campbell, CA 95008

4 |     Plaintiffs, <u>in propria persona</u>

5 | Dennis B. Kavanagh
  | Law Offices of Alton M. Chambliss
6 | 50 Fremont Street, #2550
  | San Francisco, CA 94105

7 |
8 | William Gerson
  | Morrison & Foerseter
  | 345 California Street
9 | San Francisco, CA 94104

10 | Daniel Lungren
   | Paul Gifford
11 | 2101 Webster Street, 12th Floor
   | Oakland, CA 94612

12 |
13 | Carrie Zepeda
   | County Gov't Center
   | 70 W. Hedding Street, 9th Floor
14 | San Jose, CA 95110

15 | Stephen D. Paul
   | Pahl & Gosselin
16 | 160 W. Santa Clara Street, #1450
   | San Jose, CA 95113

17 |
18 | Glenn Gould
   | Ryan, Andrada & Lifter
   | 300 Lakeside Drive, #1045
19 | Oakland, CA 94612-3536

20 | Hon. James Ware
   | 280 South First Street
21 | San Jose, CA 95113

22 | Mike Reilly
   | c/o American Kennel Club
23 | 51 Madison Ave
   | New York, NY 10010

24 |
25 | Robert Garnett
   | Lewis, D'Amato
   | 601 California Street, #1900
26 | San Francisco, CA 94108

27 |
28 |

2

ORDER AWARDING SANCTIONS
NO. C-94-20617  RMW
MY

1    Georgia Martin
     APHIS Dept. of Ag.
2    9680 Micron Ave, Suite E
     Sacramento, CA 95827

3

4    Richard Stoltz
     Sacramento District Office
     8745 Folsom Blvd., #159
5    Sacramento, CA 95826

6    Philip A. Torre
     425 California Street, 15th Floor
7    San Francisco, CA 94104

8              Defendants and counsel for defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                    3

1  JACQUELYN K. WILSON (Bar No. 112206)
   HUBER ◊ SAMUELSON APC #35995-29-134
5  210 North Fourth Street, Suite 400
   San Jose, CA 95112
6  Telephone: (408) 295-7034
   Facsimile: (408) 295-5799

7
   Attorneys for Defendants
8  MICHAEL S. FRAZER and
   SANTA CLARA HUMANE SOCIETY

9

10

11          UNITED STATES DISTRICT COURT FOR THE

12            NORTHERN DISTRICT OF CALIFORNIA

13

14  JOHN GABOR, KAY GABOR,        )  Case No. C 94-20617 RMW
                                  )
15          Plaintiff,            )  NOTICE OF ENTRY OF JUDGMENT
                                  )
16     vs.                        )
                                  )
17  MICHAEL S. FRAZER and         )
    SANTA CLARA HUMANE SOCIETY    )
18  , et al.,                     )
                                  )
19          Defendants.           )
                                  )

20

21      PLEASE TAKE NOTICE THAT the above entitled court entered

22  Judgment in the amount of $4,026.30 in favor of defendants

23  MICHAEL S. FRAZER and SANTA CLARA HUMANE SOCIETY on September 18,

24  1998.  A copy of the Judgment is attached hereto as Exhibit A.

25

26  DATED: 9-24    , 1998        HUBER ◊ SAMUELSON APC

27

28                              By
                                  JACQUELYN K. WILSON
                                  Attorneys for Defendants
                                  SANTA CLARA HUMANE SOCIETY

341358.1

JACQUELYN K. WILSON (Bar No. 112206)
HUBER ◊ SAMUELSON APC #35995-29-134
210 North Fourth Street, Suite 400
San Jose, CA 95112
Telephone: (408) 295-7034
Facsimile: (408) 295-5799

Attorneys for Defendants
MICHAEL S. FRAZER and
SANTA CLARA HUMANE SOCIETY

ORIGINAL
FILED

SEP 22 1998

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

RECEIVED

SEP 18 1998

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GABOR, KAY GABOR, | Case No. C 94-20617 RMW |
| Plaintiff, | SEPARATE JUDGMENT RE SANCTIONS |
| vs. | |
| MICHAEL S. FRAZER and SANTA CLARA HUMANE SOCIETY , et al., | |
| Defendants. | |

WHEREAS the above entitled court entered its Order Granting

Summary Judgment in favor of defendants MICHAEL S. FRAZER and

SANTA CLARA HUMANE SOCIETY on February 13, 1996; and

WHEREAS said judgment was upheld on plaintiff's appeal by

the U.S. Court of Appeals for the Ninth Circuit in its Memorandum

filed March 7, 1996; and

WHEREAS the U.S. Court of Appeals for the Ninth Circuit

issued its Order on July 25, 1996, awarding sanctions to

defendants MICHAEL S. FRAZER and SANTA CLARA HUMANE SOCIETY and

directing that the matter be remanded to the District Court for

determination of the amount of sanctions; and

341363.1

1     WHEREAS the U.S. Supreme denied plaintiffs' Petition for

2 Writ, and plaintiffs' petition for rehearing was denied on

3 December 9, 1996; and

4     WHEREAS the expedited motion of MICHAEL S. FRAZER and SANTA

5 CLARA HUMANE SOCIETY was granted on September 4, 1998, awarding

6 defendants sanctions in the amount of FOUR THOUSAND TWENTY SIX

7 30/100 DOLLARS ($4026.30), now, therefore,

8     A Judgment, separate and apart from the original Judgment,

9 is hereby entered in favor of defendants MICHAEL S. FRAZER and

10 SANTA CLARA HUMANE SOCIETY and against plaintiffs JOHN GABOR, KAY

11 GABOR for sanctions in the total sum of FOUR THOUSAND TWENTY SIX

12 30/100 DOLLARS ($4026.30).

13

14 DATED: ____9/18____ , 1998       **Ronald M. Whyte**

15                                   RONALD M. WHYTE

16                                   United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

                          - 2 -

341363.1

Case Name:
Case No.:          -94-20617 RMW
File No.:        35995-29-134

1                        **PROOF OF SERVICE**

2        I certify and declare as follows:

3        I am over the age of 18 years, and not a party to the within

4    action.  My business address is 210 North Fourth Street, Suite

5    400, San Jose, California 95112, which is located in the county

6    where the mailing described below took place.  On the date listed

7    below, I served the following documents: **JUDGMENT AND NOTICE OF**

8    **ENTRY OF JUDGMENT** by placing a true copy thereof enclosed in a

9    sealed envelope and served in the manner and/or manners described

10   below to each of the parties herein and addressed as stated

11   below:

12      See Attached Service List

13   [X]    United States Postal Service, U.S. Mail, with First
            Class postage prepaid and deposited in sealed envelope
14          at San Jose, California.  I am readily familiar with the
            business practice at my place of business for collection
15          and processing of correspondence for mailing with the
            United States Postal Service.  Correspondence so
16          collected and processed is deposited with the United
            States Postal Service that same day in the ordinary
17          course of business.

18   [ ]    Facsimile Transmission

19   [ ]    Hand-Delivery by Courier: same day delivery

20   [ ]    Other:

21       I declare that I am a member of the bar of this court.

22   Executed on September 24, 1998

23

24

25

26

27

28

Source:  Legal > States Legal - U.S. > California > Find Cases > CA Federal & State Cases, Combined
Terms:  **"John Gabor" or "Kay Gabor"**  (Edit Search | Suggest Terms for My Search)

✔Select for FOCUS™ or Delivery
☐

*519 U.S. 934; 117 S. Ct. 308;*
*136 L. Ed. 2d 225; 1996 U.S. LEXIS 6230,* *

**JOHN GABOR,** ET UX. v. MICHAEL S. FRAZER, ET AL.

96-5490

SUPREME COURT OF THE UNITED STATES

519 U.S. 934; 117 S. Ct. 308; 136 L. Ed. 2d 225; 1996 U.S. LEXIS 6230; 65 U.S.L.W. 3293

October 15, 1996, Decided

**PRIOR HISTORY:  [*1]**  Petition for writ of certiorari to the United States Court of Appeals for the Ninth Circuit.

**JUDGES:** Rehnquist, Stevens, O'Connor, Scalia, Kennedy, Souter, Thomas, Ginsburg, Breyer.

**OPINION**

The petition for writ of certiorari is denied.

Source:  Legal > States Legal - U.S. > California > Find Cases > CA Federal & State Cases, Combined
Terms:  "John Gabor" or "Kay Gabor"  (Edit Search | Suggest Terms for My Search)
View:  Full
Date/Time:  Friday, September 14, 2007 - 4:51 PM EDT

* Signal Legend:
● -  Warning: Negative treatment is indicated
Ⓠ -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
ⓘ -  Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.


 LexisNexis®    About LexisNexis  | Terms & Conditions
Copyright ©  2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**EXHIBIT 6**

Source: Legal > States Legal - U.S. > California > Find Cases > CA Federal & State Cases, Combined ℹ️
Terms: **"John Gabor" or "Kay Gabor"**  (Edit Search | Suggest Terms for My Search)

✓Select for FOCUS™ or Delivery
☐

*519 U.S. 1035; 117 S. Ct. 600;*
*136 L. Ed. 2d 527; 1996 U.S. LEXIS 7608, \**

**JOHN GABOR** ET UX. v. MICHAEL S. FRAZER, ET AL.

96-5490

SUPREME COURT OF THE UNITED STATES

519 U.S. 1035; 117 S. Ct. 600; 136 L. Ed. 2d 527; 1996 U.S. LEXIS 7608; 65 U.S.L.W. 3415

December 9, 1996, Decided

**JUDGES:** **[\*1]** Rehnquist, Stevens, O'Connor, Scalia, Kennedy, Souter, Thomas, Ginsburg, Breyer.

**OPINION**

The petition for rehearing is denied.

Source: Legal > States Legal - U.S. > California > Find Cases > CA Federal & State Cases, Combined ℹ️
Terms: **"John Gabor" or "Kay Gabor"**  (Edit Search | Suggest Terms for My Search)
View:  Full
Date/Time: Friday, September 14, 2007 - 4:50 PM EDT

\* Signal Legend:
● -  Warning: Negative treatment is indicated
Ⓠ -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
ⓘ -  Citation information available
\* Click on any *Shepard's* signal to *Shepardize*® that case.

 **LexisNexis**®    About LexisNexis  | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.