John Gabor and Kay Gabor
590 Smokey Court
Campbell, CA. 95008-3717
408-378-4326
    Plaintiffs

FILED

ᴚᴚᴚ JAN 14  P 4: 03

RICHARD W. WIEKING
U.S. DISTRICT COURT
DISTRICT OF CAL., S.J.

RECEIVED

RICHARD W. WIEKING CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

08 JAN 14  AH 10: 4

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN GABOR and KAY GABOR,

    Plaintiffs,

COUNTY OF SANTA CLARA BOARD OF
SUPERVISORS, et al.
    Defendants.

CASE NO. C-07-04266 RMW

PLAINTIFF'S NOTICE
ILLEGALITY OF ADR BY CLERK

PROOF OF SERVICE, RULE 5(a)

## TO ALL CLERKS, PARTIES AND interim U.S. ATTORNEY SCOTT N. SCHOOLS:

1.    Plaintiffs John Gabor and Kay Gabor CANNOT be declared vexatious because they have paid the full fee for a JURY TRIAL, therefore, they cannot be "defrauded" of a purchased constitutional right.

2.    On December 18, 2007, see *PAE Government Services, Inc. v. MPRI, Inc.,* No. 06-56438, opinion by none other than, Chief Judge Alex Kozinski declared :it is not within the inherent power of the district court to strike a complaint,:, Therefore, every attorney who attempted to "procure a judicial act" is civilly and criminally liable under §§ 2 and 201 of Title 18 U.S.C.. See attached Ninth Circuit opinion cited above.

3.    In 1999, the *en banc* Ninth Circuit opinion, *Sanders v. Union Pacific Railroad, Co.,* 193 F. 3d 1080, 1082 (9th Cir 1999) at 193 F. 3d at 1082, TASHIMA, Circuit Judge, with whom WARDLAW, Circuit Judge, joins, concurring:[see attached text] held:

> 2 Understandably, no one objected to the law clerk presiding over the pretrial conference. At oral argument, it appeared that this was the customary manner in which Judge Ideman conducted his pretrial conferences. Whether a person who is not a judicial officer may preside over a judicial proceeding in the absence of all jurisdiction, however, is a jurisdictional issue. *Cf. Mireles v. Waco,* 502 U.S. 9, 11-12 (1991) (a judge *loses* judicial immunity when acting "in the complete absence of all jurisdiction"). And jurisdictional issues cannot be waived.

4.    All parties "acting in conspiracy" knew that their conduct was committed to deprive plaintiffs of their constitutional right to JURY TRIAL, and that "no immunity exists for a claim of conspiracy', see AGAIN, 9th Cir precedent attached as ***Baldwin v. Placer County,*** 405 F.3d 778(9th Cir. 2001).

5.    Plaintiffs also attach TABLE OF CONTENTS of plaintiff's complaint since it will be EVIDENCIARY in the next civil suit since defendants DID exactly what plaintiffs alleged, in complaint, that they would do in their conspiracy, see attached.

6.    Gabors are citizens and defendants are liable, pursuant to ***Baldwin v. Placer, supra,*** since defendants filed motion to dismiss 12(b)(6) they have admitted all the factual allegations in complaint are TRUE and waived all defenses and objection omitted from their ANSWER Rule 8(b), since no defendant filed answer within the time provided by law, plaintiff's thank you for your arrogance.

## CERTIFICATION

5.    Plaintiffs John Gabor and Kay Gabor, do hereby certify under penalty of perjury that the foregoing is of our personal knowledge, being true and correct and in compliance with FRCP as Amended in the 2007 Revised Edition (West)..

Respectfully submitted,

DATED: January 14, 2008

_____
JOHN GABOR, plaintiff
590 Smokey Court
Campbell, CA 95008

DATED: January 14, 2008

_____
KAY GABOR, plaintiff
590 Smokey Court
Campbell, CA 95008

## CERTIFICATE OF SERVICE

I hereby certify that the Plaintiff's NOTICE OF ILLEGALITY and attached Ninth Circuit

precedent was served upon all parties listed below pursuant to F.R.C.P. Rule 5(a) on this 14th day of

January, 2008.

John Gabor, NOTARY NOT REQUIRED

## DEFENDANTS, NOT IN DEFAULT

James A. Scharf
Office of the United States Attorney
150 Almaden Blvd., Suite 900
San Jose, CA. 95113.

---

*Rule 12.   Defenses and Objections When and How Presented; Motion for Judgment
on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing*

*(a) Time to Serve a Responsive Pleading.*

*(1) In General.  Unless another time is specified by this rule or a federal
statute, the time for serving a responsive pleading is as follows:*

*(A)  A defendant must serve an answer*

*(i) within 20 days after being served with summons and complaint; or*

*(ii) if it has timely waived service under Rule 4(d), within 60 days after
the request for a waiver was sent, or within 90 days after it was sent to the
defendant outside any judicial district of the United States.*

*(B) A party must serve an answer to a counterclaim or crossclaim within 20 days of being served
with a pleading that states a counterclaim or crossclaim;*

*(C) A party must serve a reply to an answer within 20 days after being served with an order to
reply, unless the order specifies a different time.*

*(2) United States and Its Agencies, Officers, or Employees Sued in an Official
Capacity.  The United States, a United States agency, or a United States officer or employee sued only in
an official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after
service on the United States Attorney.*

*(3) United States Officers or Employees Sued in an Individual Capacity.  A United States officer
or employee sued in an individual capacity for an act or omission occurring in connection with duties
performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim
within 60 days after service of the officer or employee or service on the United States attorney whichever is
later.*

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PAE GOVERNMENT SERVICES, INC., a
California corporation,
                    *Plaintiff-Appellant,*

          v.

MPRI, INC., a Delaware
corporation,
                    *Defendant-Appellee.*

No. 06-56438

D.C. No.
CV-06-00964-RGK

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
October 15, 2007—Pasadena, California

Filed December 18, 2007

Before: Alex Kozinski, Chief Judge, A. Wallace Tashima
and M. Margaret McKeown, Circuit Judges.

Opinion by Chief Judge Kozinski

16483

## COUNSEL

Richard E. Drooyan, Mark H. Epstein, Katherine K. Huang and E. Dorsey Heine, Munger, Tolles & Olson LLP, Los Angeles, California, for the plaintiff-appellant.

Kathleen M. Wood and Nicholas P. Connon, Connon Wood Sheidemantle LLP, Los Angeles, California, for the defendant-appellee.

## OPINION

KOZINSKI, Chief Judge:

We consider whether a district court may strike allegations from an amended complaint because they contradict an earlier iteration of the same pleading.

### Facts

PAE Government Services, Inc. and MPRI, Inc. sell services to government agencies. The companies agreed to work together to submit a bid for a government contract, and signed a "Teaming Agreement" that divided duties between them.

16486     PAE Government Services v. MPRI, Inc.

MPRI submitted the bid as "prime contractor" and won. MPRI thereafter refused to subcontract to PAE all the work specified in the Teaming Agreement—or so PAE claimed in its original complaint.

The district court dismissed that complaint because, in its view, the Teaming Agreement is no more than an "agreement to agree." The agreement is governed by Virginia law, and the district court held that Virginia won't enforce agreements to agree.[1] PAE thereupon amended its complaint to allege that, after MPRI won the government contract, it entered into a second agreement with PAE. According to the amended complaint, this second agreement was "confirmed" in "written communications" and by the parties' "course of conduct." The amended complaint also added a promissory estoppel claim against MPRI.

The district court found PAE's new allegations of a second agreement with MPRI to be "sham pleadings that contradict allegations made in the original Complaint." In particular, the allegation of a second agreement contradicted PAE's original claim that "[f]ollowing the award of the . . . [government contract], MPRI failed and refused to enter into a subcontract with PAE." The district court therefore struck the new allegations from PAE's First Amended Complaint. After holding that Virginia law also barred PAE's promissory estoppel claim, the district court dismissed the complaint.

PAE amended its complaint yet again, adding more detail about its second agreement with MPRI. The district court remained unmoved; it deemed the Second Amended Complaint to be "merely a revision of the [First Amended Complaint] which alleges more specific facts evidencing the existence of a subsequent subcontract between the parties."

---

[1]PAE has not appealed that ruling, so we don't consider the district court's interpretation of Virginia law or its application of that law to the Teaming Agreement.

The district court struck the additional allegations and dismissed the complaint—this time, with prejudice.

## Analysis

[1] **1.** By striking the allegations in PAE's amended complaint as a "sham," the district court effectively resolved those allegations on the merits. In other words, it determined that the allegations in the amended complaint were unfounded because they contradicted (in the district court's view) earlier allegations PAE made in its original complaint. But the Federal Rules of Civil Procedure do not authorize a district court to adjudicate claims on the merits at this early stage in the proceedings; the court may only review claims for legal sufficiency. *See* Fed. R. Civ. P. 12(b). Adjudication on the merits must await summary judgment or trial. Rule 12(f) does authorize the court to strike "any insufficient defense," which this is clearly not, and "any redundant, immaterial, impertinent, or scandalous matter." PAE's allegations of a second agreement are certainly not any of those things; they are normal contract claims that would not be in the least bit objectionable, but for the fact that they appeared, in the district court's view, to contradict allegations in an earlier version of the complaint.

[2] Which brings us to the meat of the coconut: Does the fact that an amended complaint (or answer) contains an allegation that is apparently contrary to an earlier iteration of the same pleading render the later pleading a sham? The answer is: not necessarily. To begin with, allegations in the two versions of the complaint might not conflict at all. Here, for example, PAE explains that the allegations in the original complaint referred to MPRI's refusal to sign the specific subcontract contemplated in the Teaming Agreement; the amended complaint, by contrast, referred to an entirely different agreement reached over email. Only a careful comparison of the two documents, rather than a glance at isolated provisions, can determine whether PAE's account is plausible. We have not undertaken such a comparison, however, nor need

we do so to resolve this case. Even assuming that the two pleadings were irreconcilably at odds with each other, this would not, by itself, establish that the later pleading is a sham.

At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns. In recognition of these uncertainties, we do not require complaints to be verified, see Fed. R. Civ. P. 11(a), and we allow pleadings in the alternative—even if the alternatives are mutually exclusive. As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported. This rarely means that those allegations were brought in bad faith or that the pleading that contained them was a sham. Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. We do not call this process sham pleading; we call it litigation.[2]

[3] This does not mean, of course, that allegations in a complaint can never be frivolous, or that a district court can never determine that a complaint or answer was filed in bad

---

[2]PAE's earlier allegation may or may not have relevance to further proceedings in the case, including any under Rule 11. To the extent the superseded pleading is verified, it becomes something akin to a sworn declaration, and the party that presented it may suffer a loss of credibility before the trier of fact, which may be less inclined to believe a party that has sworn to inconsistent material statements. Also, a party's representations may judicially estop it from taking a contrary position in later proceedings. We mention this only as a theoretical possibility in the interest of completeness, not because we believe it could apply here. Indeed, the requirements for judicial estoppel are strict, see Fredenburg v. Contra Costa County Dep't of Health Servs., 172 F.3d 1176, 1180 (9th Cir. 1999), and nothing we have seen in this record suggests those requirements are met here.

faith. But the mechanism for doing so is in Rule 11, which deals specifically with bad faith conduct. MPRI points to Rule 11 as a source of the district court's authority for the order it entered here. But Rule 11 can play no role in this case because the district court did not invoke the rule's procedural safeguards, nor did it employ the rule's substantive standard, which would have required a finding that PAE or its counsel acted in bad faith.[3] The district court has no free-standing authority to strike pleadings simply because it believes that a party has taken inconsistent positions in the litigation. Rather, the district court's powers are generally limited to those provided by the Federal Rules of Civil Procedure. Though the Federal Circuit reached a contrary conclusion in *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1326 (Fed. Cir. 1998), no other court of appeals has followed that decision, and we decline to do so.[4]

---

[3] A prior version of Rule 11 did authorize a district court to "strike pleadings . . . as sham and false," but this provision was eliminated in 1983. *See* Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment; 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1336.3 (3d ed. 2004). MPRI relies on one of our Rule 11 precedents, *Ellingson v. Burlington Northern, Inc.*, 653 F.2d 1327 (9th Cir. 1981), but *Ellingson* is no longer good law after the amendment to Rule 11.

The Advisory Committee notes to Rule 11 suggest that the 1983 amendment was designed to avoid precisely the type of error committed by the district court here: "confus[ing] the issue of attorney honesty with the merits of the action." Though false factual assertions may be evidence of bad faith, they are usually not; generally, they are the result of ignorance, misunderstanding or undue optimism. If bad faith *is* found, in accordance with the procedures outlined in Rule 11, the district court has wide latitude to impose sanctions, including the striking of the offending pleading. *See, e.g.*, *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 284 (4th Cir. 2006). But absent a finding of bad faith, factual allegations in the complaint (or answer) must be tested through the normal mechanisms for adjudicating the merits.

[4] Ironically, *Bradley* purported to rely on two of our cases. One of them is *Ellingson*; for reasons explained p.16489 n.3 *supra*, that case does not survive the amendments to Rule 11. The other case *Bradley* relied on was

**[4]** The short of it is that there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading. The district court's order, which is based on the contrary conclusion, must be reversed.

**[5]** 2.     Because MPRI made its alleged promises in connection with the Teaming Agreement, that agreement's choice-of-law clause governs PAE's promissory estoppel claim. *See Nedlloyd Lines B.V.* v. *Superior Court*, 3 Cal. 4th 459, 470 (1992) (agreement's choice-of-law clause applies to "all causes of action arising from or related to that agreement"); *Olinick* v. *BMG Entm't*, 138 Cal. App. 4th 1286, 1300 (Ct. App. 2006) (choice-of-law clause applies to claims that are "inextricably intertwined with the construction and enforcement" of the contract). The Teaming Agreement chooses Virginia law, which doesn't recognize promissory estoppel as a cause of action. *W.J. Schafer Assocs., Inc.* v. *Cordant, Inc.*, 254 Va. 514, 521 (1997). We see no reason not to enforce the agreement's choice of law: Virginia has a substantial relationship to MPRI (which has its principal place of business there), and enforcing the clause won't violate a fundamental policy of California. *See Gamer* v. *duPont Glore Forgan, Inc.*, 65 Cal. App. 3d 280, 287-88 (Ct. App. 1976) (quoting Restatement (Second) Conflict of Laws § 187). The district court properly dismissed PAE's promissory estoppel claim.

---

*Reddy* v. *Litton Industries, Inc.*, 912 F.2d 291 (9th Cir. 1990), a case that stands for the unremarkable proposition that, where a complaint cannot be cured by amendment, the district court may deny leave to amend under Rule 15. *Id.* at 296. We see no analogy between that situation and the one presented here. *See Foman* v. *Davis*, 371 U.S. 178, 182 (1962) ("futility of amendment" is reason to deny leave to amend).

PAE Government Services v. MPRI, Inc.    16491

\*     \*     \*

Rule 12 provides no authority to dismiss "sham" pleadings. If a party believes that its opponent pled in bad faith, it can seek other means of redress, such as sanctions under Rule 11, 28 U.S.C. § 1927 or the court's inherent authority. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).

**REVERSED in part, AFFIRMED in part and REMANDED. No costs.**

Westlaw.

193 F.3d 1080                    FOR EDUCATIONAL USE ONLY                    Page 1
193 F.3d 1080, 44 Fed.R.Serv.3d 1295, 99 Cal. Daily Op. Serv. 8560, 1999 Daily Journal D.A.R. 10,957
(Cite as: 193 F.3d 1080)

▷

**Briefs and Other Related Documents**

United States Court of Appeals,
Ninth Circuit.
Phillip R. SANDERS, Plaintiff-Appellant,
v.
UNION PACIFIC RAILROAD COMPANY, De-
fendant-Appellee.
No. 97-55046.

Argued and Submitted May 5, 1998
Decided Sept. 4, 1998
Rehearing En Banc Granted and Opinion Withdrawn
June 15, 1999
Argued and Submitted Aug. 19, 1999
Filed Oct. 26, 1999

Injured employee brought action against railroad un-
der Federal Employers' Liability Act (FELA). The
United States District Court for the Central District of
California, James M. Ideman, J., dismissed action.
Employee appealed. On en banc rehearing, the Court
of Appeals, Rymer, Circuit Judge, held that District
Court abused its discretion in sua sponte dismissing
action with prejudice after allowing law clerk to
preside at pretrial conference.

Reversed and remanded.

Tashima, Circuit Judge, concurred and filed opinion
in which Wardlaw, Circuit Judge, joined.

Opinion, 154 F.3d 1037, withdrawn.

West Headnotes

**Federal Civil Procedure** ⟨⟩1824
170Ak1824 Most Cited Cases
District court abused its discretion in sua sponte dis-
missing action with prejudice due to plaintiff's failure
to meet deadlines imposed by pretrial order, where
court allowed law clerk to conduct final pretrial con-
ference, plaintiff's counsel requested opportunity to
explain to judge his failure to comply, clerk told
counsel for both sides that court would probably set

matter for hearing, and counsel were then notified
that case had been dismissed with prejudice.
Fed.Rules Civ.Proc.Rules 16, 41(b), 28 U.S.C.A.
*1081 Charlotte E. Costan, Burbank, California, for
the plaintiff-appellant.

Joseph P. Mascovich, Crosby, Heafey, Roach &
May, Oakland, California, for the defendant-appellee.

Appeal from the United States District Court for the
Central District of California; James M. Ideman, Dis-
trict Judge, Presiding. D.C. No. CV-95- 04300-JMI.

Before: HUG, Chief Judge, and BROWNING,
SCHROEDER, CANBY, O'SCANNLAIN, TROTT,
RYMER, TASHIMA, THOMAS, McKEOWN, and
WARDLAW, Circuit Judges.

RYMER, Circuit Judge:

Phillip Sanders appeals the district court's sua sponte
dismissal of his action with prejudice for failure to
comply with the court's pretrial preparation order.

In June 1995, Sanders filed an action against Union
Pacific Railroad Company under the Federal Em-
ployers' Liability Act (FELA), 45 U.S.C. §§ 51-60.
The case was assigned to Judge James M. Ideman.
The court set a trial date of November 19, 1996 and a
pretrial conference date of November 8. Its standard
form pretrial conference order also required the
parties to submit certain documents twenty-one days
before trial and others fourteen days before.   The
form order warned that failure to comply could result
in sanctions, including dismissal.

As of the pretrial conference, Sanders's counsel had
not filed a trial brief, memorandum of contentions of
fact and law, responses to Union Pacific's motions in
limine, or proposed voir dire questions as he should
have.   His motion in limine was filed six days late,
and his witness, exhibit and expert witness lists were
filed the day before the conference, two days late un-
der the order. Counsel failed to meet and confer with
Union Pacific despite requests that he do so, as a res-
ult of which no joint exhibit notebook, joint proposed
jury instructions, or joint trial notebook was submit-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ted.

The final pretrial conference was held as scheduled, except that Judge Ideman's law clerk presided. Sanders's counsel said that he had been involved in a complex FELA action in Nebraska and asked for an opportunity to explain to the judge why he had been unable to comply with the order. The law clerk told counsel for both parties that the trial date would be vacated and that the court would probably set the matter for hearing on an order to show cause.

Nevertheless, on November 15, Judge Ideman's courtroom deputy notified counsel that the case had been dismissed with prejudice. That same day the court issued a written order vacating the trial date and dismissing the case pursuant to Federal Rule of Civil Procedure 41(b). [FN1] Sanders's counsel then filed a motion to set aside the judgment pursuant to Rule 60(b), which the court denied without a hearing.

> FN1. This order did not touch all of the bases we have previously said a district court must touch before imposing dismissal as a sanction. See Dahl v. City of Huntington Beach, 84 F.3d 363, 366 (9th Cir.1996).

Sanders urges us to hold that the court was obliged to warn counsel and client of *1082 imminent sua sponte dismissal and to have dismissed without prejudice instead of with prejudice, while Union Pacific argues that the court did not abuse its discretion because Sanders was warned in the order and had clearly failed to comply by the time the pretrial conference occurred. At the same time, Union Pacific acknowledges that the "pretrial conference" wasn't a pretrial conference in the normal sense and that our analysis is hampered by the lack of a record about what happened there.

We decline to dissect what happened in this case and to prescribe a recipe for how and when an action may be dismissed, with or without prejudice, for failure to follow the pretrial rules. This is a unique case. Suffice it to say that where, as here, the district judge allows his law clerk to conduct the final pretrial conference, declines to give counsel an opportunity to be heard before the court, and then dismisses the action

sua sponte with prejudice, we cannot let the dismissal stand.

Counsel was plainly derelict in meeting his Rule 16 obligations, but so was the district judge. In different circumstances, where the district court exercises its own discretion in a deliberate, informed and reasonable way, we would accord it considerable deference. [FN2] See, e.g., Malone v. United States Postal Serv., 833 F.2d 128, 130 (9th Cir.1987). But we cannot see how any deference is warranted in these circumstances. Accordingly, we vacate all orders entered after the pretrial conference and remand for another district judge to consider afresh how to proceed. [FN3] In so doing, we express no opinion about how the new judge's discretion should be exercised. Rather, we simply put the parties back to square one.

> FN2. Likewise, a Rule 60(b) motion and the court's ruling on it may sometimes cure deficiencies in the initial award of sanctions. See Link v. Wabash R.R. Co., 370 U.S. 626, 632, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). But the later ruling cannot rescue the earlier one here, since it is inextricably intertwined with the initial order, which resulted from a conference over which the judge did not preside.

> FN3. Judge Ideman resigned from the federal bench after the decision was rendered in this case. For this reason we do not need to decide whether this action should be reassigned to the calendar of a different district judge; it will necessarily be assigned to a new judge in any event.

REVERSED AND REMANDED.

TASHIMA, Circuit Judge, with whom WARDLAW, Circuit Judge, joins, concurring:

I concur fully in Judge Rymer's majority opinion. I write separately to address an additional point.

As the majority opinion points out, the so-called pretrial conference was presided over by a law clerk. I do not believe there can be any doubt that a law clerk cannot preside over a pretrial conference. Rule 16

Case 5:07-cv-04266-RMW    Document 83    Filed 01/14/2008    Page 14 of 22

193 F.3d 1080                    FOR EDUCATIONAL USE ONLY                    Page 3
193 F.3d 1080, 44 Fed.R.Serv.3d 1295, 99 Cal. Daily Op. Serv. 8560, 1999 Daily Journal D.A.R. 10,957
(Cite as: 193 F.3d 1080)

specifically provides that "*the court* may in its discretion direct the attorneys for the parties ... *to appear before it* for a conference ... before trial...." Fed.R.Civ.P. 16(a) (emphasis added). The rule also recognizes that, where authorized by local rule, the conduct of the scheduling and planning conference may be delegated to a magistrate judge. Fed.R.Civ.P. 16(b). No such comparable, specific delegation authority appears in Rule 16 with respect to the final pretrial conference. *See* Fed.R.Civ.P. 16(d). [FN1] From this carefully constructed rule and its narrowly circumscribed delegation authority, it can be gathered that a pretrial conference is a judicial proceeding and a judicial proceeding can be conducted only by a judicial officer. *Cf. Riley v. Deeds, 56 F.3d 1117, 1122 (9th Cir.1995)* (convening of court by law clerk who directed court reporter to *1083 read back testimony to jury in absence of judge was structural constitutional error requiring reversal). A law clerk is not a judicial officer and cannot conduct a judicial proceeding, including a final, Rule 16(d) pretrial conference.

> FN1. I note, however, that the Magistrates Act authorizes designated magistrate judges "to hear and determine any pretrial matter pending before the court," with certain exceptions. 28 U.S.C. § 636(b)(1)(A). The Act also provides that "[a] magistrate may be assigned to such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). We need not explore in this case whether these provisions authorize a magistrate judge to preside over a final pretrial conference under Rule 16(d).

Judge Ideman must have been aware of these strictures because he appears to have taken steps to ensure that the pretrial conference did not become a matter of record. There is no entry on the docket of this case, no Clerk's Minute Order, that a pretrial conference was ever held. Nor, contrary to the requirement of the Court Reporters Act, which requires all proceedings of the district court to "be recorded verbatim," 28 U.S.C. § 753(b), were the pretrial conference proceedings reported by a court reporter or recorded verbatim in any other way. There simply is

no record in the district court that a pretrial conference ever took place.

Yet, in spite of the *sub rosa* nature of the pretrial conference, Sanders was visited with the ultimate sanction--dismissal of his case with prejudice-- because his attorney failed to prepare for it. In my view, the pretrial conference was a nullity. A law clerk purported to preside (undoubtedly at the direction of the judge) over a proceeding from which, although held in a district court courtroom, the district judge completely absented himself, and which was not reported. Such a renegade, *ultra vires* procedure cannot be sanctioned. [FN2]

> FN2. Understandably, no one objected to the law clerk presiding over the pretrial conference. At oral argument, it appeared that this was the customary manner in which Judge Ideman conducted his pretrial conferences. Whether a person who is not a judicial officer may preside over a judicial proceeding in the absence of all jurisdiction, however, is a jurisdictional issue. *Cf. Mireles v. Waco, 502 U.S. 9, 11-12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)* (a *judge* loses judicial immunity when acting "in the complete absence of all jurisdiction"). And jurisdictional issues cannot be waived.

A final Rule 16(d) pretrial conference, presided over by a law clerk, from which the judge has deliberately absented himself, is *not* a pretrial conference within the meaning of Rule 16; therefore, counsel, or an unrepresented party, cannot be sanctioned for being unprepared for such a "conference."

I therefore concur in the disposition reversing the imposition of sanctions and remanding the case to the district court.

193 F.3d 1080, 44 Fed.R.Serv.3d 1295, 99 Cal. Daily Op. Serv. 8560, 1999 Daily Journal D.A.R. 10,957

**Briefs and Other Related Documents (Back to top)**

• 1997 WL 33554993 (Appellate Brief) Reply Brief for Appellant (Jun. 23, 1997)Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

405 F.3d 778                       FOR EDUCATIONAL USE ONLY                              Page 1
405 F.3d 778, 61 Fed.R.Serv.3d 486, 05 Cal. Daily Op. Serv. 3280, 2005 Daily Journal D.A.R. 4469
(Cite as: 405 F.3d 778)

► 

__Briefs and Other Related Documents__

United States Court of Appeals,
Ninth Circuit.
Michael W. **BALDWIN**, DDS; Georgia Chacko,
Plaintiffs-Appellees,
v.
**PLACER COUNTY**; Tracy Grant; Ron Goodpaster; Brian
Wiggam; Kevin Besana;
Stephen L. D'Arcy; Jeffery Potter; **Placer County Sheriff's**
Department;
Officer Reed, Defendants-Appellants.
No. 04-15848.

Argued and Submitted March 18, 2005.
Filed April 19, 2005.

**Background:** Residents brought civil rights suit against
county and police officers alleging use of excessive force,
judicial deception, and conspiracy in securing and executing
warrant to search premises for inside marijuana grow. The
United States District Court for the Eastern District of
California, Morrison C. England, J., denied motion for
summary judgment on basis of qualified immunity, and
defendants took interlocutory appeal.

**Holdings:** The Court of Appeals, Noonan, Circuit Judge,
held that:
(1) appellate jurisdiction existed over interlocutory appeal;
(2) officers were not entitled to qualified immunity on claim
of excessive force;
(3) officers were not entitled to qualified immunity on claim
of judicial deception in securing search warrant; and
(4) officers were not entitled to qualified immunity on
conspiracy claim.
Affirmed.

*779 David K. Huskey, Auburn, CA, for the
defendants-appellants.

J. David Nick, San Francisco, CA, and Paul R. Turley,
Oakland, CA, Kate Wells, Santa Cruz, CA, for the
plaintiffs-appellees.

Appeal from the United States District Court for the Eastern
District of California; Morrison C. England, District Judge,
Presiding. D.C. No. CV-01-01177-MCE.

Before: NOONAN, THOMAS, and FISHER, Circuit
Judges.

NOONAN, Circuit Judge.

Placer County and several of its police officers (collectively,
the County) have taken this interlocutory appeal from the
district court's denial of their motion for qualified immunity
in this 42 U.S.C. § 1983 action brought by Michael Baldwin
and Georgia Chacko (the plaintiffs). On the basis of the
facts conceded as undisputed by the County for purposes of
this appeal, we hold that the County violated established
constitutional rights of the plaintiffs and that qualified
immunity was properly denied.

FACTS
On September 22, 1998, Jeff Potter, an officer of the
marijuana eradication team (MET) of the County's Sheriff
Department, applied for a search warrant for the residence
of Michael Baldwin and Georgia Chacko, then Baldwin's
wife. The affidavit stated that on July 16, 1998, Deputy
Mark Reed had told Sergeant Kevin Besana that "a citizen
informant" had told him that Michael Baldwin, a dentist,
was "possibly growing marijuana." The date when this
information was given and the date when Baldwin was
possibly growing marijuana were not stated in the affidavit.
Potter stated that Besana had passed this tip to him and that
four days after receiving it, he confirmed Baldwin's office
address as a dentist and obtained the registration number of
his car; Potter used the car registration to confirm the
informant's statement as to Baldwin's home address. A
check of DMV records showed Baldwin to be 35 years-old,
5' 9", weighing 165 pounds and Georgia Chacko to be 34
years-old, 5' 5", weighing 125 pounds.

On September 16, 1998, so the affidavit continues, Potter
searched the trash at Baldwin's home address. He found
"marijuana leaves and stems recently cut from a mature
marijuana plant. The marijuana was fresh green and still
moist." He also, he said, had found "marijuana seeds and a
hydroponic grow rock. There were also two black 1/2 gallon

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-04266-RMW    Document 83    Filed 01/14/2008    Page 16 of 22

Westlaw.

405 F.3d 778                          FOR EDUCATIONAL USE ONLY                          Page 2
405 F.3d 778, 61 Fed.R.Serv.3d 486, 05 Cal. Daily Op. Serv. 3280, 2005 Daily Journal D.A.R. 4469
(Cite as: 405 F.3d 778)

planting pots commonly used in indoor marijuana grows and four packages of 'rain drip' irrigation equipment commonly used in indoor marijuana grows." He concluded on the basis of his specific training in the investigation of narcotics and his ten years of experience in approximately three hundred narcotics cases that "[t]he items found in the trash inspection reveal an ongoing criminal activity to grow marijuana indoors." He also concluded that "it is common for persons *780 involved in the cultivation of marijuana to also be involved in the sale of marijuana." Potter sought a warrant listing the documents and property he expected to find; he did not mention guns. On September 23, 1998, a state court judge issued the search warrant that Potter sought.

According to the plaintiffs' evidence, the only marijuana in their trash searched by Potter were blackened bits of marijuana wrapped in a paper towel, the remnants of smoked marijuana. They bolster their claim of falsity in Potter's affidavit by thirteen declarations from other individuals whose trash was searched by MET. In each instance MET officers swore they found "marijuana leaves and stems recently cut from a mature marijuana plant" and that "the marijuana was fresh green and still moist." In each instance, these thirteen individuals swore they placed no marijuana or products of marijuana in their trash.

The Baldwins' further evidence is that the "rain drip" irrigation equipment was only for outdoor landscaping and that this fact should have been obvious to a trained narcotics investigator. The equipment included a sprinkler spraying water up to 14 feet, a soaker hose, and 6" heavy duty support stakes; none of these items are used in an indoor grow. The two black gardening pots pointed to no illegal activity. The "grow rock" in Potter's affidavit was, the plaintiffs also state, a lava rock with no implication of criminal activity.

In the early dawn of the day that Potter obtained the warrant, according to the sworn declaration of Michael Baldwin, a group of five officers including Potter entered Baldwin's home "para-military style" without knocking. Officer Reed encountered Baldwin as Baldwin came into the house from the back door. Reed pointed his gun at him and ordered him to lie down. Baldwin complied with the

order. Reed "then pushed his gun at the rear of [Baldwin's] head and placed his knee in the small of [Baldwin's] back, all the while pressing a loaded firearm against the back of [Baldwin's] head." Baldwin was terrified that the gun would go off.

According to the sworn deposition of Georgia Chacko, she was clothed only in a T-shirt and cotton briefs and just getting up to start her day when she opened her bedroom door to be confronted by a flashlight in her face and fingers sharply poking five to seven times at her throat and forcing her back into the bedroom. A voice told her to get on the floor. A gun was pointed at her, then brought into contact with her head for 30 seconds. She got on the ground. The unidentified gunman kneed her in the small of her back and handcuffed her. The gunman was Potter.

PROCEEDINGS

On October 12, 2001, the plaintiffs filed their first amended complaint. The County moved for summary judgment on the ground of the qualified immunity of the officers. On April 2, 2004, the district court denied the motion, ruling that triable material issues of fact existed as to the plaintiffs' claims of excessive force, judicial deception, and conspiracy by the MET team, all in violation of 42 U.S.C. § 1983; state law claims similarly remained open to credibility determinations by a jury.

The County appeals.

ANALYSIS

[1][2] *Jurisdiction.* Where there is a dispute as to material issues of fact, we have no jurisdiction. *Johnson v. Jones,* 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). On the face of the district court's decision finding disputed facts, we are prevented from proceeding further. The County avoids dismissal, *781 however, by stating that it "accepted the Baldwins' evidence for purposes of summary judgment, thereby obviating any alleged factual disputes" and that therefore "no factual disputes preclude appellate jurisdiction over this interlocutory appeal." The appeal is directed only to denial of immunity if the plaintiffs' facts are accepted; so the appeal is directed to appealable issues of law. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Although the defendants have found

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

it hard to stick to their concession and occasionally appear to dispute the facts, we take them at their word and for this appeal accept only the plaintiffs' version of what happened. The facts for this appeal are not alleged, they are admitted. Consequently, we have jurisdiction.

[3] *Excessive force.* The County argues that "objectively reasonable" officers could have believed that "the exigency of the entry" justified the batteries on the plaintiffs. On the conceded facts before us, there was no exigency. Baldwin was a practicing dentist. Nothing in the record indicates that the officers had reason to believe that he would resist or flee. The officers had stated no belief that the plaintiffs would be armed; they mentioned no criminal history or conspiracy that could have justified such a belief. They had no reason not to identify themselves before giving orders to the plaintiffs. Invading a home in the early morning, they have stated no fact justifying their batteries. They violated the civil right of the plaintiffs to be free from battery by gun-wielding officers, a right established in this circuit since 1984. *McKenzie v. Lamb,* 738 F.2d 1005, 1010 (9th Cir.1984) (Kennedy, J.). Potter's fingers at the throat of Baldwin's wife constitute a separate battery that a reasonable officer would know was excessive. The governmental interests in using handcuffs are at their maximum when "a warrant authorizes a search for weapons and a wanted gang member resides on the premises." *Muehler v. Mena,* --- U.S. ----, 125 S.Ct. 1465, 161 L.Ed.2d 299, 2005 WL 645221 at *4 (March 22, 2005). Conversely, governmental interests are at a minimum when the searchers assert no belief that weapons will be found and no belief other than that the occupants of the house are a practicing dentist and his wife.

[4] *Judicial Deception.* The Fourth Amendment is the guarantee of every citizen that his home will be his castle, safe from the arbitrary intrusion of official authority. It is no barrier at all if it can be evaded by a policeman concocting a story that he feeds a magistrate. This obvious truth is met by the County with the argument that we should redact Potter's affidavit, purge it of its lies, and find what remains sufficient to justify the issuance of the warrant. *See Liston v. County of Riverside,* 120 F.3d 965, 972 (9th Cir.1997). Objectively, the County adds, there was enough to justify a

search. Its arguments are unpersuasive.

First, when Potter's lies are taken out, what is left is an unidentified citizen at an unidentified date telling a sheriff's deputy of marijuana growing at an unidentified time; also the presence of a rock and two pots, the uses of which are ambiguous. No magistrate could have authorized a search on this basis, essentially amounting to an informant's tentative tip.

Second, the County shifts its ground in arguing that "objectively"--that is, not within Potter's affidavit--there were facts justifying the search: .08 grams of burnt marijuana, "virtually unrecognizable as marijuana," are conceded to have been in the trash by the plaintiffs. The County cites in support of its argument *Devenpeck v. Alford,* --- U.S. ----, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004), holding that not the officer's motive in making an arrest but *782 the objective circumstances are to be considered by a court judging the officer's action. *Devenpeck* does not speak to our case. Here, it is what facts were alleged to induce the magistrate to act. Plainly, Potter's lies were substantial in moving the magistrate. The force of the lies on the mind of the magistrate cannot be bleached out.

The plaintiffs' established civil rights were violated by presentation of the false affidavit. *Liston,* 120 F.3d at 972-73. Qualified immunity was rightly denied.

[5] *Conspiracy.* Conspiracy to violate a citizen's rights under the Fourth Amendment by lying to the magistrate is evidently as much a violation of an established constitutional right as the perjury itself. Whether there is sufficient evidence of the conspiracy is for a jury to decide. No immunity exists for the conspiracy.

AFFIRMED.

405 F.3d 778, 61 Fed.R.Serv.3d 486, 05 Cal. Daily Op. Serv. 3280, 2005 Daily Journal D.A.R. 4469

**Briefs and Other Related Documents (Back to top)**

• 2004 WL 2606397 (Appellate Brief) Appellants' Reply Brief (Oct. 08, 2004)Original Image of this Document (PDF)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Gabor v Santa Clara Co* 2007 -04266    —    TABLE OF CONTENTS—

Paragraph number

PLAINTIFFS- DEMAND FOR JURY TRIAL OF ALL CLAIMS:

FIRST CLAIM FOR DEPRIVATION OF RIGHTS SECURED BY
    TITLE 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS……………………………........61, 62

SECOND CLAIM AGAINST ALL DEFENDANTS FOR CONSPIRACY
    TO CAUSE INJURY BY CONDUCT PROHIBITED BY 42 U.S.C. § 1985(3)…….……..63, 64

THIRD CLAIM AGAINST ALL DEFENDANTS FOR STATE-LAW
    TRESPASS AND LARCENY……………………………………………………………….65, 66

FOURTH CLAIM AGAINST ALL DEFENDANTS FOR DEPRIVATION
    OF THE RIGHTS SECURED BY ARTICLE I, SECTION I
    OF THE CONSTITUTION FOR THE STATE OF CALIFORNIA…………………………67, 68

FIFTH CLAIM AGAINST ALL DEFENDANTS FOR DEPRIVATION OF
    FOURTH AMENDMENT PRIVACY RIGHTS…………………………………………......69, 70

SIXTH CLAIM AGAINST ALL DEFENDANTS FOR REGULATORY TAKING
    AND DEPRIVATION OF DUE PROCESS UNDER THE FIFTH
    AND FOURTEENTH AMENDMENT……………………………………………………...71, 72

SEVENTH CLAIM AGAINST ALL DEFENDANTS FOR DEPRIVATION
    OF STATE RIGHT SECURED BY ARTICLE I, SECTION 19
    OF THE CONSTITUTION FOR THE STATE OF CALIFORNIA………………………….73, 74

EIGHTH CLAIM AGAINST ALL DEFENDANTS FOR INTERFERENCE
    WITH COMMERCE BY THREATS, VIOLENCE, CONSPIRACY,
    ATTEMPTED ROBBERY, AND EXTORTION UNDER COLOR
    OF OFFICIAL RIGHT IN VIOLATION OF 18 U.S.C.§§ 1951 and 1962(d)………..……..75, 76

NINTH CLAIM AGAINST ALL DEFENDANTS FOR FRAUD AND SWINDLES
    AND CONSPIRACY TO COLLECT UNLAWFUL DEBT IN VIOLATION
    OF 18 U.S.C. §§ 666, 1341, 1962(d0 AS DEFINED § 1346…………………………….77, 78

TENTH CLAIM AGAINST ALL DEFENDANTS FOR DEPRIVATION OF RIGHTS
    SECURED BY ARTICLE III, AND THE FIFTH, SEVENTH AND FOURTEENTH
    AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES BY
    BRIBERY AND FALSE REPRESENTATIONS OF IMMUNITY UNDER
    COLOR OF OFFICIAL RIGHT……………………………………………………………..79, 80

PLAINTIFFS CLAIMS FOR DAMAGES AND INJUNCTIVE RELIEF…………………………81, 82

I

Paragraph number—

Defendants:

County of Santa Clara
   Board of Supervisors in their municipal capacity……………4, 11, 23, 25, 27, 28, 31, 32, 33, 44, 55,
Ken Yeager in his municipal capacity……………………………………………………………12, 34, 35, 54,
Ken Yeager in his individual capacity……………………………………………………………...12, 34, 35, 54,
Ann Ravel in her municipal capacity……………………………………………………...13, 36, 37, 54,
Ann Ravel in her individual capacity……………………………………………………………13, 36, 37, 54,
Delores Carr in her official capacity…………………………………………………………14, 38, 39, 54, 56,
Delores Carr in her individual capacity…………………………………………………………14, 38, 39, 54, 56,
Laurie Smith in her municipal capacity…………………………………………………15, 40, 41, 42, 43, 54,
Laurie Smith in her individual capacity…………………………………………………15, 40, 41, 42, 43, 54,
City of Campbell in its municipal capacity………………………………………3, 16, 44,45, 46, 47,
Daniel Rich in his municipal capacity……………………………………………………………17, 47, 48, 54,
Daniel Rich. in his individual capacity……………………………………………………………17, 47, 48, 54,
City of Campbell Community Development Dep't. in its municipal capacity……………………...18, 49,
Susan Morgado-Gray in her municipal capacity……………………………………………2, 19. 50, 51. 54,
Susan Morgado-Gray in her individual capacity……………………………………………2, 19, 50, 51, 54,
Edmond G. Brown, Jr. in his official capacity……………………………………………………20, 55, 56,
U.S. Attorney for the N.D. of CA. Scott N. Schools in his official capacity……………………21, 60,
and does 1-100…………………………………………………………………………………………22,

                        Constitution of the United States

First Amendment…………………………………………………………………………………5, 7, 8,
Fourth Amendment……………………………………………………………7, 8, 24, 27, 35, 38, 52,
Fifth Amendment……………………………………………………………………7, 8, 24, 35, 45,
Sixth Amendment ………………………………………………………………………………………38,
Seventh Amendment……………………………………………………………………………………7, 8,
Eleventh Amendment …………………………………………………………………………38, 55, 56,
Fourteenth Amendment……………………………………………………………………7, 8, 35, 45,

                        Constitution for the State of California

Article I
Section 1………………………………………………………………………………………24, 30,
Section 19……………………………………………………………………………………………45,
Article XIII………………………………………………………………………………………25, 44,
Article XIIID………………………………………………………………………………………25, 44,

                        Title 7 United States Code

§ 2131…………………………………………………………………………………………………3, 29,
§ 2131(b)(3)……………………………………………………………………………………………4,
§ 2132……………………………………………………………………………………………………3,
§ 2158……………………………………………………………………………………………3, 29,
§ 2159……………………………………………………………………………………………3, 29,

paragraph number–

### Title 18 United States Code
.........................................................................................................60,
§ 3...................................................................................................25, 34, 36, 41,
§ 201...............................................................................................28, 35, 39,
§ 241...............................................................................................28, 39,
§ 242...............................................................25, 35, 37, 38, 41, 49, 50, 57, 59,
§ 666...............................................................................................29, 52,
§ 912...............................................................................................29, 52,
§ 913...............................................................................8, 36, 41, 42, 43, 50,
§1341..............................................................................................49,
§ 1346..............................................................................................41, 60,
§ 1621..............................................................................................60,
§ 1622..............................................................................................60,
§ 1623..............................................................................8, 25, 26, 52,
§ 1951..............................................................................8, 25, 26, 52,
§ 1951(a)..........................................................................8, 25, 26, 52,
§ 1951(b)(1) "robbery".....................................................8, 25, 26, 47, 52,
§ 1951(b)(2) "Extortion"..................................................33, 36, 41, 52,
§ 1962..............................................................................26, 35, 38, 52, 57, 59,
§ 1962(d).........................................................................26, 52,

### Title 26 United States Code
.........................................................................................................8, 59, 60,
§ 7213..............................................................................................8, 59,–

### Title 28 United States Code
.........................................................................................................8, 59, 60,
§ 1343..............................................................................................8, 59,–
§ 2679..............................................................................................

### Title 42 United States Code
.........................................................................................6, 8, 36, 37, 41, 52, 54,
§ 1983..............................................................................6, 41, 52, 52, 54, 60,
§ 1985..............................................................................6, 8, 28, 36, 37, 41, 54,
§ 1985(3)..........................................................................

### California Civil Code
.........................................................................................1, 35, 36, 37, 54,–
§ 52.1...............................................................................................30,
§ 654................................................................................................30,
§ 655................................................................................................30,
§ 656................................................................................................30,
§ 657................................................................................................30,
§ 658................................................................................................30,
§ 659................................................................................................30,
§ 660................................................................................................30,
§ 661................................................................................................30
§ 662................................................................................................30,
§ 663................................................................................................

paragraph number

### California Penal Code

§ 7. Personal property.................................................................................3,
.............................................................................40, 41, 42, 43, 46,
§ 118.1....................................................................................46, _
§ 123...............................................................................35, 36, 37,
§ 182.......................................................................................39,
§ 207.....................................................................................5, 36, 37,
§ 422.6.........................................................................27, 36, 37, 52, 53, _
§ 484....................................................................................27,
§ 487.....................................................................................31,
§ 487e. Theft of Dogs.......................................................................31, 51,
§ 491. Nature and Value of Dogs........................................................39, 46.
§ 518....................................................................................6, 36, 37,
§ 602. Trespass..........................................................................40,
§ 806....................................................................................38, 40,
§ 813....................................................................................50, 51,
§ 830.................................................................................._ ....50, _
§ 1523

### Federal Rules of Civil Procedure

..............................................................................................60,
Rule 7(a)..............................................11, 12, 13, 14, 15, 16, 17, 18, 19, _
Rule 8(b)......................................................................................59,
Rule 12...............................................11, 12, 13, 14, 15, 16, 17, 18, 19,
Rule 12(a)(1)(A).............................................................................7,
Rule 38

### Federal Criminal Codes and Rules

..............................................................................................38,
Rule 4

### Points and Authorities

*Brewster v. Shasta County* (9th Cir. 2001)................................................40, _
    278 F. 3d 803

*Camara v. Municipal Court of the City and County of San Francisco* (1967)...........37, 46,
    187 U.S. 523

*Hydricks v. Hunter* (9th Cir. Sept. 28, 2006).............................................56,

*In re James Elliot* (9th Cir. 2001)........................................................55,
    254 F. 3d 1135

*Overton v. Ohio* ( .........................................................................39,

Paragraph number

State Court authorities

*People v. Davis* (1998)............................................................................53,
19 Cal. 4th 301

*People v Parmar* (2001)......................................................46, -
86 Cal. App. 4th 781

*Venegas v. County of Los Angeles* (2007).................................................1,
2006 WL 3501295 (Dec. 6, 2006)

v